```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
 3                       CASE 09-0236-MDL-KING
 4    IN RE:  CHECKING ACCOUNT OVERDRAFT LITIGATION
 5    MDL NO. 2036
 6
                                        MIAMI, FLORIDA
 7                                      APRIL 18, 2012
                                        WEDNESDAY - 10:30 A.M.
 8
      ---------------------------------------------------------------
 9
                       TRANSCRIPT OF MOTION FOR STAY
10                            [BancorpSouth]
                  BEFORE THE HONORABLE JAMES LAWRENCE KING
11                 SENIOR UNITED STATES DISTRICT JUDGE
      ---------------------------------------------------------------
12    APPEARANCES:
13    FOR THE PLAINTIFF:
                              AARON PODHURST, ESQ.
14                            PETER PRIETO, ESQ.
                              Podhurst Orseck, P.A.
15                            City National Bank Building
                              25 W. Flagler Street, Ste. 800
16                            Miami, FL  33013
                              Email: apodhurst@podhurst.com
17                                   pprieto@podhurst.com
18                            ROBERT CECIL GILBERT, ESQ.
                              STUART GROSSMAN, ESQ.
19                            Grossman & Roth
                              2525 Ponce De Leon Blvd. Ste. 1150
20                            Miami, FL    33134
                              Email: rcg2grossmanroth.com
21                                   szg@grossmanroth.com
22                            JEFF OSTROW, ESQ.
                              Tylor Hodkin Kopelowitz Firm
23                            350 E. Las Olas Blvd.
                              Fort Lauderdale, FL  33301
24
25
```

```
 1  FOR THE DEFENDANT:
                            ERIC JON TAYLOR, ESQ.
 2                          WILLIAM J. HOLLEY, ESQ.
                            Parker Hudson Rainer & Dobbs
 3                          1500 Marquis Two Tower
                            285 Peachtree center Avenue, N.E.
 4                          Atlanta, GA  30303 - 404-523-5300
                            email:  wholley@phrd.com
 5                                  etaylor@phrd.com
 6
     ALSO PRESENT:          Bryce Albu, Esq.
 7                          David Stellings, Esq.
                            Steve Marks, Esq.
 8                          James Bravemen, Esq.
                            Barry Davidson, Esq.
 9                          Jamie Isani, Esq.
                            Kathryn Meyers, Esq.
10                          Christopher Carven, Esq.
                            Stephen Rosenthal, Esq.
11
     REPORTED BY:
12                          ROBIN MARIE DISPENZIERI, RPR
                            Official Federal Court Reporter
13                          United States District Court
                            400 No. Miami Ave., Ste. 8S67
14                          Miami, FL  33128 - 305/523-5659
                            Robin_dispenzieri@flsd.uscourts.gov
15
16
17
18
19
20
21
22
23
24
25
```

1          THE COURT:  May we have the announcement of your

2    appearances please, starting with the plaintiff.

3          MR. PODHURST:  Your Honor, Aaron Podhurst and Robert

4    Gilbert, along with other members of the plaintiff's committee,

5    Mr. Grossman, Mr. Prieto, Mr. Rosenthal all on behalf of the

6    Plaintiff Executive Committee and the plaintiffs.

7          THE COURT:  Thank you.

8          MR. TAYLOR:  Eric Taylor on behalf of BancorpSouth

9    Bank.

10         MR. HOLLEY:  And Your Honor, Bill Holley on behalf of

11   BancorpSouth Bank.

12         THE COURT:  Thank you.  Mr. Holley, Mr. Taylor.

13         THE COURT:  We have pending this morning two motions

14   that are set for argument today.  There have been some other

15   motions filed subsequent to this.  The two motions that were

16   scheduled were the defendant bank's motion for a stay, docket

17   entry 2602, filed on March 27, about a week ago, and the

18   plaintiff's motion to enjoin, filed on March 29th, 2012, docket

19   entry number 2603.

20         The Bank's motion having been first filed, we will

21   hear from Mr. Taylor or Mr. Holley on your motion to stay.

22         MR. HOLLEY:  Good morning, Your Honor.

23         THE COURT:  Good morning, sir.

24         MR. HOLLEY:  Thank you, once again, for allowing me to

25   appear in your Court.  The last two times I have appeared in

1  front of Your Honor had been for other banks in this

2  multi-district litigation, much larger banks, Regions Bank in

3  Birmingham, and Branch Banking and Trust in Winston, Salem.

4  Today is my first appearance in this Court for one of the

5  smallest banks in this multi-district litigation, a bank called

6  BancorpSouth in Tuppolo, Mississippi.

7         We are here today, Your Honor, following our

8  announcement that BancorpSouth has settled its customers'

9  overdraft claims.  The settlement class has been certified by

10  Judge Robert Dawson from the Western District of Arkansas.

11  Notice has been made to that class, and we are asking this

12  Court to stay class-related proceedings while the settlement is

13  consummated.

14         We are not asking this Court to stay Mr. Swift's

15  individual action as by the order of Judge Dawson.  His claims

16  are preserved outside of the settlement.

17         THE COURT:  You are asking for a stay of the class

18  certification motion that has been fully briefed by both sides.

19  It is simply awaiting the Court's ruling on the briefs, and it

20  has been my custom, in part as a courtesy to the lawyers, I

21  have set them for oral argument, as you may have observed in

22  your representation, a summary of the banks, but I have not set

23  it for oral argument, but it is fully brief so that ruling on

24  class certification with your particular client that could come

25  at any moment.  It has been fully briefed since it was filed on

1   December 20.  It was filed about three months ago.  I could

2   have sat down and entered an order on the class certification

3   at any time.  It is fully briefed, in which, by the way, the

4   bank opposes class certification.  So you wish me to stop

5   consideration of that because of this recently filed case in

6   Arkansas on behalf of your client.  Is that a fair statement of

7   what you are asking the Court to do?  Just stop ruling on class

8   certification, that's what you want me to do.

9           MR. HOLLEY:  No.  Actually what we're asking the Court

10  to do --

11          THE COURT:  You're not asking for that?

12          MR. HOLLEY:  We are asking all class proceedings to be

13  stayed.

14          THE COURT:  You are asking me to not rule on the

15  plaintiff's motion filed December 20th, and your response, it

16  was filed on February 3rd, you are asking me not to rule on

17  that.

18          MR. HOLLEY:  Correct, Your Honor.

19          THE COURT:  Well, that's what I thought.  If you're

20  not asking for that, we can move on.  That's the purpose of

21  that.  You are asking for a stay on that.  You have a lot of

22  reasons, but that's what you're asking me to do?

23          MR. HOLLEY:  Correct, Your Honor.  Beyond that, asking

24  that there be no continuation of the class proceedings while

25  the settlement proceeds in Arkansas.

1    THE COURT:  It's all the same thing.  You want to stop

2  the class certification in this court, pending in this division

3  of court, under this MDL assignment that has been pending since

4  last December.  You want me to stop that until the recently

5  filed case that was filed, apparently, on February 28, 2012,

6  and then a week later, with apparently no discovery or anything

7  you went in and filed a motion to settle a week after you filed

8  that case, and you want me to stay this one, which has been

9  pending 18 months on orderly discovery, orderly motion practice

10 moving towards an ordinarily resolution on the pros and cons on

11 class certification, which this Court takes very seriously on a

12 bank by bank opposition here, as you have seen, we take that

13 very seriously.  I was taking, very seriously, your motion

14 objecting to class certification.

15      In Florida, you object to class certification, but, in

16 Arkansas, you agree that's the best way of handling the claims

17 against BancorpSouth.  It's a little bit inconsistent, isn't

18 it?

19      MR. HOLLEY:  Your Honor, we believe there are

20 significant differences in the claims as pleaded in Arkansas.

21 We do believe there is more of a history to the case than

22 simply filing it on --

23      THE COURT:  Why are the claims different?  Did you

24 know what class the Court would certificate if it were to

25 certify the class at all?

1         In other words, we are having a class certification

2    process with regard to BancorpSouth today.  Right now it could

3    be any time.  Normally, I say, as a courtesy to counsel, I give

4    them an opportunity to be heard, and I like to talk with you.

5         But, in any event, you are now in the somewhat awkward

6    position in this case, which has been pending for over 18

7    months, and moving a long with a lot of discovery and so on,

8    that you object to class certification.  You say it is not

9    proper.  It is not a good way to do it.  Your bank should be

10   excluded from that.  The plaintiffs are trying to get it

11   class-certified as to all the customers of BancorpSouth.  You

12   are objected to that.  Properly so.  I am considering is

13   seriously.

14        While I am considering it, you, maybe not you,

15   Mr. Holley, or Mr. Taylor.  I don't know which lawyers, but

16   some lawyers representing the same bank are out in Arkansas

17   saying we think class certification is excellent.  It's

18   wonderful.  It's marvelous.  It's a good way to handle all of

19   this.

20        All of this has just happened in a few days.  You are

21   saying stop class certification.  Here, I guess, since you

22   think class certification is a good way to handle these cases,

23   since this one has been pending for so long, it would be a

24   simple matter just to certify a class and life goes on.  But I

25   really would have liked to have heard good argument from you

1   and others on why class certification was not proper, but you

2   are in that awkward position, and I don't know just how you

3   want to handle that.

4           If class certification is good in Arkansas, why isn't

5   it good here?  You just said you think that there is a

6   different class there.  Of course, you couldn't possibly know

7   what class there is here because I haven't ruled upon it.  You

8   are saying you have got a class that is different from your

9   class, Judge.  Well, how is it different?  You don't know.  I

10  don't know.  I haven't said it was a class.  I haven't even

11  agreed there should be a class.  I haven't even agreed there

12  should be a class.  Your bank might not even be subject to

13  class here.

14          You know, you shouldn't assume.  I am certainly

15  disappointed in lawyers that think that I am going to just cut

16  a templet and say in every bank there is going to be class

17  certification or whatever.  There may or may not be.  Your

18  client is entitled to be heard on that with an open mind, and

19  that's what I was doing up to this point.

20          I don't know.  I just raise these things that, here,

21  it seems like the bank is taking inconsistent positions.  You

22  are in a very awkward position because of what your client

23  wishes to do in saying "the two subjects on class

24  certification" when you don't know that there is even going to

25  be a class certification here.  You have objected to it.  It's

1  ripe for ruling.  We will consider all the variables and all of

2  that.  I may or may not listen to you, because I don't know

3  what you could say.  Now, you say it's not good and it's good.

4  Well, the bank should make up its mind one way or the

5  other.  The bank's most recent decision is a class

6  certification is the way to go.  When you filed your response

7  last February you said you had a lot of good arguments.  When

8  your briefs come in, I read them.  I scan through them.  I note

9  them.  I don't remember them today.

10  I do read everything that is filed every day.  That's

11  why I saw something filed this morning about striking briefs

12  and all of that.  That's unfortunate for the lawyers that

13  you've got a Judge that reads this stuff.  You may be used to

14  it in your district or something.  I know a lot of my

15  colleagues look at it and say, "Gee, look at this mess.  I

16  don't have time to do everything."

17  I don't mean to ramble.  But, okay, you are saying

18  stay it because we have gone to another Court, on a short one

19  week pendency in the Court, we have gotten a settlement in

20  another court, and we want you to stop what you have been doing

21  for 18 months, and approve what we are doing in this other

22  court for a couple of weeks.  You say you have good reasons.  I

23  can presume from reading the transcript before Judge Dawson

24  that they center around financial aspects primarily, but there

25  may be other reasons.  I don't know.

1          What are the reasons why it would be better for Judge

2   Dawson to go forward with his pending class certification

3   financial arguments and settlement approvals and all of that,

4   as opposed to being here?  What are the reasons why it's better

5   out there?  I am sure that the bank feels that it's better.  I

6   respect their viewpoint.  Could you tell me what they are,

7   other than financial which are obvious I guess.

8          MR. HOLLEY:  I have several comments based upon Your

9   Honor's comments.

10          THE COURT:  Sure.

11          MR. HOLLEY:  First, we are here primarily to announce

12   that because a settlement has been reached, and a settlement

13   class has been certified, that is the primary reason why we

14   have come to this Court and asked this Court to suspend

15   schedules or stay schedules with regard to class proceedings.

16          Second, with regard to the class proceedings here, and

17   I would prefer for Mr. Taylor, who has been lead counsel for

18   BancorpSouth in the pleadings before you, but there are matters

19   related to the requests that were made by the plaintiffs here

20   that we believe Your Honor should hear including issues related

21   to Daubert and others.

22          Your Honor, though we do not know whether Your Honor

23   would ever certify a class here, or what that class would, in

24   the end look like, we are guided by the pleadings that are made

25   by the parties in this case.  We know what the plaintiffs here

1   have asked you to certify, and, more important, what they have

2   not asked you to certify.  So that informs my comments as to

3   the difference in Arkansas.

4           THE COURT:  We don't know what the class would be here

5   because we haven't reached the point yet of whether there will

6   be a class here.  We couldn't possibly know.  I assure you I

7   have no prejudgment on that.  I would listen to all of it.

8           Frankly, it would seem to me that if your bank wants

9   to give a borrower opening to class in Arkansas and make it

10  better for the people, the people who are account holders in

11  your bank, their customers, if they want to do that, well, then

12  I would presume that you make the same argument here.  I don't

13  have to listen to what Mr. Josefsberg tells me he thinks the

14  class is, or Mr. Taylor thinks it is.

15          I am looking at the whole group and what is best for

16  the class, and what is best for the parties.  Your cases that

17  you put in your briefs on your stay, which I don't want to

18  disappoint you all, I took the trouble to read.  A lot of that

19  is based upon, or at least two or three that would seem to be

20  the focus that supported your position or that you urged

21  supported your position, took the position that there was a

22  difference in class, that there was a bigger, better class in

23  one or the other, bigger class in another state in here.

24          If the bank wants a bigger class than the plaintiff is

25  seeking, and if that's appropriate and proper and benefits the

1  customers in the bank, benefits the class, I don't know any

2  reason why I shouldn't grant that, you see.  But we are not

3  even there yet.  That's if there is a class.  It's an awkward

4  argument.

5        I'm sorry.  I don't mean to embarrass you.  It's an

6  awkward argument for you.  I am trying to do this in as bland

7  and pleasant way.  I have no bad feeling about the lawyers

8  involved here in any way.  You are entitled to go and represent

9  your client wherever is the best interest for your client.  If

10  you can get a better settlement in Arkansas than you can get

11  here, I don't fault you for a heartbeat in trying to do that.

12        The question here, and I think, certainly, Judge

13  Dawson indicated a concern about making sure there had been

14  full consideration, discovery and understanding whether it was

15  a good settlement or not.  It seems to me that Judge Dawson, or

16  Judge King, or one or the other, or both of us should certainly

17  look at how this affects the class, how it affects the people,

18  what is involved, is it better or is it not.  None of those

19  comparisons have been made yet because at this point we haven't

20  certified a class, delineated a class.  This Court is

21  confronted with a situation where, apparently, the bank has no

22  objection to the class, and indeed, wants a broader class than

23  the plaintiffs have been seeking in this case, which has been

24  pending all of this time.  But you say that the reason is

25  settlement.  That's one reason that it's better there than

1    here.

2          Of course settlement, I suppose, can occur one day and

3    it's fine if it's settled for a class there or here, wherever

4    it is.  You don't want it here.  You say it's better there.

5    You say settlement is one reason.  What are the other reasons?

6          MR. HOLLEY:  Your Honor, settlement is the

7    overwhelming primary reason.

8          To put into context, again, I know I made a lot of

9    comments, and I know I am not going to be able to respond to

10   all of them, but I'll try.

11         THE COURT:  Go ahead and take your time.  Go ahead and

12   respond to all of them if you want to.  That's fine.  As you

13   know, I have been giving lawyers unlimited argument here in

14   this case, which I may have to start changing.  As we go on,

15   it's getting pretty big.  There is no limitations.  You take

16   your time.  I have interrupted you a couple of times.  I am not

17   going to do that.  I just pointed out that I'm aware of the

18   awkwardness of your position.  I am trying to be sympathetic to

19   it.  Maybe I may not sound that way, but I really am.  Go

20   ahead, sir.

21         MR. HOLLEY:  I invite to you continue to do so,

22   because I want to address your concerns today.  We are in this

23   court today because there is a settlement that has been

24   reached.  That is the only reason that we are here.  Were the

25   settlement breached in this Court and there be an action

1   pending in another court, the shoe would be on the other foot.

2          THE COURT:  Except for MDL's assignment to this.  This

3   Court has jurisdiction, so there is a problem.

4          MR. HOLLEY:  Your Honor makes a good point.  During

5   the course of this MDL, by our count, some 41 banks have

6   appeared here before Your Honor in one way or the other.  If

7   this class action proceeds as most do, ninety-nine percent of

8   them will solve either by motion or settlement.  One case Your

9   Honor has resolved by motion, the Huntington Bank case.

10  Fifteen banks that have been in the MDL have resolved by

11  settlement.

12         THE COURT:  In my case?  In this case?

13         MR. HOLLEY:  Fifteen banks that have been here, that

14  have suits brought against them, have reached settlement.  Not

15  all of those settlements have been concluded.  Those are the

16  ones that have been announced.

17         THE COURT:  Is there any record of that?  I am not

18  doubting you, but that surprises me that it's that many.  I

19  know of some.  I know of two, I think.  We had one earlier this

20  week with TD Bank.  We had an earlier one with New York Bank.

21  We had announcements of settlements that are forthcoming.  I

22  thought it was four or five, but I will take your word for it.

23  There are nine you say?

24         MR. HOLLEY:  There are nine that have announced

25  settlement, that settled while in the MDL with the plaintiff's

1    group that are here.  That includes one that has gone through

2    final approval, which is Bank of America.  You had one for

3    which you granted preliminary approval on Monday, Iberia Bank.

4            IberiaBank settled in Arkansas before it came into the

5    MDL.  In a moment I will address some of the issues raised by

6    plaintiffs there.

7            THE COURT:  Nothing was said to me about that in the

8    argument by TD Bank on Monday of this week or Tuesday of this

9    week.  You say that TD Bank has entered into two settlements,

10   one in Arkansas and one here?

11           MR. HOLLEY:  No, Iberia Bank, Your Honor, settled

12   while it was in Arkansas, before it came into the

13   multi-district litigation.  Docket entry 1608, before there was

14   an agreement, apparently, with the plaintiff's group here, the

15   $2.5 million settlement was attacked for many of the same

16   reasons that we have been attacked.  In that pleading, they

17   said it was grossly inadequate --

18           THE COURT:  What happened to that settlement?

19           MR. HOLLEY:  The settlement ultimately came here, and

20   it was approved by you.  It is the one example so far where

21   there has been a settlement approved outside of when the bank

22   was in the MDL.

23           THE COURT:  It was a tag-along case that was sent

24   here, right?  Otherwise, I have no jurisdiction.  I am not

25   looking to get every bank in the world.  I don't care.  The

1   tag-along cases have routinely come in here.  MDL have

2   routinely sent them in and although I did notify the MDL panel

3   that I had to cut off any brand new cases that were going to be

4   filed after September 15th, I think it was, of 2011, and I

5   notified them of that.  The tag-along cases have been routinely

6   sent in here, as far as I knew, it was without objection.

7          The bank you are referring to, there was a settlement

8   somewhere else, and it came here.

9          MR. HOLLEY:  I came here and the filing before you by

10  the Plaintiff's group said that the settlement amount was

11  insufficient.  That it was an attempt of self-serving and

12  deliberate conduct by counsel that threatens to significantly

13  undermine effective management of class action proceedings.  It

14  says:

15         Based on the conduct of the plaintiff's counsel and

16     upon review of the proposed settlement agreement, it is

17     apparent that the Sakars and IberiaBank are attempting to

18     push through our grossly inadequate settlement outside of

19     the purview of the Court.

20         THE COURT:  Did the bank agree with that statement?

21         MR. HOLLEY:  The bank did not agree with that

22  statement.

23         THE COURT:  Did they object to it?

24         MR. HOLLEY:  They did, Your Honor.  All of that was

25  filed.  There was a hearing schedule before Your Honor on that

1    issue.  At the last minute that hearing was cancelled.  My bank

2    was not part of that.  I don't know why.

3         THE COURT:  I guess because the bank had agreed with

4    that statement.  I can't imagine any other reason.  I mean, you

5    know, if we are going to argue these things, let's find out

6    factually what happened.  You are certainly not suggesting that

7    the Court just intervene to say wait a minute, I am going to

8    get involved in this?

9         MR. HOLLEY:  I am not suggesting that at all.  My

10   purpose, Your Honor, is just to inform the Court that in

11   addition to Iberia, Fifth Third Bank is settled in the Middle

12   District of Illinois, it was sued here.  Judge Dow went through

13   the settlement process.  The plaintiff's group here made their

14   objections known Judge Dow.  He finally approved that

15   settlement on January 29, 2011.

16        In the National CitiBank, another bank that was sued

17   here, they had reached a settlement in the District of

18   Columbia.  Judge Bates went through the same process that Judge

19   Dawson proposes, heard the objections, and finally approved

20   that settlement on December 1, 2011.

21        Webster Bank was a bank that was sued in the MDL.  It

22   reached a settlement in the District of Connecticut.  Judge

23   Underhill approved that settlement after going through the Rule

24   23 process, the same process that Judge Dawson has ordered

25   occur in Arkansas.

1          UMB Bank, a small bank out of Missouri, was in the

2  MDL.  They settled in a State Court in Missouri.  BancorpSouth

3  would the sixth of the banks to reach a settlement outside the

4  MDL.  They have a class preliminarily certified.  Judge Dawson,

5  pursuant to Rule 23, has set a schedule for weighing objections

6  to that settlement.  I am sure that any members of that class

7  or proposed members or anyone who wants to be heard in that

8  settlement --

9          THE COURT:  Has he certified a class, or is he just

10  preliminarily certifying a class?

11          MR. HOLLEY:  He certified a settlement class, Your

12  Honor.  The same as you did on Monday, and originally did for

13  Bank of America for that period between the time when the

14  settlement is announced.

15          In sum, Your Honor, my point is very simple.  It's

16  just as Your Honor alluded to a moment ago.  Overdraft cases

17  exist all over the country.  Many of them here before you.

18  Some outside of this MDL, and many of them are settling.  That

19  doesn't necessarily make the settlement good or bad, or the

20  place where they are settling good or bad.  It makes a judicial

21  fact that there is a settlement and that a Judge has, in fact,

22  certified a class.  In this case notice has gone to that class.

23          Again, I know Your Honor has read our papers, and I am

24  not going to belabor all of the points that are in there, but

25  that as matters of comity --

```
 1              THE COURT:  Excuse me, I do have one question here.

 2              MR. HOLLEY:  Yes, Your Honor.

 3              THE COURT:  You say that notice has gone to the class

 4    since he certified it when, on March 26?

 5              MR. HOLLEY:  Yes, Your Honor.

 6              THE COURT:  And this is April 18.  So notice has gone.

 7              MR. HOLLEY:  Correct.  Judge Dawson's order ordered

 8    class counsel, who he appointed to represent the class, to

 9    proceed forward with notice, with companies called Epic --

10              THE COURT:  I have no problem with that.  I was just

11    asking factually if it had gone.  I'm sure that he and you did

12    the right thing.

13              MR. HOLLEY:  Approximately 350,000 people that have

14    received notice.  There has been publication in sixteen

15    newspapers, and there has been e-mail notice, and regulators

16    have been notified.

17              THE COURT:  Okay.

18              MR. HOLLEY:  Your Honor, the reason why we asked for

19    the class proceedings only to be held in abeyance, is that

20    Mr. Swift does have his individual claim in the MDL.

21    Presumably, there will be matters related to him, and then when

22    his case is ready to return to the Northern District of

23    Florida, that would happen.  We are not here suggesting that he

24    doesn't have that right.

25              THE COURT:  I understand your point.  I do.  You have
```

1  made it clear that you are not attempting to impact, in fact,

2  you are attempting to preserve his rights I believe is the way

3  your language is.  Something like that is what you said.  You

4  said we are not trying to hurt Mr. Swift's rights.  We are

5  preserving it.  That's in your pleadings.

6          MR. HOLLEY:  Judge Dawson did that, Your Honor.

7          THE COURT:  But you moved.  You were urging it.  You

8  weren't looking to hurt the man is what I am saying.  I am

9  trying to agree with you.  It's even hard to agree with you

10 occasionally.  Go ahead.  Go ahead.

11         MR. HOLLEY:  The first reason we urge that you grant

12 this relief is because of the settlement.  That's the primary

13 reason.

14         The second, we believe that it would be consistent

15 with the way that Your Honor has treated other settlements.

16 Bank of America, Bank of Oklahoma, Associated Bank, Great

17 Western Bank, Harris Bank, Commerce Bank, JP Morgan Chase Bank,

18 National CitiBank.  We believe this would be consistent.

19         We understand the plaintiff's allegation.  The

20 difference there is that we didn't settle with them, so we are

21 not coming to you with a joint request for a stay.  We settled

22 with a class counsel that has now been appointed out in

23 Arkansas, and they don't have standing to make a motion to you,

24 so we have made that motion.  It is different in that respect,

25 but we would submit to you that that is form over substance.

1    Your Honor, we believe that a stay is the most efficient way to

2    preserve and conserve judicial resources between this Court and

3    the Western District of Arkansas.

4              Finally, we believe that to proceed on competing class

5    issues would be antagonistic to the order and the class that

6    has been certified by Judge Dawson.

7              In paragraph 20 of his order, which is at docket 2602

8    Wallman and 2605-23, the order is in both places.  He has, as

9    in most preliminary settlement agreements, he has enjoined that

10   class, the class members that he has now certified from

11   participating in other litigation.  What the plaintiffs now ask

12   is for you to certify a class that we believe has a number of

13   legal problems, but it also places those class members in the

14   position of then, if they participate, being in violation of

15   Judge Dawson's order.

16             Your Honor, I would ask that Your Honor allow

17   Mr. Taylor, for a moment, since he is the lead counsel of

18   BancorpSouth, to address some of the details of what remains in

19   the Swift action.

20             THE COURT:  I would be glad to hear from him.

21   Mr. Taylor.

22             MR. TAYLOR:  Good morning, Judge.

23             THE COURT:  Good morning, sir.

24             MR. TAYLOR:  I want to start by addressing at least

25   one of your questions from earlier, and assure you that we are

1   not suggesting that this Court is not capable of determining

2   whether a class is appropriate.

3           THE COURT:  I know that, Mr. Taylor.  I don't take any

4   of this personally at all.  I think I am trying to have the

5   same concern for Judge Dawson that is reflected in his comments

6   when somebody form your bank, you or perhaps not you, but

7   somebody was there.  I respect Judge Dawson and the good

8   lawyers.  None of this is personal.  It's just it is

9   jurisdictional, and who has jurisdiction and what the fairness

10  to the class in protecting the class.

11          The big issue, as you notice, that this class case has

12  been pending for eighteen months.  All sorts of discovery

13  leading up to class certification, a scheduling order that was

14  entered over eighteen months ago, carefully structured so that

15  your bank, everybody would have a full opportunity to develop

16  discovery.  We have gotten to a point where we've got the class

17  motion and it's set and fully briefed.  Then we have had this

18  other situation develop out in Arkansas.  But it's not

19  personal.  At least not with me it's not.

20          I mean, there is one comment in there that the lawyer,

21  and I don't know, and I don't even want to know if you or

22  Mr. Holley was there, whoever the lawyer was said to Judge

23  Dawson that this Court was not getting any other cases for

24  whatever reason unknown.  That's what is in the transcript.

25          The reason, if anybody had bothered to check with MDL,

1   was that this Court had notified MDL that brand new cases, not

2   tag-along cases, not cases that are pending, but we would have

3   a cut-off date.  That's all it was.  There was no mystery to

4   it.

5         The implication in the transcript is that MDL took the

6   case away from me.  That I do take a little personal umbrage

7   at, but it's not much.  Whoever said that to the Judge just

8   didn't know he was talking about.  But that's okay.

9         MR. TAYLOR:  I am not sure who had that in the

10  transcript, and I heartily apologize for any suggestion along

11  those lines.  I know, as you pointed out, all you have to do is

12  go to the JPML website to see their order of October 11.  I

13  thinking you were talking about it, Judge, the one that

14  suspends requiring notification to the Clerk of potential

15  tag-along actions.  That was back in October.

16        THE COURT:  Did it suspend notification of that,

17  because we've been getting the tag-alongs and I've been

18  accepting them since that time routinely where it's not a new

19  case, but it is one that is here, or a bank that is here.

20        In any event, whatever it is, the representation to

21  Judge Dawson was that you all didn't know why they had suddenly

22  stopped sending me cases.  The implication is kind of bad.  I

23  don't think that's fair because there is no mystery to it at

24  all.  That's why these transcripts sometimes are subject to

25  misinterpretation.  I don't take this personally.

1        MR. TAYLOR:  I wanted to first argue, Judge, that

2    issuing a stay here, on the class proceedings, is consistent

3    with principals of comity.  The settlement that was reached in

4    the Western District of Arkansas is the subject, as we've

5    talked about, of a certification, and under the Emcom case

6    going way back, as you know, settling a class and certifying a

7    class, a class is a class.  Once it has been certified, it's

8    certified, and the settlement has been preliminary approved.

9    Notice has gone out.

10        THE COURT:  By the way, the certification goes back to

11    the date of filing of the complaint too.  We understand that to

12    be the law.  So therein lies a bit of a problem procedurally.

13    If there is a class certification in BancorpSouth in this

14    district, in my proceeding, it would relate back to the filing

15    of the complaint under the law, under the cases.  The same

16    thing, I guess, would certainly be true in Judge Dawson.  It

17    would relate back to his case which you all filed out there on

18    March 1st or something.  That has a big bearing on things like

19    statute of limitations, period of time.  It's going to cause a

20    problem.

21        I interpreted you, and I told Mr. Holley that I

22    wouldn't do that.  Please go ahead.

23        MR. TAYLOR:  I appreciate that.  Your observations

24    about the nature of filing a class certification, I think, are

25    correct.

1          THE COURT:  Not the filing.  It's the complaint

2     seeking a class action.

3          MR. TAYLOR:  I'm sorry.  That's what I meant.

4          THE COURT:  Then it goes forward, at least in this

5     division, it goes forward with discovery and things.  At some

6     point, the Court sets a motion on class certification to find

7     out whether or not there would be a class or not.

8          I have had several, maybe even a number where I have

9     denied class certification in other cases.  Not the bank case.

10    I am talking about general litigation.  I don't know, 300 cases

11    a year times 42 years, it's a lot of cases.  We have had class

12    certification sought and denied.  We've have had class

13    certification sought and granted.  The class certification,

14    when granted, relates back to the filing of the request for

15    class certification which is a complaint.  If it's granted.

16         Now, if it's not granted, of course, that is all by

17    the boards.  But if it is granted, and you have got Judge

18    Dawson granting it relating back for a month, or six weeks,

19    whatever it is.  If you were to have another class,

20    irrespective of what we've got here, that related back eighteen

21    months, you have got two really confusing problems.  You have

22    got a big problem.

23         MR. TAYLOR:  Well, and that's what we are trying to

24    avoid, Judge.

25         THE COURT:  I know.  I understand that.

1          MR. TAYLOR:  Because Judge Dawson reached the class

2   certification stage first, he has asserted jurisdiction over

3   the class.

4          THE COURT:  Is this a race to the courthouse we are

5   talking about?  What is this?

6          MR. TAYLOR:  It's not a race to the courthouse.  It's

7   how the law treats the nature of certifying a class and

8   particularly certifying a class and its impact on the class

9   members.  It is consistent with an order that this Court

10  entered a couple of weeks ago in the Comerica case in which

11  this Court recognized, but it did not want to hear summary

12  judgment issues before ruling on class issues.

13         THE COURT:  Absolutely, because it makes no sense.

14         MR. TAYLOR:  Right.  If you made a decision, it would

15  only apply to the named plaintiff and not to the class.

16         THE COURT:  Exactly, because you can't argue summary

17  judgment.  Matter of fact, the briefs in that particular case,

18  one set of lawyers were arguing it as it was a set of class.

19  The other lawyers were arguing it as if it were a class.  The

20  other set of lawyers were arguing it as if it were a single

21  issue in their briefs.  That's what I have done in this MDL

22  litigation, tried to get the class certification in an orderly

23  fashion to a place where I can listen to you and make a

24  decision.  Then, thereafter, if either side wishes to file

25  summary judgment, we know what we are dealing with.  I agree

1  with you.  You are going to find -- that wasn't an MDL or it

2  was, my opinion?

3          MR. TAYLOR:  Oh, it was.  It was in this MDL.

4          THE COURT:  Oh, it was.  Okay.  Now a days, in Federal

5  Court, you see every FLSA case.  You are nodding your head.

6  And you see every fair debt collection case.  Up in the style

7  of the case, it Mary Jones on behalf of herself and everybody

8  else similarly situated, and then in there you may see some

9  reference about wage an hour claim or fair debt.  You see some

10  reference to Rule 23 or enough there to give some conclusory

11  remarks about maybe we're going to seek a class or maybe not.

12          Then you have the real problem of what do you do about

13  discovery.  Do they do discovery related to class or don't

14  they?  Sometimes they do.  Sometimes they don't.  Sometimes

15  they do it half-assed, and they don't do it anyway.  It's all

16  over the map.  So that's another big problem with wage and hour

17  and this loose labeling class action.

18          It's not a class action until some Judge says it is,

19  and that Judge shouldn't say it is until after he or she has

20  carefully consider the merits.  Now maybe it should limited

21  discovery for thirty, sixty, ninety days, I don't know.  Like

22  we do in arbitration, and earlier on in this litigation give

23  people time, maybe not.  Maybe that's unfair.  I don't know.

24          Oh, well, you see the difficulty in getting an old

25  Judge that likes to talk to intelligent lawyers, experienced

1   lawyers.  I ramble off on other subjects.

2        You are right, I am convinced that a proper procedure

3   is to consider a motion for class certification after the

4   discovery has been done and everybody had time to develop the

5   facts so that you can determine whether it's a better way to

6   proceed or not, and whether it's fair to the class, and whether

7   you have got good representatives of the class, class

8   representatives are proper and good and all of those factors.

9        All right, Mr. Taylor, you were telling interesting

10  things to me.  I will hush now.

11       MR. TAYLOR:  I appreciate your comments.  We are,

12  again, trying all to get to the same place.  Judge Dawson

13  having certified the class, has asserted jurisdiction over the

14  class, and he has directed notice be sent to the class.

15  Notice, in fact, has been sent to the class.  That makes what

16  happened in the Western District of Arkansas different.  I

17  think that issuing a stay here, consistent with the principals

18  of comity, is appropriate because Judge Dawson has asserted his

19  jurisdiction over the class.

20       As you just said, there is a difference between a

21  class that is certified and one that is not.  His is.  What

22  that leads to, I would submit, is the idea that this Court

23  should let the class issues -- I don't think there is any

24  dispute that the class in the Western District of Arkansas

25  includes the class that Plaintiff Swift wanted certified.  The

1    law is clear that Plaintiff Swift doesn't have a right in a

2    certified class.  Class certification is a procedural device.

3    That procedure was accomplished over in the Western District of

4    Arkansas.  I think that compels this Court to respect the

5    decision of Judge Dawson, and let it play out so that class

6    members will be able to object if they so choose, opt out if

7    they so choose, or receive the benefits in the settlement if

8    they choose, and to let Judge Dawson reach the final fairness

9    hearing to determine on a final basis whether the settlement is

10   fair and adequate.

11        Judge Dawson was the subject of an awful lot of

12   disclosure when the filings were made in the Western District.

13   Much like filing here before you, when we come to argue, we

14   know that you have studied the papers.  So we argue a fulsome

15   record, and then we argue from it.

16        The argument, the transcript that you have seen, is a

17   small portion and a fraction of what was presented to Judge

18   Dawson.  Judge Dawson was informed of --

19        THE COURT:  Why didn't I get the whole transcript?

20        MR. TAYLOR:  No, no, I think you have the whole

21   transcript.  You also have what was filed before him, and what

22   he studied before he went to the bench to have oral argument.

23   I am simply suggesting that the transcript does not reflect

24   everything that Judge Dawson had before him before he reached

25   his conclusions.

1          Among the things he had before him were notice of this

2    MDL, notice of the briefing schedule.  He had a copy of our

3    response in opposition to class certification.  He had both the

4    original scheduling order and the revised scheduling order that

5    relates to the tranche four that BancorpSouth is in.  He was

6    well aware of the proceedings here.

7          In the face of the record -- and he heard argument,

8    and he had additional information that reflected that six

9    months worth of informal discovery, documents exchanged,

10   conversations between the plaintiff's counsel, their expert and

11   BancorpSouth officials took place.

12         THE COURT:  So he had the benefit of the discovery

13   that had been ongoing here?

14         MR. TAYLOR:  He had the benefit of the same

15   information that has been made available here.

16         THE COURT:  That's what I mean.  He had the benefit.

17   All of the discovery going in this case, you took out there and

18   showed him, or discussed with him.  I am not trying to talk

19   about details.  And you said here is this case.  It has been

20   going for eighteen months, all of the discovery.  Here is all

21   of this talking about the experts and everything, and the

22   pleadings, and Judge, here it is.  That has been ongoing.  We

23   want you, now, to step in and do the class certification, which

24   might be decided in any minute and that other court, and

25   approve it in a fair way.  Isn't that what happened?

1          MR. TAYLOR:  I want to be careful that I answer you

2     precisely.

3          THE COURT:  I don't mean to put you in a difficult

4     position.  Let me say that you don't have to answer.  That

5     would be easier for you.  That's a difficult question to

6     answer.

7          MR. TAYLOR:  The one thing I want to be absolutely

8     clear is I understand and want to be clear that these lawsuits

9     are about sensitive confidential information relating to

10    individuals.  So plaintiffs looked at banking records that have

11    never been shared publicly with anyone anywhere.  But you

12    wouldn't be surprised that any lawyer, suing on this theory,

13    asked for the same information.  Whether it's in a formal

14    process or an informal process, they asked for the same

15    information.  So there was a lengthy process of exchange.

16    There were two days of a mediation.  It was not a rushed

17    process.

18          So what was presented to Judge Dawson was a full and

19    complete record for him.  He was satisfied that it was

20    appropriate to certify the class.  Again, I think that compels

21    the conclusion that his decision ought to be respected and that

22    the cases -- the All Writs Act itself, which is one of the

23    issues that I know you had briefed before you, the Act speaks

24    in terms of protecting jurisdiction.  The cases are the same

25    that the All Writs Act applies only where a Court's

1    jurisdiction is threatened.

2          I submit to you Judge, your jurisdiction is not

3    threatened.  Your jurisdiction comes through the JPML, and it

4    extends to Plaintiff Swift until a class is certified.  That

5    jurisdiction you still have.  That case is still on track to

6    meet all the deadlines you set out, the June discovery

7    deadline, the July motions deadline, and ultimately it is set

8    to be sent back to the Transferor Court end of this year, early

9    next.  Nothing, I submit to you, Judge, has threatened your

10   jurisdiction.

11         I wanted to specifically go a little further on this

12   point and talk about the Managed Care case briefly.  The

13   Managed Care case does not suggest and does not support the

14   idea that any kinds of All Writs Act analysis is appropriate

15   here.  There are three main reasons.  The first and most

16   compelling was, in that case, the MDL case had a class that was

17   already certified.

18         THE COURT:  I understand.

19         MR. TAYLOR:  Second.  The JPML tag-along rule, Rule

20   7.1, was still in place.  As you have suggested, and as we have

21   seen, Rule 7.1 has been suspended by the JPML.

22         THE COURT:  Not on tag-along cases, I don't believe.

23   I'm sorry, you were talking about the rule, excuse me.

24         MR. TAYLOR:  I will read it, if it's all right with

25   you, Judge.  It's one sentence.

1       Panel Rule 7.1A requiring notification of the -- I'm

2   sorry, let me start again.  Panel Rule 17.1A requiring

3   notification to the Clerk of the Panel of potential

4   tag-along actions is hereby suspended in this litigation

5   until further notice.

6       THE COURT:  What is the date of that one?

7       MR. TAYLOR:  That was issued October 11.

8       THE COURT:  Of what year?

9       MR. TAYLOR:  Last year.  2011.

10      THE COURT:  So this Rule 7.1 of the Panel rules, which

11  they sent me, at my request, some time back, is no longer in

12  effect, that you have to notify the Panel?

13      MR. TAYLOR:  Exactly right, Judge.

14      THE COURT:  That's interesting.

15      MR. TAYLOR:  It is.  It is unusual.  My experience, I

16  have been practicing before the JPML my whole career.  I think

17  this is the second time that I have seen a suspension of that

18  rule.  That's important here.

19      THE COURT:  Suspension of the rule for this case?  I

20  want to understand you.

21      MR. TAYLOR:  Yes, for this MDL.

22      THE COURT:  For this MDL.

23      MR. TAYLOR:  For MDL 2036.  We were told by the JPML

24  that we were no longer required to notify the Clerk of

25  potential tag-along actions as of October last year.

1          THE COURT:  I had thought, and I haven't gone back and

2    reviewed my communications with them.  It was some new cases

3    filed if California, or some place, that the time we would try

4    them, we had these cases all set.  We had gone through all of

5    this discovery now.  We were bringing them up to a point where

6    they were set for trial.  Now, that might be changed by the

7    presiding Judge in Northern Florida or Northern Georgia.  That

8    is up to him or her back there.  Work was progressing on these

9    29 or 30 cases with their multiple subheadings and the five

10   tranches.  But if there was one here pending, or something, and

11   able to settle somewhere, they send it right in and it was

12   taken care of.  In fact, I think we've done that recently in a

13   few cases.  Alright, so that rule doesn't apply and you didn't

14   have to tell MDL what you were doing in this case.

15          MR. TAYLOR:  That's important for several reasons.

16   One is that's a distinction between our case and the --

17          THE COURT:  How about telling this Court?  Would it

18   have been a good idea to tell this Court that your position has

19   changed on objecting to class certification?

20          MR. TAYLOR:  Well, we did notify you a day after we

21   got the order.

22          THE COURT:  That was good timing, yeah.  I am not sure

23   that was very fair of this Court, but go ahead.  You knew it

24   was fully briefed.  You knew it was all set.  It could come

25   down any time.  But you knew my habit of trying to be nice to

1  you guys, give you hearings, that probably it was going to be

2  another few weeks or something, and you didn't bother to tell

3  me that you were going to another Court to get a settlement.

4  Why not bring it here and say, "Judge, we settled it out there.

5  Here is the settlement."  You didn't want to tell me that, did

6  you?

7          MR. TAYLOR:  No, Judge, I don't think that's right.  I

8  want to be careful here to make sure I am clear.  We settled a

9  case that this Court did not and could not have jurisdiction

10  over.

11          THE COURT:  If it's part of the class, I certainly

12  did.

13          Suppose, just hypothetically, suppose I had said, Oh,

14  I don't need to listen to these lawyers.  This is all clear

15  enough.  Let me just certify the class.  Or don't certify the

16  class, either way.  It would have made a substantial difference

17  in what you told Judge Dawson.  Either there is no class at

18  all, so we don't need to be here for you to settle because we

19  don't have a class.  That would have been very important to

20  tell him.

21          MR. TAYLOR:  Of course.

22          THE COURT:  Equally, it would have been just as

23  important to tell him there has been a class.  Hypothetically

24  it was done last night.  He would have said, well, gee whiz,

25  good-bye.

1           This was pretty important, and it seems to me that it

2   would be pretty important for you to advise this Court of what

3   you were doing, given the eighteen month history of the

4   litigation proceeding in an ordinarily fashion with notice to

5   counsel.  Everybody having an opportunity to be heard.  Filing

6   thousands and thousands of pages of briefs on all sorts of

7   issues that affect your class settlement.  Things about

8   arbitration, maybe it wasn't in your case, but others.  Expert

9   witnesses, who were they?  What were the procedures?  What were

10   the theories?  All of that you say was given to Judge Dawson a

11   week after you filed your suit.  You didn't do it in that case.

12   You had done it in this case.  You were utilizing this case for

13   all the discovery, and you were taking a different position.

14   The class certification is good there, and it was not good

15   here.

16           I am doing what I said I wouldn't do.  Go ahead and

17   finish your argument.

18           MR. TAYLOR:  I appreciate the opportunity.  I do want

19   to be careful and I want to be clear.

20           THE COURT:  Yes.

21           MR. TAYLOR:  We reached a settlement agreement in a

22   case, in a court separate from this one, that could not have

23   been transferred, according to the JPML rule, that we didn't

24   have to notify the JPML of the tag-along, so there was no

25   mechanism to send it to this court.

1              As you know, until a settlement is preliminarily

2    approved by the Court, it's really not operative.  Until a

3    class is certified, the case in the Western District of

4    Arkansas stood on the same footing as this case.  There were

5    plaintiffs who were asserting class claims.  One Court, the

6    Western District of Arkansas, moved quicker because of a

7    settlement.

8              THE COURT:  One week, that was pretty quick.  That was

9    awfully quick given the history of all of this.  Just sitting

10   back look at it, it looks like it was a race to the courthouse.

11   It looks like your bank won in Arkansas.  They got their first,

12   they got a Judge to sign an order, based on all the discovery

13   done in this case, based on all that was going on here, and

14   they showed him that it was fair to the class of people that

15   were pending, or were momentarily pending in this court.

16            It wasn't as if we were back eighteen months ago, and

17   we were just starting the discovery and trying to make a

18   formulation whether it be fair to the class, that the class

19   representative was good, whether the class attorneys were good,

20   the committees that were appointed were good or bad.  This is

21   all after all of that has been done in the case pending here.

22            One week later it looks like it was pretty rushed.  I

23   believe you when you say that Judge Dawson, you told him all

24   the good things that were happening here.  I am sure that he

25   considered it.  I don't have any doubt that he was doing his

1  best to deal with a matter that was being brought to him,

2  actually thrust upon, him in short notice.

3         I suppose that if your theory is right on this, I mean

4  if you are correct legally on this, on your cases and so on,

5  that this could happen in every case that is pending in my MDL

6  assignment.  I hadn't thought that would happen.  I had thought

7  when this was sent to me it would follow an ordinarily

8  discovery procedure, and all of that motion practice, up to the

9  time it would then get sent back for trial or whatever the

10  lawyers wanted to do with it, but it didn't occur to me that

11  lawyers could go in to State Courts or Federal Courts in other

12  jurisdictions, and then file a case and a week later get a

13  settlement, a week after it was filed.  I know you had been

14  having discussions prior to with a lawyer who was selected to

15  be, I guess, class representative a week after the case was

16  filed, before your bank was even served.  They had twenty days

17  to serve you.  You were all cooperating, so you accepted

18  service a week after filing, took it to the Judge.  That

19  doesn't really seem like it was altogether fair to Judge

20  Dawson.  Maybe it was.  I am sure you told him everything you

21  felt he needed to know.

22         He acted on what was before him.  I don't fault that.

23  I understand, I'm not sure that I approve, but I understand the

24  lawyers' anxiousness to try to get a better settlement for his

25  class or his client that he felt he might get somewhere else.

1  I understand it.  I am not sure that I approve it on this

2  expedited race run-to-the-courthouse procedure.  But whether I

3  approve it or not is unimportant today.  I just want to be sure

4  that I understand the fairness of what is happening in the

5  treatment of the class and to the treatment of all the parties

6  that have been laboring here, including yourself.  You have

7  been here before.  You have been through a lot of these

8  proceedings, am I clear, Mr. Taylor?

9       MR. TAYLOR:  I have been here, and I have, Your Honor.

10      THE COURT:  I have always had a very high regard for

11  your preparation and your thoroughness and presentation.  I've

12  enjoyed our conversations.  It looks like, though, if this goes

13  through that I won't be seeing you anymore, will I?

14      MR. TAYLOR:  I think you will.

15      THE COURT:  Why is that?

16      MR. TAYLOR:  Because the Swift case will be still be

17  here.  I expect I will be arguing summary judgment motion

18  before you some time in July.

19      THE COURT:  On a single defendant?

20      MR. TAYLOR:  Yes, sir.

21      THE COURT:  You don't think that case would be over if

22  it was a single defendant?  Sure it would be.  Let's be

23  practical.  The case is over if you prevail on your theory that

24  you have asserted here and you've cited the cases including the

25  Managed Care case.  You are quite correct that Judge Moreno, in

1 that case, had already certified the class, which I presume

2 related back to the time the case was filed.  That was a major

3 difference.  This, to that extent is unique, I mean this

4 situation is unique.

5          Really, just as informational again, if you are

6 correct on this, would you agree with me that any defendant in

7 any of the cases in this MDL would have to do to get out of the

8 MDL consideration of the MDL assignment here is if they could

9 enter into an agreement with some lawyer and some town in

10 Arkansas, or New York, or whenever to agree to be a class

11 representative and work with him, and then in and get a

12 settlement and present it to a Judge, and get that done before

13 there was a class certification ruling in the MDL that that

14 would take care of the case.  That would end the MDL.  I mean,

15 do you agree?

16          I am just trying to see what would happen.  Assume I

17 grant your motion, and rule with you and all of that, then that

18 could set a precedent, of course, that no one has seemed to

19 have considered in MDL policies and manuals and practices.

20 Wouldn't that sort of end MDL assignments?  And it would be

21 with only the consideration briefly a week after, two weeks

22 after a case is filed, by a good-intentioned Judge of what is

23 before him that some lawyers have worked on a case for two or

24 three months, three weeks or whatever, filed a case, and they

25 have decided who will be the class representative.  The bank

1  agrees with it.  It is all presented without any objection.  It

2  looks like well, this solves a big problem for a whole lot of

3  people.  This is a good amount of money here, and that will be

4  distributed and it's good.

5      Why wouldn't that then become sort of a standard

6  practice in all MDL cases?  Because, I guess, lawyers

7  particularly in small towns would be able to find somebody.

8  One law firm, they know everybody in town.  The lawyers know

9  each other, and it would be pretty easy to get somebody to

10  agree to be a class representative if everybody agreed to it

11  and go in and do this.

12      The difficulty with all of that is, and I am assuming

13  in my hypothetical that the two lawyers were really trying to

14  get the best situation for the class they could.  I give them

15  the benefit of every good intent.  They truly believe that was

16  a better way to resolve it for the people and for the bank.

17  And the people in the company, they really believe that.  They

18  went in and presented it in good faith.  Let's assume that.

19  And assume it is a fact that it was a good deal for people.

20      Nobody ever got to compare it with what other

21  settlement arrangement, agreement, nothing to compare it with.

22  It is given to a Judge, a busy Judge.  He, in good faith, says

23  I have got jurisdiction and I have the authority.  All I am

24  saying is in my mind, after this was filed, I started thinking

25  how would this work in real life, in practicality.  I think

1  that that's about the way it would probably work out.  Is that

2  good?  Is that consistent with the MDL policies that have been

3  developed for over -- well, I had my first MDL case 41 years

4  ago.  I know we have had MDL around for a long time.  I didn't

5  have the first case for heaven's sake.  I hope I didn't.

6          MR. TAYLOR:  About 45 years.

7          THE COURT:  Do you see a flaw in my reasoning that

8  that could happen, again giving everybody good intent, not

9  anybody trying to take advantage of anything.  Forget all of

10  that.  Let's just talk good intent, good lawyers sitting out

11  there and they say, hey, I represent a bank.  If I can get

12  somebody to agree with me for what looks like an idea that is

13  going to give this group a good sizable settlement.  I have had

14  big discussions with my bank President.  My bank President is

15  worried that if it continues on in this MDL which is going on,

16  that we couldn't get quite this good a deal.

17          There are a lot of factors.  It's not just money.  In

18  this case there are a lot of factors.  A lot of the banks have

19  come in here.  Clearly, from all the discovery I've seen, they

20  say to their clients, look, we are your friendly bank.  We love

21  the customers.  Come to see us.  If you want to talk to a

22  person, come to the BancorpSouth, because we like our

23  customers.  Good relations is very important to your banks.

24  They don't want to be perceived even inferentially taking

25  advantage of the customers.  So those are all factors.

1           So they enter settlements sometimes paying a lot more

2  than they think they should, maybe.  I don't know.  There are

3  all kinds of factors.  I am giving everybody credit for a good,

4  sincere, trying to work things out and accomplish them.

5  Wouldn't that frustrate what MDL is all about?  Maybe that's

6  good.  Maybe it should be.  Maybe there should be no more MDL.

7  I don't know.

8           Isn't that all about what could happen with everybody

9  being given the benefit of good intent?  Wouldn't that be the

10  end of MDL?  Wouldn't it be?  Really, it's a friendly question.

11  Tell me where I am wrong because it may be that I am missing

12  something.  This is why I like these conversations.  Good

13  lawyers tell me; Judge, you are way out in left field.  Great.

14  Tell me why that's all.

15           Am I missing something there that you can think of

16  readily?  I'm not going to force you.  I know you have been

17  very careful in your answers.  If you say, well, Judge, this is

18  getting pretty far off the motion to stay and I would rather

19  not answer it, fine.  That's okay with me.  I am making it as

20  easy for you as I can.

21           MR. TAYLOR:  No, I appreciate that.  I will try to

22  answer -- you asked a lot of questions, but I will do my best.

23           I think where you are making some incorrect

24  assumptions, even given the good faith, is that there are

25  external issues in this case that are unique.

```
 1                THE COURT:  Okay.

 2                MR. TAYLOR:  The JPML order suspending the tag-along

 3   notice requirement is unusual.

 4                THE COURT:  It happens in every MDL case.  Judge

 5   Middlebrooks said in the Baptiste case only six months ago.

 6   You send off and say, hey, there comes a time we cut it off.

 7   New cases are filed.  Here, there comes a point in time.  You

 8   can't just designate one Judge in one district forever,

 9   inheriting one problem.  You can't do it.

10                It looked like the new case filings had been dribbling

11   off for sometime.  So I said, hey, let's finish what we have

12   got.  We've got, I think, thirty cases, and subheadings, and

13   the tranches and they are all in gear.  They have all got

14   scheduling orders.  I believe maybe the fifth tranche doesn't.

15   But if it doesn't, I'll send it out today and get it going.

16   You say that would be designated differently.  Okay, I accept

17   that.

18                MR. TAYLOR:  The second factor that I think ought to

19   be focused on is that Federal Courts are not rubber stands.

20                THE COURT:  Most of the time I think you are right.  I

21   think you're right.  Bare in mind I know is a lot of Federal

22   Judges.  Some of them, all you have got to do is waive a paper

23   up and say, Judge, we settled our case.  Oh, great.  I

24   shouldn't talk to you about my personal experience.  You may or

25   may not have ever seen that.  It is rare.  I think most of them
```

1    look at it.

2           I know like in the Fair Labor Standards Act, there are

3    certain cases where I am required to have you all come in and

4    tell me all the details.  Oh, you have got me talking too much.

5    Please, tell me.  Go ahead.

6           MR. TAYLOR:  I am trying to answer your kind of

7    hypothetical question partly by referring to the specific.  If

8    a bank finds itself sued, and there is no requirement per the

9    JPML to notify it's a tag-along, and that case is settled, and

10   a Federal Judge approves it, will the same questions be

11   presented?  Yes.  Yes.

12          THE COURT:  Realistically no, it wouldn't be.  Nobody

13   is going to take one case and have to hire expert witnesses and

14   all of that.  Nobody is going do that.

15          MR. TAYLOR:  Maybe I misunderstood the question.

16          THE COURT:  I thought that was your answer.

17          MR. TAYLOR:  The question I was trying to answer was

18   will this end the MDL.  I think the answer is no, it will not

19   end the MDL, but because of these facts, could this question be

20   presented to you again, the answer is yes.

21          THE COURT:  Okay.

22          MR. TAYLOR:  The gatekeeper function of the Federal

23   Court approving the settlement and the teaching we have from In

24   Re:  Managed Care, no class certified in the MDL Court.  No

25   tag-along requirement.  The settling Court has to know about

1   the MDL proceeding and consider it.  That's what takes this

2   outside of the In Re: Managed Care case.

3          THE COURT:  Okay.

4          MR. TAYLOR:  I want to do my best to answer the

5   question.  I don't think it ends the MDL, but I think this

6   question could come up again, and I think the answer will be

7   the same.

8          The other thing I want to point out, to be full, is

9   what is happening here in the Western District of Arkansas is

10  that a class has been certified so jurisdiction has been

11  asserted over a class.  The notice process has started, the

12  traditional class process that you've been through many times.

13  People are already claiming it.  People are already asking

14  questions of the Notice Administrator.  There will be a final

15  Fairness Hearing.

16         If there are any questions about, any questions about,

17  the proprietary of this element, the propriety of the

18  negotiations, the fairness and adequacy of the settlement, all

19  those questions are meant for Judge Dawson, and I am absolutely

20  certain that those questions will be raised, and he will have a

21  full record, and he will render is decision appropriately.

22  That settlement process itself is the protection that I think

23  you have been talking about.

24         The procedural posture here, and the jurisdictional

25  posture here has changed because of Judge Dawson's order.

```
 1            Swift remains --

 2            THE COURT:  Well, he didn't enjoin this proceeding,

 3  did he?  He didn't do that.

 4            MR. TAYLOR:  I think by virtue of his order telling

 5  the class members that they can not participate in any

 6  litigation in any other forum, I think he has.

 7            THE COURT:  He has enjoined this MDL proceeding you

 8  suggest?  Is that what you are saying?

 9            MR. TAYLOR:  I am not saying that, Judge.  I want to

10  be careful.

11            THE COURT:  I hope you are.

12            MR. TAYLOR:  The settlement class that he certified --

13            THE COURT:  They can't participate.  So if they got a

14  settlement here, that's what you're saying.  I mean, if a

15  settlement ultimately comes to pass, if there is a class, they

16  can't participate.  They're out of it.  That's what you're

17  saying.  Sure, I agree with you.

18            MR. TAYLOR:  If I answered a different question, I

19  apologize.

20            THE COURT:  I think I answered it for you.

21            MR. TAYLOR:  Are we in agreement?

22            THE COURT:  I have thought through, you know, what

23  would have happened if two nights ago I finally signed off on

24  my fifth draft of an order I was entering on class

25  certification.  If, if, if it had held there was a class, and I
```

1    do not suggest that issue has been decided, I do not suggest

2    that.  I suggest that I don't know how you could possibly argue

3    that there shouldn't be a class.  Like tomorrow or today you

4    couldn't argue there shouldn't be a class, because you've

5    already argued there should be one.  That, at least

6    subconsciously, has a bearing on my evaluation of your bank's

7    objection to class, because you agreed there should be a class.

8          Actually, I could go in there and ten minutes later

9    sign an order class certification.  Tell them to send it out.

10   They would send it out.  Your people could decide what they

11   wanted to do, whether they wanted to be on this class or that

12   class.  They have got money there.  I mean playing this out in

13   the routine thing.  I am not enjoined from proceeding in my

14   case.

15         Whoever is a class representative, for those folks in

16   the class out in Arkansas, he has a problem, or she has a

17   problem, whoever that person is, in representing the class to

18   say, well, we think you are better off here, or you are better

19   off in Florida.  That raises some ethical problems.  There is

20   certainly a conflict there.  That's the lawyer -- that's his or

21   her problem out there.  I am sure Judge Dawson will deal with

22   it in an equitable and fair manner.  He is the one that has

23   enjoined, according to you, his class lawyer, class

24   representative.  If he appointed one person, or if he appointed

25   four or five, he has enjoined them from participating in this

1  case.  They do have a problem, but that doesn't affect what I

2  do in this case anymore than if -- I mean, I am not going to

3  get in any way, I am sure Judge Dawson is not, of enjoining

4  each other.  That's ridiculous.

5      Go ahead and make your argument.  I will do whatever I

6  do in my written order later on.  Go ahead.

7      MR. TAYLOR:  I appreciate it, Judge.  Again, I am just

8  trying to be clear so that I don't misspeak.  In Judge Dawson's

9  order, which you have.  I will get you the docket entry site.

10     THE COURT:  I don't think I do.  I think I have his

11 transcript of the hearing.  I have that.  I don't know that I

12 have his order.  Was it entered in time to get here today?

13     MR. TAYLOR:  We filed it, Judge, in attachments.  It's

14 at docket entry 2602 as Exhibit 1.

15     THE COURT:  Attached to what?  What was it attached

16 to?  What is that docket entry?

17     MR. TAYLOR:  That was our notice of the settlement and

18 request for stay.

19     THE COURT:  Date being when?

20     MR. TAYLOR:  March 27th.

21     THE COURT:  March 27th you notified me and sent me a

22 copy of an order entered by Judge Dawson on March 27?

23     MR. TAYLOR:  Correct.  That's the motion we are

24 arguing.  Attached to that is his order.  It's also at docket

25 entry 2605, and it's Exhibit 23.  That's a comprehensive filing

1   of everything that was filed over in the Western District of

2   Arkansas.

3           THE COURT:  His order, what's the date?

4           MR. TAYLOR:  March 26.  I'm sorry.

5           THE COURT:  I guess he has appointed a lawyer to

6   represent the class, hasn't he?

7           MR. TAYLOR:  He certified the class.

8           THE COURT:  No, no, answer my question.  He has

9   appointed a lawyer as a class representative?

10          MR. TAYLOR:  Right.

11          THE COURT:  He has appointed a committee like we did

12  here, or has he got just one lawyer?  Just a friendly question.

13          MR. TAYLOR:  He's got a law firm.

14          THE COURT:  He has got a law firm.  So he has

15  appointed a law firm, and he has enjoined them from

16  participating in this case?  Is that what you are telling me?

17          MR. TAYLOR:  No, sir.  Let me read the language so

18  that I'm clear.  It is at paragraph 20 of Judge Dawson's March

19  26th order.

20          Pending the final determination of the fairness,

21      reasonableness and adequacy of the settlement set forth in

22      the settlement agreement, no settlement class member -- and

23      that's a defined term, and it's the class that is

24      represented in the Thomas and Lawson case that includes all

25      of the class members who would have been in the Swift class

1    punitive class.  "Pending the final determination of the

2    fairness, reasonableness and adequacy of the settlement set

3    forth in the settlement agreement, no settlement class

4    member, either directly, representatively, or in any other

5    capacity shall institute, commence, or prosecute any of the

6    released claims in any action or proceeding in any court or

7    tribunal.

8         THE COURT:  Doesn't that enjoin you from appearing

9  here today?  Think about it.  You see, your client, the bank,

10 can't participate in this case.  How can you be here today?  I

11 appreciate that you are courteous to me, and you are a nice

12 man, and I am not going to hold it against you that you came

13 here today, but you see, that would certainly enjoin the class

14 representative.  That's the lawyer.  That's the Plaintiff's

15 Class guy.  That's the Mr. Podhurst of Arkansas.  If they got

16 anybody like him out there, that would be interesting.

17 Nevertheless, that's what they did.  He enjoined everybody from

18 being involved in this case at all.  Can't do it at all,

19 according to the argument that you just made to me.

20        That being true, and it certainly is a reasonable -- I

21 don't quarrel with your interpretation of what is in that

22 order.  I think you pointed it out.  So there they are.  If

23 this Court certified a class tomorrow, your people can't

24 participate in it at all.  That might wipe out a bunch of

25 people that were in the Arkansas banks.  I am saying that gets

1  back to my original question about an hour ago.

2        It really creates a big mess.  You are asking me to

3  stay things.  Maybe it would have been better to ask him to

4  stay things until I can look at it, or we can do it in a

5  different way or something.  You are asking one Judge to stay

6  everything and not the other Judge.  You are not asking him to

7  stay his order while I can consider this one.  All right, I am

8  just trying to think where we would end did in real life, in

9  practical terms.

10       MR. TAYLOR:  In practical terms, Judge, it really

11 does, I think, boil down to that in many ways.  When a lawyer

12 represents a client who has been sued in multiple fora, and in

13 this case there is an MDL on the one hand, an MDL that was set

14 up by a Judicial Panel on multi-district litigation that

15 suspended the rule about notifying tag-alongs.  You are

16 presenting with a case that is in the court where it was filed

17 and will be.

18       THE COURT:  Yes, but the lawyer you are talking about

19 has been participating in this case all along.  He certainly

20 knows about this case.  He says relying upon a suspension of

21 the tag-along rule of MDL, he feels he can keep secret what he

22 is doing out somewhere else until he gets it accomplished.

23 Pretty interesting.  Where is his ethical responsibility, as an

24 officer of both courts, to keep people advised?  Somebody

25 advised me, maybe you did, after the fact.  Oh, well, thank God

1    the ethical things are somebody else's worried.  I'm not

2    worried about that.  I'm not going to get concerned with that

3    if I can avoid it.

4            The other thing is a question of what kind of a

5    humongous mess would be created, or is created, by two Courts

6    considering the same issue?  That is, class-certification on

7    MDL debit card issues over a debit card consumer litigation.

8    That's why we have MDL so we have one Judge to work on it up to

9    the trial, and that was ongoing.  Now we have a different Judge

10   involved, or a different Court involved.  I don't think for a

11   heartbeat Judge Dawson is any more personally involved in this

12   than I am.  I mean, I don't know him personally, but I am sure

13   he is quite a good man.

14           Do you have anything else that you would like to add

15   before we listen to Mr. Podhurst?

16           MR. TAYLOR:  Judge, I am happy to answer any other

17   questions that you may have.  I will reply, if I may, if

18   there's anything further.

19           THE COURT:  Thank you, yes.

20           Mr. Podhurst, you will have to excuse me.  I know I do

21   this to you every time.  I am going to have to take a five

22   minute recess.

23           COURT SECURITY OFFICER:  All rise.

24           [There was a short recess at 12:10 p.m.]

25           THE COURT:  Thank you, be seated please.

1          Mr. Podhurst.

2          MR. PODHURST:  Aaron Podhurst, co-lead counsel for the

3   Plaintiff, Your Honor.  With Your Honor's permission, I am

4   going to start off with the argument, and Mr. Gilbert is going

5   to follow.  As co-lead counsel, Your Honor, I appointed

6   Mr. Gilbert and Mr. Ostrow to handle particular parts of the

7   Bancorp so they will have individual knowledge on some of the

8   things that they filed, and might be able to answer your

9   questions.

10          Your Honor, I would like to start off by saying I know

11   I don't have to say one word.  I know, by your questioning,

12   that you know exactly what is going on.  I do have to say

13   something because you appointed me co-lead counsel, and I

14   represent a group of people who, hopefully, will be certified

15   very shortly.  I have certain responsibilities to them.  I have

16   a few things to say about what has gone on here.

17          I want to use the word "snookered" which is the

18   adjective that I would say feels what happened to the Court and

19   the plaintiffs, in this case, by my adversaries.

20          It's the same word that I said in front of Judge

21   Moreno in the Health Care case.  Other than Judge Moreno, I

22   know more about that case than anybody, because I was liaison

23   counsel and I argued it.  It is absolutely the same as here,

24   with the exception that they want to make a big deal out of the

25   fact that it had already been certified, where here, it is

1  pending to be certified, a distinction without merit.  I used

2  that word, and he picked it up in his opinion, Judge Moreno.  I

3  understand he is a District Judge, but it should be persuasive

4  because it's exactly the same case.

5       I also want to use the word "collusion."  While we

6  were, in good faith, doing what we were told to do by this

7  Court, prepare, discover, and move this case forward as fast as

8  we can, they were colluding with some plaintiff having

9  dismissed the State Court action, which they didn't tell us

10  about, and then, within thirty days, run in to Federal Court

11  with some plaintiff, submit an order to a Judge.  I want to say

12  something about Judge Dawson.  He is probably is pretty smart

13  guy.  He asked the right questions, and he got the wrong

14  answers.  I'm going to go through that in a minute.  He

15  actually asked some pretty good questions, but unfortunately,

16  the answers weren't correct.

17       They ran in there and within a thirty-day period took

18  care of all of the eighteen months work.  Judge, I said this

19  once before to you, and I'm going to say it again.  I don't

20  appreciate working 24/7 trying to do the right thing and having

21  the lawyers take all of the money, and all of the time that we

22  have spent on behalf of the class, and then do some kind of an

23  end-run which violates, in my opinion, the rules of this Court.

24       One rule of this Court is the Local Rule 3.8, which

25  nobody has suspended in my knowledge.  I want to bring to your

1    attention, Your Honor, that rule requires them to tell us about

2    not only the Thomas case in Federal Court, but the previous one

3    in State Court, which they dismissed and colluded to re-file in

4    Federal Court.  I want to tell you, Your Honor, just as recent

5    as Monday, other bank lawyers, and I don't have the document

6    number, Chiles v. Cernovas Bank, filed a defendant's notice of

7    pending action in another case, as they were required to do,

8    which allows us to go to the MDL and get a transfer here.  They

9    always do a tag-along.

10          They had that obligation as pro hac vitae to do it to

11   this Court.  It is my obligation, the plaintiffs' obligation,

12   to get the tag-along sent here.  We all know what happened with

13   the JPML.  Your Honor decided you didn't want anymore new

14   banks.  You had enough, 31, 41.  Fine and dandy.  They sent two

15   tag-alongs since then.  We understand that.

16          I want to say something, Your Honor.  I say nobody has

17   more respect for the federal system than I do.  I believe Your

18   Honor has an obligation, in between the two months that the

19   JPML meets, to protect the whole Multi-district Panel statute.

20          We now know what happened.  They timed it with the

21   March hearing of the JPML, and now we are not going to be able

22   to get it transferred until they meet again in two months, et

23   cetera, et cetera.  They went to a Judge who had nothing to do

24   with this case.  With a plaintiff that they, apparently, had

25   picked up.  They answered questions that Judge King always

1    grants motion to stay.

2          Your Honor, if there is one judge in this courthouse,

3    other than the personal reasons I asked you to put off the

4    hearing for three hours.  I was speaking at a funeral.  My

5    buddy, Mr. Davidson, was out of the country and wanted

6    something put off for three days, and you always accommodate

7    people when they have a personal problem.  But if there is one

8    judge in this courthouse that wants his time limitations to be

9    met, unless there is good cause, it's Your Honor.

10         Every one of the stays that you have granted have been

11   joint approaches because we are settling the case or we think

12   that we are going to get them settled, and we're really doing

13   pretty good, Judge.  It has been long haul.  It's been a tough

14   fight, but we're starting to get done.  You never grant

15   unilateral stays.  To tell Judge Dawson that Judge King always

16   grants unilateral stays, if that's not a half truth, or a

17   misrepresentation, it's not factual.  It just isn't factual of

18   what happened in this case.

19         They make an issue about Monday.  Monday we didn't

20   object.  There are certain cases that we get together outside.

21   They are not worth bothering Your Honor with, or the class is

22   small or something, let's just go on.  That's what we are

23   supposed to do.  That's what we do.  Use some judgment here.

24         I don't know of any unilateral stay that you have

25   granted where we didn't agree, or didn't have an argument

1  about.  It's never happened.  I have been practicing in front

2  of you for forty plus years.  I don't understand that

3  statement, other than to mislead, respectfully, Judge Dawson,

4  who I am sure is a fine Judge.

5       There is also a continuing obligation on answers to

6  interrogatories.  We did out an answer.  They didn't have any

7  pending cases.  They didn't update it.  How do you get around

8  Rule 108 when you are a pro hac vitae lawyer?  Judge King needs

9  to be told, and we have to get a copy of it, because that's the

10  world that we live in, of a pending matter in a case against

11  the defendant.  We would move the MDL immediately to transfer

12  it here.  So, they violated that.  Intentionally.  It was

13  collusive.

14       Judge, I used to like the word.  I said it to Judge

15  Moreno in the other case.  He didn't pick up on it.  This is

16  dirty pool.  This is below the level that we should require of

17  lawyers practicing in Court.  It just isn't done.  They have

18  the obligation to do what the lawyers for Cernovas Bank did on

19  Monday.  If they had done that, this never would have happened.

20  Judge Dawson rendered his position.  We didn't know about it

21  while they are going through this process.  These rules are not

22  to be taken lightly, or not to be done, et cetera.

23       I think this argument that they have made, I know I've

24  used this word before, but I like it, this is La La Land.  They

25  know what happened here.  They went to get a very small

settlement but they perceive, and I perceive, that even though
you are going to give everybody the rights to hear every
argument on certification, which you do, that they are going to
find that there are no distinctions between the facts in this
case and the previous certifications you made.  That's what is
happening here.  I believe that.  That doesn't mean I am the
Judge.  I am not the Judge.  But I don't think good judges take
the same facts and file opposite of the same facts in different
cases.  They are usually consistent unless somebody can tell
them why not to be consistent.  So they said let's go beat it.
Let's snooker the plaintiffs.

        I am being honest, Judge, I don't know they think they
would get away with it in front of you.  I haven't gotten that
yet.  I don't understand it.  You have put in almost three
years of a lot of work in this case.  You asked the right
question.  I can tell you right now there would be no MDL case,
because you would be saying to every defendant, even the ones
we have settled in the hopper, which we haven't finished the
papers, go do it.  I don't care.  I don't care about the MDL
statute.  I don't care about any of this.  I don't care about
all the work I have done.  Ha-ha.  They want me to feel sorry
that they sent out notice to 350,000 people, five days after we
filed our objection, and asked you to enjoin them?  I don't
feel sorry for them at all.  They made their bed thinking they
were going to race.  I don't know what they thought you would

1   do.  I don't understand how they can do that after what we

2   filed in this case in front of you.

3          Did they inspect us to wake you up at 3:00 a.m. and

4   say we have to have a 3 a.m. hearing?  I mean, your hearing was

5   pretty quick.  So they sent out the notice.  I'm sorry they

6   sent out a notice.  I don't have anything against Judge Dawson.

7   He is probably a great judge.  He asked some pretty good

8   questions.  He got the wrong answers.  The MDL doesn't care

9   anymore?  We all know that was with new banks.  This is La La

10  Land.  Judge King always grants motions to stay?  It must be a

11  different Judge King.  Unilateral?  I am not aware of any such

12  instance in that case.

13         So what happens, Judge?  We sit here in a situation in

14  which the question is, and let me be specific is what I am

15  asking on behalf of the plaintiff's class, who I do represent,

16  who I care about, who are going to get a better deal, in my

17  opinion, if the class is certified.  Judge, they took every

18  person, other than the plaintiff, they took them out of this

19  class and said "we are not interfering with Judge King."

20  That's not La La Land?  You took these 41 individual

21  plaintiffs?  These aren't 41 purported class action complaints

22  that we are asking cases to be certified?  That's not what we

23  have been doing for almost three years?  They took all of these

24  people out of the class, and they said, ha, Judge Dawson --

25         Your Honor, the case of In Re: Managed Care, which I

1  believe is very good law.  It has been followed since then

2  Judge Moreno, now Chief Judge Moreno at 236 F.Supp. 2nd 1336.

3  My judgment is on all fours.

4        It would make a mockery of the multi-district

5  litigation to do these collusive end-runs.  Judge Moreno

6  enjoined the defendant and the lawyers in going forward with

7  that other action the same as here.  He entered that order.

8        I will say another thing.  When the lawyers finally

9  came in front of him, after the injunction, they were a lot

10  more contrite than these gentlemen.

11        I feel like we have brought -- and I am upset by it.

12  I can't help it.  I practiced for fifty years.  I think we

13  brought disrepute on the court system when we do things like

14  this.  That's the way I feel.  We show a lack of respect for

15  the rules.

16        Rule 3.8 is not a voluntary rule.  It gives us the

17  notice to go to the MDL to get it here.  They colluded to do

18  this.  It's wrong.  It has no fair play to it.  Now, we are

19  sitting here, and we are supposed to be saying, well, you are

20  going to be interfering with Judge Dawson?  I think Judge

21  Dawson will know if and when he talks to you, or if or when he

22  finds whatever your ruling is going to be, that he was not

23  dealt with fairly, and I'm sure he is a fine judge.

24        He asked such specific questions and got the wrong

25  answers.  That's why I'm annoyed.  I am a little concerned, he

1    said, with the speed with which we are moving.  We have our own

2    rocket docket.  You are going very fast.  Shouldn't we be more

3    deliberate?

4           They say, "Well, there are three reasons, one, the

5    proposed settlement class, BancorpSouth customers, had existing

6    bank relationships."  I don't even know what that means.  "Bank

7    regulators," I don't know what that means, "and the bank

8    shareholders."

9           The answer is:  Judge King is probably going to

10   certify this class very soon, which they didn't say.  At least,

11   that's the plaintiff's position that you would certify the

12   class because it's the same as the other cases.

13          Then he absolutely says to them; "am I going to get on

14   the black list of a judge in Florida?"

15          Mr. Taylor:  I certainly would hope not, Judge.  I

16      think what we have seen with Judge King is every settlement

17      -- The Court:  He or she may be willing to get rid of it?

18          Mr. Taylor:  I was going to say, every settlement that

19      has been presented in that court and from outside that

20      court has resulted in the stay of the class aspects of the

21      litigation in the MDL.  We have been careful to preserve

22      the right of the plaintiff to pursue his claim.

23          I guess that means Mr. Swift.  I don't know what it

24   means.  I guess it actually takes everybody in the class that I

25   am representing out of your jurisdiction.  That's how they

1   define the class.

2           So he is telling the Judge, every time they asked you

3   for stay, it's been granted.  Unilateral actions have never

4   been granted.  They have been granted because we come to you,

5   smiling usually, and say, Judge, would you stay these

6   proceedings, or we submit an order saying we are about to

7   settle it.  It is succeeding.  It has been tough going with

8   some of these cases, but we have been getting a lot of

9   settlements now.  That's what they tell the Judge?  That's not

10  fair.  He inquired about Swift.  Telling him this is a Northern

11  District of Florida case, there's more here, et cetera.

12          Your Honor, then they tell him "that JPML, they

13  actually told us to stop sending cases to Florida for whatever

14  the determination.  And they told him we believe it's because

15  they decided that there were too many cases that the MDL had

16  gone its course.  So this case would never end up there

17  anyway."

18          That's just not true.  I don't want to cast

19  dispersions.  It's just not a true statement.  It will end up

20  as soon as we tell the MDL what happened.  This is no question

21  about it.  This is one of the banks that were sent here.

22          So I say to myself, how do I handle this matter in

23  front of Judge King?  Am I supposed to be upset?  I am upset.

24  I can't help it.  This is wrong.  They created this situation.

25  I am not blaming Judge Dawson.  He asked the right questions,

1  and he got the wrong answers.  Do we just let it go?  You asked

2  learned counsel on the other side, what would happen to this

3  case if I permit it?  There will be a new case.  I don't even

4  thing the people that settled it with us will settle until the

5  papers are dry, and Judge King says he doesn't care.  Why

6  should we pay you money?  Why should we pay the classes money?

7  Forget the MDL.

8        Judge, I am not asking you to do anything with them

9  because that's not my burden.  You have been sitting for

10  forty-one years in this court.  You do whatever you want to do.

11  But I am asking you, as co-lead counsel for this plaintiff's

12  class, to enter an injunction enjoining not only BancorpSouth,

13  I am asking you to enjoin the attorneys going forward, just

14  like Judge Moreno did.  This is wrong.  This brings disrepute

15  on the federal system.  Lawyers ought not to do it.  The only

16  way to say it is the system will be better off if you protect

17  the multi-district statute, and we do things in the efficient

18  way that was done.

19        I am not happy about my argument this morning.  I feel

20  like I'm in a system that ought not to be.  We didn't know

21  about this case until they told us that they had already done

22  what they did.  We found out after that order was submitted.

23  There is nobody in this courtroom that believes that Judge

24  Dawson took six months of testimony and so forth.  So I decided

25  I really ought to approve this.  His questions belied that.  He

1  asked some pretty intelligent questions.  I assume it's a he.

2  I don't know the gentleman.

3      These lawyers didn't comply with the Local Rules, and

4  therefore, prevented us from stopping it until it was too late.

5  I must appeal to you to use your fair judgment and your

6  authority to protect the MDL, to protect the thousands of

7  people who we represent and what we believe, in good faith,

8  will be a certified class, and not let them lose their rights

9  in a manner that is unfair.  I, respectfully, suggest to you

10  that Judge Moreno's decision In Re: Managed Care, and how far

11  he went, and I am not going to go through the writs and all of

12  that.  Your Honor can read.  Probably has already.  I suggest

13  to you there is no distinction between it.

14      We have more than the BancorpSouth case in front of

15  us.  We have many other banks.  We have worked very hard to

16  play by the rules, and the defendants have to play by the same

17  rules.

18      Mr. Gilbert would like to tell you some things that

19  were going on while this collusion was taking place.  Thank

20  you, Your Honor.

21      MR. GILBERT:  Good afternoon, Your Honor.  May it

22  please the Court.  I will try to be as brief as possible to hit

23  some points that Mr. Podhurst hasn't already covered.

24      Number one, Mr. Taylor and Mr. Holley continually

25  point out to you that they have preserved Mr. Swift's right to

1    pursue this case.  What they neglect to point out is that if

2    Mr. Swift is left alone, as a class of one, to pursue his

3    claims here, this Court will end up lacking subject-matter

4    jurisdiction over his claims, because they won't meet the

5    requirements of the Class Action Fairness Act and; therefore,

6    they will come into this court, and they will file a notice of

7    suggestion of lack of absence of subject-matter jurisdiction,

8    and as you said, in response to Mr. Taylor's comments, not only

9    from a practical standpoint but from a legal standpoint, the

10   game will be over.

11           Next, this class action notice issue that they talked

12   to you about, that the notice went out on April 3rd and April

13   4th, as reflected in a supplemental declaration that they filed

14   on April 16th.  As Mr. Podhurst has pointed out, they knew

15   about our pending motion to enjoin.  They will stand up here

16   and say to Your Honor in just a moment, well, they did this

17   because Judge Dawson's preliminary approval order directed that

18   notice go out.  They didn't go back to Judge Dawson and file a

19   pleading with him asking him to stay the issuance of that

20   notice while Your Honor considered our motion to enjoin.

21           They didn't even make an attempt to ask Judge Dawson

22   to slow the process down knowing that this Court was going to

23   hold a hearing today.  They went ahead, they sent a notice on

24   April 3rd and April 4th, so that they could come to this Court

25   today and argue to this Court that the process is so far along

1  that you shouldn't order them to turn back the wheel.

2        This notice process, Your Honor, didn't occur over

3  night.  As you recall, from our Bank of America settlement, it

4  takes months for these types of things to be done.  It takes

5  weeks for the lawyers on both sides to sit down and draft the

6  notices.  It takes weeks for the company that is responsible

7  for sending out the notice to work with those lawyers and to

8  figure out how to do it.  So this didn't happen over night.

9  This is a process that Mr. Taylor, representing BancorpSouth,

10  and the lawyers out in Arkansas, who have been appointed to

11  represent the group of people that sued there, worked together

12  on, colluded together on, together with the Notice

13  Administrator to put together this plan so that literally day

14  after Judge Dawson signs his order, they could send this notice

15  out and come stand before this Court and say, "It's too late.

16  It's futile.  We shouldn't have to turn back the clock."

17        Mr. Holley stood before you this morning earlier, and

18  went to great lengths to point out why three other cases, whose

19  settlements were approved by other judges around the country,

20  should support their motion to stay.

21        Specifically, he mentioned the Fifth Third Bank case

22  and the National City case, the two he mentioned that I am

23  going to talk about particularly.  What he failed to point out,

24  Judge, is that in both of those cases, the claims that were

25  filed, the complaints that were filed against Fifth Third Bank

1    and against National CitiBank, number one, were filed before

2    the claims that were brought against those two banks in the

3    multi-district litigation proceeding.

4            Number two, even more importantly, he failed to point

5    out that those cases, like the cases against those banks that

6    were here before you, were in their infancy.  Virtually no work

7    had been done.  He didn't contrast it to the situation here,

8    where for eighteen months, since the JPML transferred this case

9    to this Court, in October of 2010, we have litigated.  We have

10   engaged in motion practice.  They have opposed motion practice.

11   They filed motions of their own.  They have produced, I think,

12   it's close to 100,000 pages of documents to us.  We have taken

13   a deposition, a lengthy deposition.  We are in the process of

14   taken others.  We briefed, as Your Honor knows and mentioned,

15   the class certification motion.

16           Mr. Holley conveniently left out, in his recitation to

17   Your Honor this morning, about why this case is like Fifth

18   Third and National City, the significant distinctions between

19   them.  Just like Mr. Taylor, and Mr. Holley, and the

20   plaintiff's lawyer in Arkansas left out important information

21   when they appeared before Judge Dawson.

22           Your Honor, there are, I want to elaborate on a point

23   that Mr. Podhurst made.  You picked up on it even before we

24   stood up, about what is the practical effect with other

25   defendants if this process that they have engaged in is allowed

April 18, 2012

1  to proceed forward.  You understood quickly, and Mr. Podhurst

2  reiterated, that it will essentially give license to all of the

3  other defendant banks that were involved in active litigation

4  with, before Your Honor, to go out and try to find somebody

5  else in another state or district court around the country, and

6  settle the claims that are the subject of hotly contested

7  litigation here, and trump the process that we are involved in.

8        As the Court knows from the notices that we filed, we

9  are engaged in ongoing discussions and active settlement

10 negotiations with a number of defendant banks.  Those counsel,

11 some of whom are in the courtroom, and some of some of whom

12 will read the transcript of this hearing, regularly speak to me

13 and to other colleagues on our side and provide important

14 detailed sensitive financial information that allows us to

15 begin the very tedious and very substantial process of

16 negotiating a resolution to one of these class action cases.

17       That is why we filed Mr. Ostrow's supplemental

18 declaration under seal.  It was filed as docket entry 2626-2,

19 but the actual declaration of Mr. Ostrow was filed under seal.

20 I urge the Court, if you haven't already done so, to take a

21 look at the exchange of e-mails that took place between

22 Mr. Taylor and his associate representing BancorpSouth, and

23 Mr. Ostrow, on behalf of our team, over a period of six months

24 where we were trying to develop the information, with the

25 assistance of BancorpSouth, needed in order to engage in

1    serious, meaningful settlement negotiations in this important

2    case.

3           Ultimately, BancorpSouth lawyers shut the door because

4    they didn't tell us that they were in the middle of

5    negotiations with another group in Arkansas which, ultimately,

6    led to this settlement.  I don't want to reveal that

7    information in court.  That's why it was filed under seal.  I

8    don't want to lose the trust that other defense counsel have

9    imposed on me in these ongoing conversations.

10          As Mr. Podhurst said, it's very clear what happened

11   here.  Mr. Taylor and his client made a conscious decision to

12   get the best deal they could, even if it meant undermining the

13   authority of this Court, and undermining the work that we are

14   engaged in on behalf of Plaintiff Swift and the proposed class

15   action in this case.  That's just not right.

16          Your Honor, in our motion we have asked the Court for

17   several forms of relief.  I would like to reiterate what we

18   believe they are and supplement it accordingly.

19          Number 1:  We are asking this Court to deny

20   BancorpSouth's motion for stay, which is docket entry 2602.

21          Number 2:  We are asking this Court to either dispense

22   with oral argument on the pending motion for class

23   certification that we filed, and which is fully briefed, and on

24   BancorpSouth's Daubert motion that they filed, and which is

25   fully briefed, and to either rule on those pending motions on

1   the papers or to hold oral argument immediately as soon as

2   possible that the Court can bring us in and resolve those

3   motions.

4           Number 3:  We are asking the Court to enjoin further

5   proceedings in the later filed copycat Thomas case that

6   BancorpSouth is attempting to settle outside of this Court.

7           Number 4:  We are asking this Court to order

8   BancorpSouth and its counsel who, as Mr. Podhurst noted, had

9   been admitted pro hac vitae to appear before this Court, to

10  produce the documentation that led to the announcement they

11  made to Judge Dawson and, ultimately, to their motion to stay

12  here, so that we can really see how long this collusive process

13  has taken place, and this Court can consider in due time

14  whether appropriate sanctions may be in order.

15          I would like to add two other points that are not in

16  our request for relief, because they have become apparent as

17  the passage of time since this motion was filed.

18          We would ask the Court to enter an order with respect

19  to all bank defendants who are pending in MDL 2036, reminding

20  them and their counsel of their obligation under local Rule

21  3.8, to immediately notify the Court and us of any other

22  pending litigation in State or Federal Courts around the

23  country that relates to the subject-matter of this case.

24          Number 2 related to that, to immediately notify Your

25  Honor and us, whether in any of those cases, that particular

1  bank defendant is engaged in even the most preliminary of

2  discussions with the other plaintiff's counsel regarding a

3  potential settlement of claims which could undermine this

4  litigation, so that we can timely act to avoid the situation

5  like arose here, where we are left to appear today, before the

6  Court, after Mr. Taylor and his client ran in to Judge Dawson.

7          According to the transcript, they didn't, apparently,

8  even go to Judge Dawson's normal courtroom.  It appears from

9  the transcript that they went to another city where he was

10 presiding on a special matter so that they could get in front

11 of him even more speedily than normal to avoid a situation

12 occurring again like occurred here, where we are left in a

13 situation where you, if you haven't already done so, will find

14 yourself consulting with colleague Judge Dawson.

15         He has, Your Honor, it hasn't been pointed out to you

16 yet, Judge Dawson has the power to vacate that provisional

17 settlement certification order at any time for any grounds he

18 sees fit if he feels that the facts have not been shared with

19 him fully.  He has that power.

20         He also has the power to order BancorpSouth and his

21 counsel to send out a new notice to all 350,000 people telling

22 him that the provisional certification has been vacated, and to

23 require BancorpSouth and its counsel to pay for it.  Those are

24 powers that Judge Dawson has.  We would ask that you consult

25 with him so that you, as the presiding MDL-appointed Judge in

 1  2036, and he is the Judge that was unwittingly drawn into this

 2  thing and tried to do his best, can facilitate a resolution of

 3  this particular matter but also avoid these types of matters

 4  from happening again so that it doesn't undermine the integrity

 5  of this process with respect to the remaining banks that we

 6  continue to litigate with.  Thank you.

 7        THE COURT:  Anything else for the Plaintiff Class?

 8        I have a question either to Mr. Gilbert or to

 9  Mr. Podhurst.  The fully briefed motion on class certification,

10  what is your position of the question that I asked Mr. Taylor,

11  as to whether or not you perceive any inconsistency that this

12  defendant bank's position where they, in this case, object to

13  class certification and then Arkansas agreed that's the best

14  way to best handle the case, that they agreed to class

15  certification?  It's kind of a silly question to ask you, but

16  what is your position?  I asked him.  That may be the one I

17  didn't require him to answer.  I have forgotten.  I am not

18  holding it to anybody.  Do you have a view point on that?

19        MR. GILBERT:  We do, Your Honor.  I would like to

20  stand here and say to you, you know they basically admitted

21  that a class is appropriate and you need not worry about

22  resolving it as a contested motion, but I don't think that

23  would be the right answer, frankly, from a legal perspective.

24        I think that the right answer is that this Court --

25  there is a slight difference between the analysis that a Court

1   does when it's viewing an unopposed motion for class

2   certification for settlement purposes versus the analysis that

3   the Court does on a contested motion for class certification

4   for litigation purposes.  The litigation motion, the one that

5   we have fully briefed here, requires a slightly more rigorous

6   analysis.  The former requires an analysis as well, but this

7   requires a slightly more vigorous analysis.

8          We believe that you can take into consideration the

9   fact that they have not opposed certification of the Thomas

10  case in Arkansas, and it is relevant to your consideration

11  here.  But I do believe it's important that the Court not

12  essentially grant our motion by default.  I think the Court

13  should still conduct its own rigorous analysis, because the

14  facts and the law still supports certification in spite of

15  their submission.

16         THE COURT:  What is your position -- I'm sorry, I will

17  be with you in a minute, Mr. Taylor.  I will give you a chance.

18  -- bank counsel argued inferentially, they didn't really hit on

19  this very much.  I touched on it earlier, and I am sure he

20  tried to answer everything that I asked, and he did a good job

21  of that, but I don't know whether this question got answered or

22  not.  In arguing the cases that the bank presented, one of the

23  cases, at least one, maybe two of the cases that the bank's

24  counsel relied upon suggested that the class, I guess the joint

25  motion, the bank and the plaintiff's class jointly asked Judge

1    Dawson to approve, they argued, inferentially argued, I don't

2    want to put words in Mr. Taylor's mouth -- they inferentially

3    argued that that class was broader than the class, they said

4    that I was going to suggest, I think -- that I was going to

5    certify.  I don't know how they knew I was going to certify

6    unless they looked at the certification we did in the TD Bank

7    case, and they assumed I was going to enter an order similar to

8    that or something.  I don't know what they assumed, but the

9    bank took the position that because the class certified by

10   Judge Dawson a few days ago, or last week, is broader than what

11   the plaintiff's class here had asked this Court to certify.

12   Broader because the class out there, the bank has said in their

13   submission to Judge Dawson, a fair summary of it is certify

14   this class, our class out here, which deals not only with

15   overdraft fees on overdraft accounts, but overdraft fees on

16   CDs, overdraft late payment fees on mortgage accounts or

17   whatever.  In other words, we, the bank, feel that we should

18   discourage all of that to the class in Arkansas.

19         The class in the MDL case in Florida only deals with

20   the bank overdraft on your bank account.  And because there is

21   a case, and forgive me, I forget the name of it, one of the

22   ones they rely upon says that because these classes that one

23   class was broader or smaller, that that was -- I believe it was

24   a Pennsylvania case I think -- that it was all right to certify

25   the intervening class.

1            This Court has not decided, with a written order yet,

2   pro or con on whether there is a class.  Hypothetically, there

3   can only be two results.  One is no, there is not to be a

4   class, in which event all of this is moot.  Two, there is a

5   class.  There are only two results.  Without indicating that I

6   have decided at this moment one way or the other.  If there is

7   to be there is no class, that's one thing.  If there is a

8   class, then the plaintiffs are presuming it would be patterned

9   -- I'm sorry, the defendant bank, Mr. Taylor and Mr. Holley are

10  presuming in their argument that it would be what you have

11  asked for.  They are drawing a comparison in their argument, in

12  their briefs, about your class here, this class that is

13  requested, vis-a-vis the class out in Arkansas.  Their argument

14  goes like this; that that class is broader; therefore, the

15  Pennsylvania case, which makes an exception and says you can

16  jump and if you do the quick class certification and get it

17  done first, you are out from under MDL.

18          Now, that presumes and is predisposed to suggest, I

19  think, or presumes that if I decide on a class, I would limit

20  it to what you asked for.

21          Now, I don't know.  Well, I guess they make that

22  presumption, the lawyers do, on the basis that it would be

23  similar to the one class that I have ruled on, or the others

24  where there are class settlements and all.  So they have a

25  basis for making the argument.  I am not questioning the

1   sincerity of their argument at all.  I am just saying what if

2   this Court did decide, it's a hypothetical, if there is to be a

3   class, what if the Court said that is a good class

4   certification out there.  If the bank is happy out there, let's

5   make it the class here.  It's a broader class.  It may be

6   broader.  I could be interpreted as being broader because it

7   covers debit cards and mortgage and which-what.  Anything that

8   the bank felt they had misapplied the law and wrongfully

9   charged all of their clients, and they want to make it right

10  and make it very sweeping, broad.  It's good will.  It's a lot

11  of good reasons.  What would be wrong with making it, if that

12  were to come back, the same class?  Why not take what the bank

13  is happy with in Arkansas?  They may not be happy in Florida

14  with it, but it's happy in Arkansas.  Am I missing something

15  there?

16         Why am I limited to what you say the class is or what

17  they say the class should be or shouldn't be?  I am not limited

18  to any of that.  I am looking at what is best for the operation

19  of the litigation.  If in Arkansas the bank was willing to do a

20  much broader class, if it is, I don't know that it's broader,

21  but by inference they argue that in the Pennsylvania case.  It

22  was broader, so therefore, there is a distinction.  Therefore,

23  Judge, stay yours and grant ours in Arkansas and so on.  What

24  about that?

25         MR. GILBERT:  I have a couple of responses to that

1    question, Judge.  First of all, the benevolence of the bank in

2    wanting to look out for all of its customers in this settlement

3    in Arkansas for $1,750,000 is not lost on any of us.  As much

4    as I would like to stand here and say to the Court, certify the

5    same class that they agreed to in Arkansas, again, I don't

6    believe that that is necessarily the right thing to say to the

7    Court.  I don't believe it is the correct thing to say to the

8    Court.

9         Your Honor is not bound by the proposed class

10   definition that we submitted in our motion.  Your Honor is not

11   bound by the proposed class definition that they submitted in

12   their collusive agreement to Judge Dawson.

13        What I can tell you is that they came up with working

14   together with the plaintiff's lawyers in Arkansas.  They came

15   up with a class definition that not only covers the overdraft

16   fees charged on debit card transactions, which is really the

17   subject-matter of our case and it has been since day one, but

18   in order to try to sell that to Judge Dawson and then to you,

19   they broadened it so that it includes insufficient funds fees

20   on paper checks and the other types of things that you

21   mentioned.

22        THE COURT:  Well, I am not sure.  I just read through

23   this.  You guys throw a lot of stuff at me here, particularly

24   in getting into the facts of these cases, the Pennsylvania

25   case, the Illinois case, the Judge Moreno case.  So I don't

```
 1  know.  Is their class broader or not?  It seems just scanning

 2  through it that it might be.  At least, I don't know, but the

 3  Pennsylvania case made a distinction on that.  Well, if the

 4  classes are the same, then that distinction goes out the window

 5  one way or the other.  That's not a distinction, but is that a

 6  broader one in Arkansas if the bank is being more generous with

 7  their settlement in terms of their customers as to who was

 8  included?

 9          MR. GILBERT:  it is defined more broadly, but by no

10  means are they being more generous.

11          THE COURT:  Tell me something factually.  We know the

12  debit card.  What else?  I threw in that thing.  That's my

13  word.

14          MR. GILBERT:  Judge, they are substantially similar.

15  If I can get a moment to get the order, I can tell you the

16  difference.

17          MR. GILBERT:  Your Honor.

18          THE COURT:  Yes.

19          MR. GILBERT:  Judge Dawson's order that he answered,

20  based on the agreed class definition in the Thomas case,

21  essentially includes every BancorpSouth customers who had, at

22  least, one overdraft fee, or NSF fee, that was charged and

23  collected during the class period.  That is substantially

24  similar but slightly broader than our case.  I will explain to

25  you how.
```

1          This class definition says nothing about resequencing

2    of debit card transactions.  This class definition in Thomas;

3    in order to be deemed a member of this settlement class, all

4    Mr. Thomas, or the other folks who are covered by it, have to

5    have occurred as if they were charged one time, for any reason,

6    an NSF fee, a check where you didn't have enough money in your

7    account, or an overdraft fee, when you used your debit card or

8    ATM card.  It says nothing about resequencing.

9          Why did they do that?  They did that not because they

10   are trying to be more generous Judge, but because they want the

11   broadest possible class to get the broadest possible release.

12   That's what the defendant wants.  They want to pay as little

13   money as possible but to buy the biggest possible release that

14   they can possibly get.

15          THE COURT:  All right.

16          MR. GILBERT:  I want to mention one case which I think

17   may be helpful.  They cited a number of cases that your

18   referred to.  They don't cite the Kansas District Court

19   decision involving Bank of America.  It has nothing to do with

20   the Bank of America litigation before Your Honor, but there is

21   a case that we cite in our reply brief from the District of

22   Kansas involving Bank of America.  It not only cites Managed

23   Care, Judge Moreno's decision favorably, but it picks up on

24   some of the very decisions that BancorpSouth relies on.  In

25   that Bank of America decision, the Court also enjoined the

1    defendant and its counsel from proceeding.

2            THE COURT:  Thank you very much.  It is now ten after

3    one.  I am going to take a break.  We will come back after

4    lunch and hear from Mr. Taylor and Mr. Holley in their

5    rebuttal.  We will be in recess until 2:30.

6            COURT SECURITY OFFICER:  All rise.

7            [There was a recess for the noon hour].

8                         AFTERNOON SESSION

9            THE COURT:  All right, we will hear from Mr. Taylor

10   and/or Mr. Holley in their rebuttal submission.

11           MR. TAYLOR:  Thank you, Judge.  Good afternoon.

12           THE COURT:  Good afternoon.

13           MR. TAYLOR:  I will not argue bad faith to you, Judge.

14   And I am not going to argue the personal motivations on behalf

15   of my opposing counsel.  I am going to stick to the legal

16   arguments, which I understand are complicated, and to try to

17   correct the record.

18           The first point that I would like to make, Judge, is

19   that there has been a suggestion repeatedly that there was

20   collusion in connection with the Western District of Arkansas

21   proceedings.  I am here to tell you that that is simply not

22   true.

23           THE COURT:  Let me say this, what I heard, at least

24   the only thing I paid attention to on that was the factual

25   recitation of the speed with which it was taken of the Court,

1  or seemed to be, and the other things, the argument that based

2  on the dates of these involvements that there must have been

3  preliminary material and so on.  But I didn't hear them say, we

4  tell you that it did occur, and you are telling me that it

5  didn't.  Bear with me, it's not criticism of your submission,

6  but I can't listen to lawyers tell me, Judge, something didn't

7  happen or did happen.  If you want to talk about the dates,

8  fine.  Those are facts in the record.  The dates, that's okay,

9  but don't give me your personal assurances about this, because

10  that's another matter, another day.  Hopefully, I won't be

11  involved in any of that, if it ever comes up.  I am not

12  concerned with that.

13          I am concerned with simply the facts of the dates that

14  we were having hearings here.  We were having hearings there,

15  and you all can argue, if we were at such a hearing trying to

16  fix some kind of blame, you can argue your interpretation of

17  that.  I didn't hear them say that.  If they did, I missed it.

18  I assure you that is not factored into my decision here today.

19  My decision here today is going to be based on, as I hope all

20  my decisions are, whatever the law is on this subject.  Who has

21  jurisdiction.  What Court does.  What Court doesn't.  If

22  anybody, both Courts.  What the cases say.  That sort of thing.

23  The facts are there.

24          I am not being rude to you, I would have cut them off

25  if I heard them starting in on that.  I am glad that you said

1   that you are leaving out the personal motivation of why they

2   want to do this or that.  That's good because then we don't

3   have to listen to what they think your motivations are.  I

4   would rather not hear all of that.

5        You are representing clients.  You are coming in.  You

6   are doing the best for your clients that you can.  I would like

7   to give all of you the benefit that you are doing it ethically

8   and properly.  They contend you have missed a big point here on

9   this Rule 3.8.  It seems that they are right on that.  I'm just

10  telling you that now.  Those are the things that if you would

11  like to argue them, fine.  Like with them, I want to keep both

12  sides, unless there is something here that you feel is going to

13  be a huge problem at some other corner back in Arkansas, I

14  guess I can't prevent you from saying anything you want to.  I

15  just assume strip this of any personal acrimony if we can.

16       MR. TAYLOR:  I appreciate that guidance, Your Honor.

17       Let me just move right then to Rule 3.8.  Rule 3.8 was

18  pointed out earlier today, and there has been one in 2,600,

19  2,700 docket entries, there has been one Rule 3.8 notice filed.

20  I think the reason is, Judge, because Rule 3.8 is governed by

21  Rule 1.1 which suggests that the Local Rules apply in

22  proceedings except where indicated otherwise.  I believe that

23  all of us, plaintiffs and defendants, have been looking at your

24  pre-trial order number one, which is docket entry 60, as thee

25  governing document that relates to a number of issues including

1    notice.

2              THE COURT:  Including notice of pending cases?

3              MR. TAYLOR:  Correct.

4              THE COURT:  What did I say in the scheduling order

5    that talked about pending cases?

6              MR. TAYLOR:  Paragraph 4, Judge, and I'm skipping the

7    first paragraph.  I will just quote directly:  The Court

8    requests the assistance of counsel in calling to the attention

9    of the Clerk the filing or transfer of any case that might

10   properly be consolidated or coordinated as part of the action.

11             THE COURT:  Yes, that's right.  I want counsel to do

12   that, yes.

13             MR. TAYLOR:  Our belief is that because the JPML

14   suspended the tag-along notice, that this case from the Western

15   District of Arkansas is not properly consolidated with this

16   case.

17             THE COURT:  That trumped the Local Rule you think?

18             MR. TAYLOR:  I believe so.

19             THE COURT:  Even though your case was filed out there

20   a month, or six weeks, or something before the Judge's order,

21   the settlement?

22             MR. TAYLOR:  We are talking about the case now?  I

23   want to make sure I understand the question.

24             THE COURT:  You are saying that because the

25   multi-district litigation, your interpretation of it meant that

1    any case of anything pending here in this case, by anybody

2    involved here in the MDL big case, that nobody had to tell

3    about anything they were doing out there.  That was your

4    interpretation.  You say that trumps the Local Rule which says

5    that you are supposed to advise the Courts and all that, which

6    we know what it says.  And you are arguing that it was ignored.

7    There were a lot of other cases that nobody told the Court

8    about.  Well, let's say there were twenty of those.  Twenty

9    wrongs don't make a right.  We all know that.  The Rule is

10   there.  They are asking that it be enforced, and you're telling

11   me why you believe it shouldn't be.

12          MR. TAYLOR:  Right, and why I believe that we all,

13   including plaintiffs, have not notified the Court previously of

14   any pending actions outside this MDL under Rule 3.8.

15          THE COURT:  I guess because this is the first one that

16   involves what appears to be a race to the courthouse.

17          MR. TAYLOR:  What I was referring to, Judge, is Monday

18   there was a Rule 3.8 notice filed in a different case there.

19   There had been a number of case that both plaintiffs and

20   defendants are involved in outside of this Court that weren't

21   of the subject of a Rule 3.8 notice.

22          THE COURT:  One thing that I am going to do is to save

23   everybody from sitting in suspense, one thing I am certainly

24   going to do is to grant the oral motion that was made and

25   instruct Mr. Gilbert, and somebody over there, to prepare an

1    order that reflects, and brings to everybody's notice and

2    attention in this MDL litigation, that they must comply with

3    Rule 3.8 and bring it to their attention.  It is gilding the

4    lily, but they are supposed to know it.  I am going to do that.

5    That's one thing that we are going to do today.

6         Let's go on.  I'm sorry, I keep interrupting you.  I

7    don't mean to do that.

8         MR. TAYLOR:  No, no, Judge, I appreciate it.

9         I wanted the raise the -- there was a suggestion that

10   the timing of our filing was to avoid a JPML hearing date.  The

11   timing of the filing had nothing to do with the JPML hearing

12   date, because of the rule suspending the requirement to tag

13   notices with the JPML.  I point out that the plaintiffs sent in

14   a tag notice on March 27th.  We are on April 18th, and no

15   conditional transfer order has been issued.  That is an

16   extraordinary amount of time in my experience.

17        We heard that the Managed Care case is on all fours

18   with this case.  Again, I think that the three important facts,

19   that there was a class certified in the JPML, that the JPML

20   tag-along rule was still in case, and that the sitting Judge,

21   who issued the order approving the settlement was not informed

22   of the MDL case, distinguished Managed Care.  This is not the

23   Managed Care case.  There was a suggestion that we did not

24   comply with discovery responsibilities.

25        What plaintiffs are referring to is a request for

1    production that was subject to a general objection in which we

2    stated that we would produce documents only for the period of

3    January 2005 to the present.  The present, at that time, was

4    June 27, 2011 when those objections and responses were

5    submitted.  At the time there were no documents responsive to

6    the requests, and plaintiffs never raised any issues with our

7    discovery responses, and there has been no motion to compel

8    filed.

9         There was substantial discussion about the transcript

10   of the hearing before Judge Dawson.  I would simply urge the

11   Court to read the full transcript.  As importantly, look at the

12   full record that was before Judge Dawson.  It is found at

13   docket entries 2605, 14 through 21.  That's what was before

14   Judge Dawson when he held his hearing March 26th.

15        There was discussion about unilateral versus joint

16   submissions on notifying the Court of settlements and stays.  I

17   would submit to you, Judge, unilateral or joint notices are not

18   an important difference.  What is important is getting this

19   Court notice of the settlement, and that's what we did here

20   when we notified you of the settlement and asked for the class

21   proceedings to be stayed.

22        The statements reflected in the transcript were

23   correct, the transcript of the hearing before Judge Dawson.

24        There was a question about whether, if Swift proceeds

25   in this court alone as a plaintiff, that he would be stripped

1    of subject-matter jurisdiction.  I wanted to respectfully

2    disagree with Mr. Gilbert.  I think that subject-matter, once

3    established under the Class Action Fairness Act stays and that,

4    in fact, subject-matter jurisdiction would not be lost.

5         The suggestions that Judge Dawson may be able to take

6    actions in his Court in connection with the certification of

7    the class in connection with the preliminary approval of the

8    settlement wanted to make the point, Judge, that no one from

9    plaintiffs have made an appearance or raised any issues with

10   the Judge.  Any questions about Judge Dawson's settlement

11   belong with Judge Dawson.

12        You, several times, and I think I may not have

13   answered your question so I wanted to take my last opportunity

14   to answer the question.

15        THE COURT:  Take your time.

16        MR. TAYLOR:  You were asking about whether

17   BancorpSouth is taking an inconsistent position in Arkansas as

18   compared to here, before you, on the question of whether the

19   class should be certified.  I don't think we are taking an

20   inconsistent position, Judge.

21        As a part of the settlement in the Western District of

22   Arkansas, we did not oppose the plaintiff seeking class

23   certification as part of an agreement.  But much like Rule 408

24   is meant to keep out the underlying negotiations that get to a

25   settlement, a position taken in connection with the settlement

1  shouldn't be perceived as the position that we would take in

2  litigation.  We would ask for you not to --

3       THE COURT:  You don't consider Arkansas litigation?

4  That's litigation.  You are asking the Court to approve

5  something.  You filed a case.  You have filed a case.  You have

6  got a plaintiff, a defendant, allegedly a plaintiff and

7  defendant, a class, bank, Court, that's litigation.

8       MR. TAYLOR:  Oh, sure, and it's a case that settled.

9  In settlement often positions are taken from positions that are

10  taken during active opposed litigation.  That's all that

11  happened here.

12       THE COURT:  I just enjoy talking with you.  I guess I

13  shouldn't.  A settlement should come in and say, Judge, we are

14  going to give them $10,000, and they are going to give us a

15  release.  Seldom do you go in and say, we are agreeing that

16  there should be a class treatment of this and class action.  We

17  agreed there is a big class action and; therefore, we are

18  getting $10,000 and a settlement.  There is a big factor added

19  into that settlement out there that Judge Dawson had to

20  consider, did consider, that said "we are agreeing with a lot

21  of things."  That was my point.  Class action is okay if it's

22  in Arkansas, but it's not okay if it's in Florida.  You have

23  got some good objections.  You didn't raise those with Judge

24  Dawson.

25       MR. TAYLOR:  Right, and we didn't because we settled

1   that case.  Let's say that Judge Dawson did not approve the

2   settlement.  We had a motion to dismiss on file that we planned

3   on prosecuting.  So it's just a difference between a settlement

4   and not a settlement.

5           THE COURT:  I understand your position, yes.

6           MR. TAYLOR:  Last point, Judge.  There is a citation

7   made to the Kansas Court Bank of America case.  The suggestion

8   was that it supported the Managed Care case.  I just wanted to

9   point out that in the Bank of America case, the decision hinged

10  on violation of Rule 7.1 of the Judicial Panel on

11  multi-district litigation, the tag-along rule.

12          In fact, in the Bank of America case, distinctions

13  were made based on whether that rule was in place and whether

14  it wasn't.  Because in that case the rule was in effect, it is

15  distinct from the case that we have here.

16          Second, Bank of America never notified the parties of

17  the settlement.  They learned about it through the media.

18          The remedy, and this is the most important part of the

19  case, Judge, the remedy that the Bank of America Court came to

20  was to let the JPML decide whether the case should be

21  transferred or not.  It saw the matter as one for the JPML, and

22  that's where it was left.

23          Those are the points I wanted to make, Judge.  I think

24  Mr. Holley has a comments.

25          THE COURT:  Fine.  Mr. Holley.

1           MR. HOLLEY:  Thank you, Your Honor.  I will be very

2    brief.

3           As Your Honor must imagine, whether you are practicing

4    for three years or twenty-seven years it is difficult to sit

5    here and hear some of the personal attacks.  We responded to

6    those in writing.  I am glad that Your Honor has said that they

7    are not for today, so I will not address those.

8           I will say, Your Honor, that when you consider the

9    entire record as to what was presented to Judge Dawson, I

10   submit to you that it's critically important that you take a

11   look at the full record that had been presented to him which we

12   have filed with this Court in response to the motion that the

13   plaintiffs have brought.  In particular, that you take note

14   that in docket number 2605, and there are some fifteen or more

15   exhibits to that, the defense counsel in the case took great

16   pains to make Judge Dawson aware of your case, aware of the

17   scheduling orders, to provide Judge Dawson the JPML letters

18   himself so that he would not have to rely upon any

19   representations of counsel, and presented to him much of the

20   briefing on the class certification issues including the most

21   recent brief, the reply brief that had been filed by the

22   plaintiffs.

23           So to suggest that by looking at the fifteen-page

24   hearing transcript, one could understand all of what had been

25   represented to Judge Dawson, we submit to you and ask you to

1    take a look at the record.  Your Honor, I know you will do

2    that.  I know you will decide this case based upon the facts

3    and the law.  We appreciate, again, you allowing us to come

4    here and be heard.

5         THE COURT:  Thank you, Mr. Holley.  I have looked at

6    the transcript.  I have not, as referenced in your briefs, I

7    haven't read all the voluminous documents that you suggest were

8    submit to Judge Dawson, but I have read the transcript.

9         The Court has determined, and does so order, that the

10   defendant's motion, docket number 2602, for a stay of these

11   proceedings be, in the same, is hereby denied.  I will instruct

12   Mr. Gilbert and his colleagues to draft an appropriate order

13   reflecting a lot of the conversation that I have held with you

14   all today.  I am not going to go through this all of this

15   again.  You know the thrust from my inquiries.  You know the

16   thrust what I am feeling of these items from the questions that

17   were asked.  Just like we understand Justice Scalia's comment

18   about asparagus.  Maybe to some lawyers in this room, this

19   conversation doesn't make much sense.  Maybe not.  Maybe more.

20   The motion for stay by the defense is denied.  It is denied.

21        The plaintiff's emergency motion to enjoin the parties

22   and their attorneys from further participation in the Arkansas

23   litigation, that encompasses the entire class, if it were to be

24   ongoing, and approved, and with finality ultimately if it were

25   determined, is granted.  That motion is granted.  I will

1  instruct Mr. Gilbert and his colleagues to draft a rough draft
2  for me to consider and look at, and read and review, and mark
3  up and do whatever I do with it, but I want a draft from them.
4  I don't want delays on all of this.  Send me in a draft.
5  Whatever you send to me, you send to Mr. Taylor and Mr. Holley
6  of course.  I am not waiting.  It is not replies.  I want a
7  draft to work with.  I will enter my own order.
8          The order that was suggested as being a good process,
9  a good procedure to implement in this to all parties in MDL
10  09-2036, this MDL litigation, is certainly, it seems to me, a
11  good idea.  I hadn't realized there was any serious problem
12  with requiring the Court to be notified and the parties to be
13  notified of other pending litigation that possibly impacted or
14  involved this same litigation.  As Mr. Taylor pointed out, and
15  he is right.  A lot of times people don't follow that.  Usually
16  when it doesn't make any difference to anybody.  But that
17  doesn't mean it shouldn't be followed.  The rule is there.  It
18  should be followed.
19          I am going to instruct Mr. Gilbert, in a day or two or
20  a week or two, whenever he gets time, to draft an order, a
21  rough draft order that notifies all the parties and all the
22  litigants in this MDL 2036, to comply with Rule 3.8 of the
23  Southern District of Florida, and to notify the Multi-district
24  Litigation Panel of any pending file, or related cases in this
25  Court, or anywhere else, and it may impact of this MDL case.

1  No matter what their interpretation of the Rule 7.1 I believe

2  it is.  Yes, 7.1, as to whether or not they should or should

3  not notify the MDL panel.  It is just good practice to let the

4  Panel know what is going on.  So, get that done.

5       Counsel for the plaintiff made on oral motion for

6  sanctions and suggested some discovery and that sort of thing.

7  That was an oral motion here today.  If counsel for the

8  plaintiff wish to proceed with any motion regarding this

9  matter, regarding sanctions or otherwise, they should, as we

10 have been doing throughout this litigation, put it in writing.

11 Give it to the other side.  The other side responds, and I will

12 consider it.  Whether hereafter I set oral arguments or not, of

13 course, I reserve the same ruling that every Judge in the

14 Southern District of Florida has of deciding the matters on the

15 papers that are submitted, or to go ahead and be nice guys or

16 gals and listen to oral argument.  I have tried to do that,

17 follow that practice in this litigation.

18       And something you may or may not know, some of you may

19 know this, or realize it, but I haven't sent a single one of

20 these orders to any magistrate or any other Judge.  I have

21 dealt with all of them myself.  Whether I can continue to be a

22 nice guy and have oral argument on everything or not, may or

23 may not happen.  We will see.

24       But, in any event, the matters of anything dealing

25 with any further discovery or about whatever happened in

1  Arkansas, or didn't happen, or whatever, I will leave for

2  another day.  That's a matter that will have to be dealt with

3  by written submissions by both sides.  Nothing has been filed.

4  That may be the end of it.  All right, that's where we are.

5          We have pending fully briefed motions on the class

6  certification.  We have pending fully briefed motions on

7  Daubert hearings on the expert witnesses, and I will take care

8  of that.  I don't need any help from any of you on that.

9  Nothing is stayed.  Those matters are pending.  In all

10  probability, I will be getting orders out on those matters

11  shortly.

12          Thank you very much, gentlemen.

13          [Proceedings conclude at 3:10 p.m.]

14                  C E R T I F I C A T E

15      I hereby certify that the foregoing is an accurate

16  transcription of proceedings in the above-entitled matter.

17

                        /S/  ROBIN MARIE DISPENZIERI

18  _____    _____
      DATE FILED          ROBIN MARIE DISPENZIERI, RPR
19                         Official Federal Court Reporter
                           United States District Court
20                         400 No. Miami Ave., Ste. 8S67
                           Miami, FL  33128 - 305/523-5659
21                         Email:  robinc1127@aol.com

22

23

24

25

**A**

Aaron 1:13 3:3 54:2
abeyance 19:19
able 13:9 29:6 34:11 41:7 54:8 56:21 88:5
above-entitled 95:16
absence 66:7
absolutely 26:13 31:7 46:19 54:23 62:13
accept 44:16
accepted 38:17
accepting 23:18
accommodate 57:6
accomplish 43:4
accomplished 29:3 52:22
account 1:4 11:10 75:20 80:7
accounts 75:15,16
accurate 95:15
acrimony 83:15
act 31:22,23,25 32:14 45:2 66:5 72:4 88:3
acted 38:22
action 4:15 13:25 14:7 16:13 21:19 25:2 27:17,18 51:6 55:9 56:7 60:21 61:7 66:5,11 69:16 70:15 84:10 88:3 89:16,17,21
actions 23:15 33:4,25 63:3 85:14 88:6
active 69:3,9 89:10
actual 69:19
add 53:14 71:15
addition 17:11
additional 30:8
address 13:22 15:5 21:18 91:7
addressing 21:24
adequacy 46:18 50:21 51:2
adequate 29:10
adjective 54:18
Administrator 46:14 67:13
admitted 71:9 73:20
advantage 42:9,25
adversaries 54:19
advise 36:2 85:5
advised 52:24,25
affect 36:7 49:1
afternoon 65:21 81:8,11,12
ago 3:17 5:1 18:16 22:14 26:10 37:16 42:4 44:5 47:23 52:1 75:10
agree 6:16 16:20,21 20:9,9 26:25 40:6,10,15 41:10 42:12 47:17 57:25
agreed 8:11,11 17:3 41:10 48:7 73:13,14 78:5 79:20 89:17
agreeing 89:15,20
agreement 15:14 16:16 36:21 40:9 41:21 47:21 50:22 51:3 78:12 88:23
agreements 21:9
agrees 41:1
ahead 13:11,11,20 20:10,10 24:22 34:23 36:16 45:5 49:5,6 66:23 94:15
Albu 21:6
allegation 20:19
allegedly 89:6
allow 21:16
allowed 68:25
allowing 3:24 92:3
allows 56:8 69:14
alluded 18:16
Alright 34:13
altogether 38:19
America 15:2 18:13 20:16 67:3 80:19,20,22,25 90:7,9,12,16,19
amount 16:10 41:3 86:16
analysis 32:14 73:25 74:2,6,6,7,13
and/or 81:10
announce 10:11
announced 14:16,24 18:14
announcement 3:1 4:8 71:10
announcements 14:21
annoyed 61:25
answer 31:1,4,6 43:19,22 45:6,16 45:17,18,20 46:4,6 50:8 53:16 54:8 58:6 62:9 73:17,23,24 74:20 88:14
answered 47:18,20 56:25 74:21

79:19 88:13
answers 43:17 55:14,16 58:5 60:8 61:25 64:1
antagonistic 21:5
anxiousness 38:24
anybody 22:25 42:9 51:16 54:22 73:18 82:22 85:1 93:16
anymore 39:13 49:2 56:13 60:9
anyway 27:15 63:17
apodhurst@podhurst.com 1:16
apparent 16:17 71:16
apparently 6:5,6 12:21 15:14 56:24 72:7
appeal 65:5
appear 3:25 71:9 72:5
appearance 4:4 88:9
appearances 1:12 3:2
appeared 3:25 14:6 68:21
appearing 51:8
appears 72:8 85:16
applies 31:25
apply 26:15 34:13 83:21
appointed 19:8 20:22 37:20 48:24 48:24 50:5,9,11,15 54:5,13 67:10
appreciate 24:23 28:11 36:18 43:21 49:7 51:11 55:20 83:16 86:8 92:3
approaches 57:11
appropriate 11:25 22:2 28:18 31:20 32:14 71:14 73:21 92:12
appropriately 46:21
approval 15:2,3 66:17 88:7
approvals 10:3
approve 9:21 30:25 38:23 39:1,3 64:25 75:1 89:4 90:1
approved 15:20,21 17:14,19,23 24:8 37:2 67:19 92:24
approves 45:10
approving 45:23 86:21
Approximately 19:13
April 1:7 19:6 66:12,12,14,24,24 86:14
arbitration 27:22 36:8
aren't 60:21
argue 17:5 24:1 26:16 29:13,14,15 48:2,4 66:25 77:21 81:13,14 82:15,16 83:11
argued 48:5 54:23 74:18 75:1,1,3
arguing 26:18,19,20 39:17 49:24 74:22 85:6
argument 3:14 4:21,23 7:25 11:12 12:4,6 13:13 15:8 29:16,22 30:7 36:17 49:5 51:19 54:4 57:25 58:23 59:3 64:19 70:22 71:1 76:10,11,13,25 77:1 82:1 94:16 94:22
arguments 9:7 10:3 81:16 94:12
Arkansas 4:10 5:6,25 6:16,20 7:16 8:4 11:3,9 12:10 15:4,10,12 17:25 20:23 21:3 22:18 24:4 28:16,24 29:4 37:4,6,11 40:10 46:9 48:16 50:2 51:15,25 67:10 68:20 70:5 73:13 74:10 75:18 76:13 77:13,14,19,23 78:3,5,14 79:6 81:20 83:13 84:15 88:17,22 89:3,22 92:22 95:1
arose 72:5
arrangement 41:21
asked 10:14 11:1,2 19:18 31:13,14 43:22 55:13,15 57:3 59:15,23 60:7 61:24 63:2,25 64:1 65:1 70:16 73:10,16 74:20,25 75:11 76:11,20 87:20 92:17
asking 4:11,14,17 5:7,9,11,12,14 5:16,20,21,22,23 19:11 46:13 52:2,5,6 60:15,22 64:8,11,13 66:19 70:19,21 71:4,7 85:10 88:16 89:4
asparagus 92:18
aspects 9:24 62:20
asserted 22:8 28:13,18 39:24 46:11
asserting 37:5
assignment 6:3 14:2 38:6 40:8
assignments 40:20
assistance 69:25 84:8
associate 69:22
Associated 20:16

assume 8:14 40:16 41:18,19 65:1 83:15
assumed 75:7,8
assuming 41:12
assumptions 43:24
assurances 82:9
assure 11:6 21:25 82:18
Atlanta 2:4
ATM 80:8
attached 49:15,15,24
attachments 49:13
attacked 15:15,16
attacks 91:5
attempt 16:11 66:21
attempting 16:17 20:1,2 71:6
attention 56:1 81:24 84:8 86:2,3
attorneys 37:19 64:13 92:22
authority 41:23 65:6 70:13
available 30:15
Ave 21:3 95:20
Avenue 2:3
avoid 25:24 53:7 72:4,11 73:3 86:10
awaiting 4:19
aware 13:17 30:6 60:11 91:16,16
awful 29:11
awfully 37:9
awkward 7:5 8:2,22 12:3,6
awkwardness 13:18
a.m 1:7 60:3,4

**B**

back 23:15 24:6,10,14,17 25:14,18 25:20 32:8 33:11 34:1,8 37:10 37:16 38:9 40:2 52:1 66:18 67:1 67:16 77:12 81:3 83:13
bad 12:7 18:19,20 23:22 37:20 81:13
BancorpSouth 1:10 3:8,11 4:6,8 6:17 7:2,11 10:18 18:21 21:18 24:13 30:5,11 42:22 62:5 64:12 65:14 67:9 69:22,25 70:3 71:6,8 72:20,23 79:21 80:24 88:17
BancorpSouth's 70:20,24
bank 1:15 3:9,11 4:2,5 5:4 6:12,12 7:9,16 8:12,16,21 9:4 10:5 11:8 11:11,24 12:1,21 14:3,20,20 15:2,3,8,9,11,21,25 16:7,20,21 17:1,3,11,16,21,21 18:1,1,13 20:16,16,16,17 17,17,17,22 63:6,15 23:19 25:9 37:11 38:16 40:25 41:16 42:11,14,14,20 45:8 51:9 56:5,6 58:18 62:6,6,7 67:3,21,25 71:19 72:1 74:18,22,25 75:6,9 75:12,17,20,20 76:9 77:4,8,12 77:19 78:1 79:6 80:19,20,22,25 89:7 90:7,9,12,16,19
banking 4:3 31:10
banks 4:1,2,5,22 14:5,10,13 18:3 42:18,23 51:25 56:14 60:9 63:21 65:15 68:2,5 69:3,10 73:5
bank's 3:16,20 9:5 48:6 73:12 74:23
Baptiste 44:5
Bare 44:21
Barry 2:8
based 10:8 11:19 16:15 37:12,13 79:20 82:1,19 90:13 92:2
basically 73:20
basis 29:9 76:22,25
Bates 17:18
Bear 82:5
bearing 24:18 48:6
beat 59:10
bed 59:24
behalf 3:5,8,10 5:6 27:7 55:22 60:15 69:23 70:14 81:14
belabor 18:24
belied 64:25
belief 84:13
believe 6:19,21 10:20 20:2,14,18 21:1,4,12 32:22 37:23 41:15,17 44:14 56:17 59:6 61:1 63:14 65:7 70:18 74:8,11 75:23 78:6,7 83:22 84:18 85:11,12 94:1
believes 64:23
belong 88:11
bench 29:22

benefit 30:12,14,16 41:15 43:9 83:7
benefits 11:25 12:1 29:7
benevolence 78:1
best 6:16 11:15,16 12:9 38:1 41:14 43:22 46:4 70:12 73:2,13,14 77:18 83:6
better 10:1,4,5 11:10,22 12:10,18 12:25 13:4 28:5 38:24 41:16 48:18,18 52:3 60:16 64:16
Beyond 5:23
big 13:15 22:11 24:18 25:22 27:16 41:2 42:14 52:2 54:24 83:8 85:2 89:17,18
bigger 11:22,23,24
biggest 80:13
Bill 3:10
Birmingham 4:3
bit 6:17 24:12
black 62:14
blame 82:16
blaming 63:25
bland 12:6
Blvd 1:19,23
boards 25:17
boil 52:11
borrower 11:9
bother 35:2
bothered 22:25
bothering 57:21
bound 78:9,11
Branch 4:3
brand 16:3 23:1
Bravemen 2:8
breached 88:23
break 81:3
brief 4:23 65:22 80:21 91:2,21,21
briefed 4:15,25 5:3 22:17 31:23 34:24 68:14 70:23,25 73:9 74:5 95:5,6
briefing 30:2 91:20
briefly 32:12 40:21
briefs 4:19 9:8,11 11:17 26:17,21 36:6 76:12 92:6
bring 35:4 55:25 71:2 86:3
bringing 34:5
brings 64:14 86:1
broad 77:10
broadened 78:19
broader 12:22 75:3,10,12,23 76:14 77:5,6,6,20,20,22 79:1,6,24
broadest 80:11,11
broadly 79:9
brought 14:14 38:1 61:11,13 68:2 91:13
Bryce 2:6
buddy 57:5
Building 1:15
bunch 51:24
burden 64:9
busy 41:22
buy 80:13

**C**

C 95:14,14
California 34:3
called 4:5 19:9
calling 84:8
cancelled 17:1
can't 17:4 26:16 44:8,9 47:13,16 51:10,18,23 61:12 63:24 82:6 83:14
capable 22:1
capacity 51:5
card 53:7,7 78:16 79:12 80:2,7,8
cards 77:7
care 15:25 32:12,13 34:12 39:25 40:14 45:24 46:2 54:21 55:18 59:19,19,20,20 60:8,16,25 64:5 65:10 80:23 86:17,22,23 90:8 95:7
career 33:16
careful 31:1 35:8 36:19 43:17 47:10 62:21
carefully 22:14 27:20
Carven 2:10
cases 7:22 11:16 16:1,3,5 18:16 22:23 23:1,2,2,22 24:15 25:9,10 25:11 31:22,24 32:22 34:2,4,9

34:13 38:4 39:24 40:7 41:6 44:7 44:12 45:3 57:20 58:7 59:9 60:22 62:12 63:8,13,15 67:18,24 68:5,5 69:16 71:25 74:22,23,23 78:24 80:17 82:22 84:2,5 85:7 93:24
**cast** 63:18
**cause** 24:19 57:9
**CDs** 75:16
**CECIL** 1:18
**center** 2:3 9:24
**Cernovas** 56:6 58:18
**certain** 45:3 46:20 54:15 57:20
**certainly** 8:14 12:12,16 17:6 24:16 35:11 48:20 51:13,20 52:19 62:15 85:23 93:10
**certificate** 6:24
**certification** 4:18,24 5:2,4,8 6:21,11 6:14,15 7:1,8,17,21,22 8:1,4,17 8:24,25 9:6 10:22 13:24 15:10 24:13,24 25:6,9,12,13,13,15 26:2,22 28:3 29:2 30:3,23 34:19 36:14 40:13 47:25 48:9 59:3 68:15 70:23 72:17,22 73:9,13,15 74:2,3,9,14 75:6 76:16 77:4 88:6 88:23 91:20 95:6
**certifications** 59:5
**certified** 4:9 10:13 12:20 18:4,9,11 18:22 19:4 21:6,10 24:7,8 28:13 28:21,25 29:2 32:4,17 37:3 40:1 45:24 46:10 47:12 50:7 51:23 54:14,25 55:1 60:17,22 65:8 75:6 86:19 88:19
**certify** 6:25 7:24 10:23 11:1,2 21:12 31:20 35:15,15 62:10,11 75:5,5,11,13,24 78:4 95:15
**certifying** 18:10 24:6 26:7,8
**cetera** 56:23,23 58:22 63:11
**chance** 74:17
**changed** 34:6,19 46:25
**changing** 13:14
**charged** 77:9 78:16 79:22 80:5
**Chase** 20:17
**check** 22:25 80:6
**CHECKING** 1:4
**checks** 78:20
**Chief** 61:2
**Chiles** 56:6
**choose** 29:6,7,8
**Christopher** 2:10
**citation** 90:6
**cite** 80:18,21
**cited** 39:24 80:17
**cites** 80:22
**CitiBank** 17:16 20:18 68:1
**city** 1:15 67:22 68:18 72:9
**claim** 19:20 27:9 62:22
**claiming** 46:13
**claims** 4:9,15 6:16,20,23 37:5 51:6 66:3,4 67:24 68:2 69:6 72:3
**classes** 64:6 75:22 79:4
**class-certification** 53:6
**class-certified** 7:11
**class-related** 4:12
**clear** 20:1 29:1 31:8,8 35:8,14 36:19 39:8 49:8 50:18 70:10
**Clearly** 42:19
**Clerk** 23:14 33:3,24 84:9
**client** 4:24 5:6 8:18,22 12:9,9 38:25 51:9 52:12 70:11 72:6
**clients** 42:20 77:9 83:5,6
**clock** 67:16
**close** 68:12
**colleague** 72:14
**colleagues** 9:15 69:13 92:12 93:1
**collected** 79:23
**collection** 27:6
**colluded** 56:3 61:17 67:12
**colluding** 55:8
**collusion** 55:5 65:19 81:20
**collusive** 58:13 61:5 71:12 78:12
**Columbia** 17:18
**come** 4:24 9:8 10:14 16:1 29:13 34:24 42:19,21,22 45:3 46:6 63:4 66:6,24 67:15 77:12 81:3 89:13 92:3
**Comerica** 26:10
**comes** 32:3 41:6,7 47:15 82:11
**coming** 20:21 83:5
**comity** 18:25 24:3 28:18

**commence** 51:5
**comment** 22:20 92:17
**comments** 10:8,9 11:2 13:9 22:5 28:11 66:8 90:24
**Commerce** 20:17
**committee** 3:4,6 50:11
**committees** 37:20
**communications** 34:2
**companies** 19:9
**company** 41:17 67:6
**compare** 41:20,21
**compared** 88:18
**comparison** 76:11
**comparisons** 12:19
**compel** 87:7
**compelling** 32:16
**compels** 29:4 31:20
**competing** 21:4
**complaint** 24:11,15 25:1,15
**complaints** 60:21 67:25
**complete** 31:19
**complicated** 81:16
**comply** 65:3 86:2,24 93:22
**comprehensive** 49:25
**con** 76:2
**concern** 12:13 22:5
**concerned** 53:2 61:25 82:12,13
**concerns** 13:22
**conclude** 95:13
**concluded** 14:15
**conclusion** 31:21
**conclusions** 29:25
**conclusory** 27:10
**conditional** 86:15
**conduct** 16:12,15 74:13
**confidential** 31:9
**conflict** 48:20
**confronted** 12:21
**confusing** 25:21
**Connecticut** 17:22
**connection** 81:20 88:6,7,25
**cons** 6:10
**conscious** 70:11
**conserve** 21:2
**consider** 9:1 27:20 28:3 46:1 52:7 71:13 89:3,20,20 91:8 93:2 94:12
**consideration** 5:5 12:14 40:8,21 74:8,10
**considered** 37:25 40:19 66:20
**considering** 7:12,14 53:16
**consistent** 20:14,18 24:2 26:9 28:17 42:2 59:9,10
**consolidated** 84:10,15
**consult** 72:24
**consulting** 72:14
**consumer** 53:7
**consummated** 4:13
**contend** 83:8
**contested** 69:6 73:22 74:3
**context** 13:8
**continually** 65:24
**continuation** 5:24
**continue** 13:21 73:6 94:21
**continues** 42:15
**continuing** 58:5
**contrast** 68:7
**contrite** 61:10
**conveniently** 68:16
**conversation** 92:13,19
**conversations** 30:10 39:12 43:12 70:9
**convinced** 28:2
**cooperating** 38:17
**coordinated** 84:10
**copy** 30:2 49:22 58:9
**copycat** 71:5
**corner** 83:13
**correct** 5:18,23 19:7 24:25 38:4 39:25 40:6 49:23 55:16 78:7 81:17 84:3 87:23
**couldn't** 8:6 11:6 42:16 48:4
**counsel** 7:3 10:17 16:13 19:18 20:22 21:17 30:10 36:5 54:2,5 54:13,23 64:2 64:11 69:10 70:8 71:8,20 72:2,21,23 74:18,24 81:1,15 84:8,11 91:15,19 94:5,7
**count** 14:5
**country** 11:17 57:5 67:19 69:5 71:23

**couple** 9:22 13:16 26:10 77:25
**course** 8:6 13:2 14:5 25:16 35:21 40:18 63:16 94:13
**courteous** 51:11
**courtesy** 4:20 7:3
**courthouse** 26:4,6 37:10 57:2,8 85:16
**courtroom** 64:23 69:11 72:8
**courts** 38:11,11 44:19 52:24 53:5 71:22 82:22 85:5
**Court's** 4:19 31:25
**covered** 65:23 80:4
**covers** 77:7 78:15
**co-lead** 54:2,5,13 64:11
**created** 53:5,5 63:24
**creates** 52:2
**credit** 43:3
**critically** 91:10
**criticism** 82:5
**custom** 4:20
**customers** 4:8 7:11 11:11 12:1 42:21,23,25 62:7 78:2 79:7,21
**cut** 8:15 16:3 44:6 82:24
**cut-off** 23:3

**D**

**dandy** 56:14
**date** 23:3 24:11 33:6 49:19 50:3 86:10,12 95:18
**dates** 82:2,7,8,13
**Daubert** 10:21 70:24 95:7
**David** 2:7
**Davidson** 2:8 57:5
**Dawson** 4:10,15 9:23 10:2 12:13 12:15 17:19,24 20:6 21:6 22:5,7,23 23:21 24:16 25:18 26:1 28:12,18 29:5,8,11,18,18 29:24 31:18 35:17 36:10 37:23 38:20 46:19 48:21 49:3,22 53:11 55:12 57:15 58:3,20 60:6,24 61:20,21 63:25 64:24 66:18,21 67:14 68:21 71:11 72:6,14,16,24 75:1,10,13 78:12,18 87:10,12,14 87:23 88:5,11 89:19,24 90:1 91:9,16,17,25 92:8
**Dawson's** 19:7 21:15 46:25 49:8 50:18 66:17 72:8 79:19 88:10
**day** 9:10 13:2 34:20 67:13 78:17 82:10 93:19 95:2
**days** 7:20 27:4,21 31:16 38:16 55:10 57:6 59:22 75:10
**De** 1:19
**deadline** 32:7,7
**deadlines** 32:6
**deal** 38:1 41:19 42:16 48:21 54:24 61:6 70:12
**dealing** 26:25 94:24
**deals** 75:14,19
**dealt** 61:23 94:21 95:2
**debit** 53:7,7 77:7 78:16 79:12 80:2 80:7
**debt** 27:6,9
**December** 5:1,15 6:4 17:20
**decide** 48:10 76:19 77:2 90:20 92:2
**decided** 30:24 40:25 48:1 56:13 63:15 64:24 76:1,6
**deciding** 94:14
**decision** 9:5 26:14,24 29:5 31:21 46:21 65:10 70:11 80:19,23,25 82:18,19 90:9
**decisions** 80:24 82:20
**declaration** 66:13 69:18,19
**deemed** 80:3
**default** 74:12
**defendant** 2:1 3:16 39:19,22 40:6 58:11 59:17 61:6 69:3,10 72:1 73:12 76:9 80:12 81:1 89:6,7
**defendants** 65:16 68:25 71:19 83:23 85:20
**defendant's** 56:6 92:10
**defense** 70:8 91:15 92:20
**define** 63:1
**defined** 50:23 79:9
**definition** 78:10,11,15 79:20 80:1 80:2
**delays** 93:4
**deliberate** 16:12 62:3
**delineated** 12:20

**denied** 25:9,12 92:11,20,20
**deny** 70:19
**deposition** 68:13,13
**designate** 44:8
**designated** 44:16
**detailed** 69:14
**details** 21:18 30:19 45:4
**determination** 50:20 51:1 63:14
**determine** 28:5 29:9
**determined** 92:9,25
**determining** 22:1
**develop** 22:15,18 28:4 69:24
**developed** 42:3
**device** 29:2
**didn't** 20:20 23:8,21 29:19 34:13 35:2,5 36:11,23 38:10 42:4,5 47:2,3 55:9 56:13 57:19,25,25 58:6,7,15,20 62:10 64:20 65:3 66:18,21 67:2,8 68:7 70:4 72:7 73:1,7 74:18 80:6 82:3,5,6,17 89:23,25 95:1
**difference** 11:3,22 20:20 28:20 35:16 40:3 73:25 79:16 87:18 90:3 93:16
**differences** 6:20
**different** 6:23 8:6,8,9 20:24 28:16 36:13 47:18 52:5 53:9,10 59:8 60:11 85:18
**differently** 44:16
**difficult** 31:3,5 91:4
**difficulty** 27:24 41:12
**directed** 28:14 66:17
**directly** 51:4 84:7
**dirty** 58:16
**disagree** 88:2
**disappoint** 11:18
**disappointed** 8:15
**disclosure** 29:12
**discourage** 75:18
**discover** 55:7
**discovery** 6:6,9 7:7 12:14 22:12,16 25:5 27:13,13,21 28:4 30:9,12 30:17,20 32:6 34:5 36:13 37:12 37:17 38:8 42:19 86:24 87:7 94:6,25
**discussed** 30:18
**discussion** 87:9,15
**discussions** 38:14 42:14 69:9 72:2
**dismiss** 70:21
**dismissed** 55:9 56:3
**dispense** 70:21
**DISPENZIERI** 2:12 95:17,18
**dispersions** 63:19
**dispute** 28:24
**disrepute** 61:13 64:14
**distinct** 90:15
**distinction** 34:16 55:1 65:13 77:22 79:3,4,5
**distinctions** 59:4 68:18 90:12
**distinguished** 86:22
**distributed** 41:4
**district** 1:1,1,11 2:13 4:10 9:14 17:12,17,22 19:22 21:3 24:4,14 28:16,24 29:3,12 37:3,6 44:8 46:9 50:1 55:3 63:11 69:5 80:18 80:21 81:20 84:15 88:21 93:23 94:14 95:19
**division** 1:2 6:2 25:5
**Dobbs** 2:2
**docket** 3:16,18 15:13 21:7 49:9,14 49:16,24 62:2 69:18 70:20 83:19 83:24 87:13 91:14 92:10
**document** 56:5 83:25
**documentation** 71:10
**documents** 30:9 68:12 87:2,5 92:7
**doesn't** 18:19 19:24 29:1 34:13 38:19 44:14,15 49:1 51:8 59:6 60:8 64:5 73:4 82:21 92:19 93:16,17
**doing** 8:19 9:20,21 34:14 36:3,16 37:25 52:22 55:6 57:12 60:23 83:6,7 85:3 94:10
**don't** 7:15 8:2,9,10,20,24 9:2,9,16 9:17,25 11:4,12,17 12:1,5,11 13:4 15:25 17:2 20:23 22:3,22 22:21 23:23,25 25:10 27:13,14 27:15,21,23 28:23 31:3,4 32:22 35:7,14,15,18,19 37:25 38:22 39:21 42:24 43:2,7 46:5 48:2 49:8,10,11 51:21 53:10,12 54:11

55:19 56:5 57:24 58:2 59:7,12
59:14,19,19,20,20,23,25 60:1,6
62:6,7,23 63:18 64:3 65:2 70:6,8
73:22 74:21 75:1,5,8 76:21
77:20 78:5,7,25 79:2 80:18 82:9
83:2 85:9 86:7 88:19 89:3 93:4
93:15 95:8
**door** 70:3
**doubt** 37:25
**doubting** 14:18
**Dow** 17:12,14
**draft** 47:24 67:5 92:12 93:1,1,3,4,7
93:20,21
**drawing** 76:11
**drawn** 73:1
**dribbling** 44:10
**dry** 64:5
**due** 71:13

**E**

**E** 1:23 95:14,14
**earlier** 14:19,20 21:25 27:22 67:17
74:19 83:18
**early** 32:8
**easier** 31:5
**easy** 41:9 43:20
**effect** 33:12 68:24 90:14
**effective** 16:13
**efficient** 21:1 64:17
**eighteen** 22:12,14 25:20 30:20
36:3 37:16 55:18 68:8
**either** 14:8 26:24 35:16,17 51:4
70:21,25 73:8
**elaborate** 68:22
**element** 46:17
**else's** 53:1
**email** 1:16,20 2:4 95:21
**embarrass** 12:5
**Emcom** 24:5
**emergency** 92:23
**encompasses** 92:23
**ends** 46:5
**end-run** 55:23
**end-runs** 61:5
**enforced** 85:10
**engage** 69:25
**engaged** 68:10,25 69:9 70:14 72:1
**enjoin** 3:18 47:2 51:8,13 59:23
64:13 66:15,20 71:4 92:21
**enjoined** 21:9 47:7 48:13,23,25
50:15 51:17 61:6 80:25
**enjoining** 49:3 64:12
**enjoy** 89:12
**enjoyed** 39:12
**enter** 40:9 43:1 64:12 71:18 75:7
93:7
**entered** 5:2 15:9 22:14 26:10 49:12
49:22 61:7
**entering** 47:24
**entire** 91:9 92:23
**entitled** 8:18 12:8
**entries** 83:19 87:13
**entry** 3:17,19 15:13 49:9,14,16,25
69:18 70:20 83:24
**Epic** 19:9
**Equally** 35:22
**equitable** 48:22
**Eric** 2:1 3:8
**Esq** 1:13,14,18,18,22 2:1,2,6,7,7,8
2:8,9,9,10,10
**essentially** 69:2 74:12 79:21
**established** 88:3
**et** 56:22,23 58:22 63:11
**etaylor@phrd.com** 2:5
**ethical** 48:19 52:23 53:1
**ethically** 83:7
**evaluation** 48:6
**event** 7:5 23:20 76:4 94:24
**everybody** 22:15 27:7 28:4 36:5
41:8,10 42:8 43:3,8 51:17 59:2
62:24 85:23
**everybody's** 86:1
**exactly** 26:16 33:13 54:12 55:4
**example** 15:20
**excellent** 7:17
**exception** 54:24 76:15
**exchange** 31:15 69:21
**exchanged** 30:9
**excluded** 7:10

**excuse** 19:1 32:23 53:20
**Executive** 3:6
**Exhibit** 49:14,25
**exhibits** 91:15
**exist** 18:17
**existing** 62:5
**expect** 39:17
**expedited** 39:2
**experience** 33:15 44:24 86:16
**experienced** 27:25
**expert** 30:10 36:8 45:13 95:7
**experts** 30:21
**explain** 79:24
**extends** 32:4
**extent** 40:3
**external** 43:25
**extraordinary** 86:16
**e-mail** 19:15
**e-mails** 69:21

**F**

**F** 95:14
**face** 30:7
**facilitate** 73:2
**fact** 18:21,21 20:1 26:17 28:15
34:12 41:19 52:25 54:25 74:9
88:4 90:12
**factor** 44:18 89:18
**factored** 82:18
**factors** 28:8 42:17,18,25 43:3
**facts** 28:5 45:19 59:4,8,8 72:18
74:14 78:24 82:8,13,23 86:18
92:2
**factual** 57:17,17 81:24
**factually** 17:6 19:11 79:11
**failed** 67:23 68:4
**fair** 5:6 23:23 27:6,9 28:6 29:10
30:25 34:23 37:14,18 38:19 45:2
48:22 61:18 63:10 65:5 75:13
**fairly** 61:23
**fairness** 22:9 29:8 39:4 46:15,18
50:20 51:2 66:5 88:3
**faith** 41:18,22 43:24 55:6 65:7
81:13
**far** 15:20 16:6 43:18 65:10 66:25
**fashion** 26:23 36:4
**fast** 55:7 62:2
**fault** 12:11 38:22
**favorably** 80:23
**February** 5:16 6:5 9:7
**federal** 2:12 27:4 38:11 44:19,21
45:10,22 55:10 56:2,4,17 64:15
71:22 95:19
**fee** 79:22,22 80:6,7
**feel** 59:21,24 61:11,14 64:19 75:17
83:12
**feeling** 12:7 92:16
**feels** 10:5 52:21 54:18 72:18
**fees** 75:15,15,16 78:16,19
**felt** 38:21,25 77:8
**field** 43:13
**fifteen** 14:10,13 91:14
**fifteen-page** 91:23
**fifth** 17:11 44:14 47:24 67:21,25
68:17
**fifty** 61:12
**fight** 57:14
**figure** 67:8
**file** 26:24 38:12 59:8 66:6,18 90:2
93:24
**filed** 3:15,17,18,20 4:25 5:1,5,15
5:16 6:5,5,7,7 9:6,10,11 16:4,25
24:17 29:21 34:3 36:11 38:13,16
40:2,22,24 41:4 44:7 49:13
50:1 52:16 54:8 56:6 59:23 60:2
66:13 67:25,25 68:1,11 69:8,17
69:18,19 70:7,23,24 71:5,17
83:19 84:19 85:18 87:8 89:5,5
91:12,21 95:3,18
**filing** 6:22 16:9 24:11,14,24 25:1
25:14 29:13 36:5 38:18 49:25
84:9 86:10,11
**filings** 29:12 44:10
**final** 15:2 29:8,9 46:14 50:20 51:1
**finality** 92:24
**finally** 17:14,19 21:4 47:23 61:8
**financial** 9:24 10:3,7 69:14
**find** 17:5 25:6 27:1 41:7 59:4 69:4
72:13

**finds** 45:8 61:22
**fine** 13:3,12 43:19 56:14 58:4
61:23 82:8 83:11 90:25
**finish** 36:17 44:11
**finished** 59:18
**firm** 1:22 41:8 50:13,14,15
**first** 3:20 4:4 10:11 20:11 24:1 26:2
32:15 37:11 42:3,5 76:17 78:1
81:18 84:7 85:15
**fit** 72:18
**five** 14:22 34:9 48:25 53:21 59:22
**fix** 82:16
**FL** 1:16,20,23 2:14 95:20
**Flagler** 1:15
**flaw** 42:7
**Florida** 1:1,6 6:15 19:23 34:7 48:19
62:14 63:11,13 75:19 77:13
89:22 93:23 94:14
**FLSA** 27:5
**focus** 11:20
**focused** 44:19
**folks** 48:15 80:4
**follow** 38:7 54:5 93:15 94:17
**followed** 61:1 93:17,18
**following** 4:7
**foot** 14:1
**footing** 37:4
**fora** 52:12
**force** 43:16
**foregoing** 95:15
**forever** 44:8
**forget** 42:9 64:7 75:21
**forgive** 75:21
**forgotten** 73:17
**form** 20:25 22:6
**formal** 31:13
**former** 74:6
**forms** 70:17
**formulation** 37:18
**Fort** 1:23
**forth** 50:21 51:3 64:24
**forthcoming** 14:21
**forty** 58:2
**forty-one** 64:10
**forum** 47:4
**forward** 10:2 19:9 25:4,5 55:7 61:6
64:13 69:11
**found** 64:22 87:12
**four** 14:22 30:5 48:25
**fours** 61:3 86:17
**fraction** 29:17
**frankly** 11:8 73:23
**friendly** 42:20 43:10 50:12
**front** 4:1 54:20 58:1 59:13 60:2
61:9 63:23 65:14 72:10
**frustrate** 43:5
**full** 12:14 22:15 31:18 46:8,21
87:11,12 91:11
**fully** 4:18,23,25 5:3 22:17 34:24
70:23,25 72:19 73:9 74:5 95:5,6
**fulsome** 29:14
**function** 45:22
**funds** 78:19
**funeral** 57:4
**further** 32:11 33:5 53:18 71:4
92:22 94:25
**futile** 67:16
**F.Supp** 61:2

**G**

**GA** 2:4
**gals** 94:16
**game** 66:10
**gatekeeper** 45:22
**gear** 44:13
**gee** 9:15 35:24
**general** 25:10 87:1
**generous** 79:6,10 80:10
**gentleman** 65:2
**gentlemen** 61:10 95:12
**Georgia** 34:7
**getting** 13:15 22:23 23:17 27:24
43:18 63:8 78:24 87:18 89:18
95:10
**Gilbert** 1:18 3:4 54:4,6 65:18,21
73:8,19 77:25 79:9,14,17,19
80:16 85:25 88:2 92:12 93:1,19
**gilding** 86:3
**give** 7:3 11:9 27:10,22 35:1 41:14

42:13 59:2 69:2 74:17 82:9 83:7
89:14,14 94:11
**given** 36:3,10 37:9 41:22 43:9,24
**gives** 61:16
**giving** 13:13 42:8 43:3
**glad** 21:20 82:25 91:6
**go** 9:6 10:2 12:8 13:11,11,14,19
20:10,10 23:12 24:22 32:11
34:23 36:16 38:11 41:11 45:5
48:8 49:5,6 55:14 56:8 57:22
59:10,19 61:17 64:1 65:11 66:18
66:18 69:4 72:8 86:6 89:15
92:14 94:15
**God** 52:25
**goes** 7:24 24:10 25:4,5 39:12
76:14 79:4
**going** 8:15,16,24 13:9,17 16:3 17:5
17:7,23 18:24 24:6,19 27:1,11
30:17,20 35:1,3 37:13 42:13,15
43:16 44:15 45:13,14 49:2 51:12
53:2,21 54:4,4,12 55:14,19
56:21 57:12 58:21 59:2,3,25
60:16 61:6,20,22 62:2,9,13,18
63:7 64:13 65:11,19 66:22 67:23
75:4,4,5,7 81:3,14,15 82:19
83:12 85:22,24 86:4,5 89:14,14
92:14 93:19 94:4
**good** 3:22,23 7:9,18,22,25 8:4,5
9:3,3,7,22 12:15 14:4 18:19,20
21:22,23 22:7 28:7,8 34:18,22
36:14,14 37:19,19,20,24 41:3,4
41:15,18,19,22 42:2,8,10,10,13
42:16,23 43:3,6,9,12,24 53:13
55:6,15 57:9,13 59:7 60:7 61:1
65:7,21 74:20 77:3,10,11 81:11
81:12 83:2 89:23 93:8,9,11 94:3
**good-bye** 35:25
**good-intentioned** 40:22
**gotten** 9:19 22:16 59:13
**governed** 83:20
**governing** 83:25
**grant** 12:2 20:11 40:17 57:14 74:12
77:23 85:24
**granted** 15:3 25:13,14,15,16,17
57:10,25 63:3,4,4 92:25,25
**granting** 25:18
**grants** 57:1,16 60:10
**great** 20:16 43:13 44:23 60:7 67:18
91:15
**grossly** 15:17 16:18
**Grossman** 1:18,19 3:5
**grounds** 72:17
**group** 11:15 15:1,14 16:10 17:13
42:13 54:14 67:11 70:5
**guess** 7:21 10:7 17:3 24:16 38:15
41:6 50:5 62:23,24 74:24 76:21
83:14 85:15 89:12
**guidance** 83:16
**guided** 10:24
**guy** 51:15 55:13 94:22
**guys** 35:1 78:23 94:15

**H**

**ha** 60:24
**habit** 34:25
**hac** 56:10 58:8 71:9
**hadn't** 38:6 93:11
**half** 57:16
**half-assed** 27:15
**hand** 52:13
**handle** 7:18,22 8:3 54:6 63:22
73:14
**handling** 6:16
**happen** 19:23 38:5,6 40:16 42:8
43:8 64:2 67:8 82:7,7 94:23 95:1
**happened** 7:20 15:18 17:6 28:16
30:25 47:23 54:18 56:12,20
57:18 58:1,19,25 63:20 70:10
89:11 94:25
**happening** 37:24 39:4 46:9 59:6
73:4
**happens** 44:6 60:13
**happy** 53:16 64:19 77:4,13,13,14
**hard** 20:9 65:15
**Harris** 20:17
**hasn't** 50:6 65:23 72:15
**haul** 57:13
**haven't** 8:7,10,10,11 11:5 12:19
34:1 59:13,18 69:20 72:13 92:7

94:19
**Ha-ha** 59:21
**head** 27:5
**Health** 54:21
**hear** 3:21 10:20 21:20 26:11 59:2
81:4,9 82:3,17 83:4 91:5
**heard** 7:4,25 8:18 17:19 18:7 30:7
36:5 81:23 82:25 86:17 92:4
**hearing** 16:25 17:1 29:9 46:15
49:11 56:21 57:4 60:4,4 66:23
69:12 82:15 86:10,11 87:10,14
87:23 91:24
**hearings** 35:1 82:14,14 95:7
**heartbeat** 12:11 53:11
**heartily** 23:10
**heaven's** 42:5
**held** 19:19 47:25 87:14 92:13
**help** 61:12 63:24 95:8
**helpful** 80:17
**hey** 42:11 44:6,11
**He's** 50:13
**high** 39:10
**hinged** 90:9
**hire** 45:13
**history** 6:21 36:3 37:9
**hit** 65:22 74:18
**Hodkin** 1:22
**hold** 51:12 66:23 71:1
**holders** 11:10
**holding** 73:18
**Holley** 2:2 3:10,10,12,21,22,24 5:9
5:12,18,23 6:19 7:15 10:8,11
13:6,21 14:4,13,24 15:11,19
16:9,21,24 17:9 18:11 19:2,5,7
19:13,18 20:6,11 22:22 24:21
65:24 67:17 68:16,19 76:9 81:4
81:10 90:24,25 91:1 92:5 93:5
**honest** 59:12
**Honor** 3:3,10,22 4:1,7 5:18,23 6:19
10:20,22,22 13:6 14:4,6,9 15:11
16:24,25 17:10 18:12,15,16,23
19:2,5,18 20:6,15 21:1,16,16
39:9 54:3,5,10 56:1,4,13,16,18
57:2,9,21 60:25 63:12 65:12,20
65:21 66:16,20 67:2 68:14,17,22
69:4 70:16 71:25 72:15 73:19
78:9,10 79:17 80:20 83:16 91:1
91:3,6,8 92:1
**HONORABLE** 1:10
**Honor's** 10:9 54:3
**hope** 42:5 47:11 62:15 82:19
**hopefully** 54:14 82:10
**hopper** 59:18
**hotly** 69:6
**hour** 27:9,16 52:1 81:7
**hours** 57:4
**Hudson** 2:2
**huge** 83:13
**humongous** 53:5
**Huntington** 14:9
**hurt** 20:4,8
**hush** 28:10
**hypothetical** 4:13 45:7 77:2
**hypothetically** 35:13,23 76:2

**I**

**Iberia** 15:3,11 17:11
**IberiaBank** 15:4 16:17
**idea** 28:22 32:14 34:18 42:12 93:11
**ignored** 85:6
**Illinois** 17:12 78:25
**imagine** 17:4 91:3
**immediately** 58:11 71:1,21,24
**impact** 20:1 26:8 93:25
**impacted** 93:13
**implement** 93:9
**implication** 23:5,22
**important** 11:1 33:18 34:15 35:19
35:23 36:1,2 42:23 68:20 69:13
70:1 74:11 86:18 87:18,18 90:18
91:10
**importantly** 68:4 87:11
**imposed** 70:9
**inadequate** 15:17 16:18
**included** 79:8
**includes** 15:1 28:25 50:24 78:19
79:21
**including** 10:20 39:6,24 83:25 84:2
85:13 91:20

**inconsistency** 73:11
**inconsistent** 6:17 8:21 88:17,20
**incorrect** 43:23
**indicated** 12:13 83:22
**indicating** 76:5
**individual** 4:15 19:20 54:7 60:20
**individuals** 31:10
**infancy** 68:6
**inference** 77:21
**inferentially** 42:24 74:18 75:1,2
**inform** 17:10
**informal** 30:9 31:14
**information** 30:8,15 31:9,13,15
68:20 69:14,24 70:7
**informational** 40:5
**informed** 29:18 86:21
**informs** 11:2
**inheriting** 44:9
**injunction** 61:9 64:12
**inquired** 63:10
**inquiries** 92:15
**inspect** 60:3
**instance** 60:12
**institute** 51:5
**instruct** 85:25 92:11 93:1,19
**insufficient** 11:17 78:19
**integrity** 73:4
**intelligent** 27:25 65:1
**intent** 41:15 42:8,10 43:9
**intentionally** 58:12
**interest** 12:9
**interesting** 28:9 33:14 51:16 52:23
**interfering** 60:19 61:20
**interpretation** 51:21 82:16 84:25
85:4 94:1
**interpreted** 24:21 77:6
**interrogatories** 58:6
**interrupted** 13:16
**interrupting** 86:6
**intervene** 17:7
**intervening** 75:25
**invite** 13:21
**involved** 12:8,18 17:8 51:18 53:10
53:10,11 69:3,7 82:11 85:2,20
93:14
**involvements** 82:2
**involves** 85:16
**involving** 80:19,22
**irrespective** 25:20
**Isani** 2:9
**isn't** 6:17 8:4 30:25 43:8 57:17
58:17
**issuance** 66:19
**issue** 17:1 22:11 26:21 48:1 53:6
57:19 66:11
**issued** 33:7 86:15,21
**issues** 10:20 15:5 21:5 26:12,12
28:23 31:23 36:7 43:25 53:7
83:25 87:6 88:9 91:20
**issuing** 24:2 28:17
**items** 92:16
**it's** 6:1,17 7:17,18,18 8:25 9:3,3
10:4,5 12:3,5,25 13:3,3,4,15
14:18 18:15 20:9 22:8,17,18,19
23:7,18 24:7,19 25:1,11,15,16
26:6,6 27:15,18 28:5,6 31:13
32:24,25 35:11 37:2 41:4 42:17
43:10 45:9 49:13,24,25 50:23
54:20 55:4 57:9,13,17 58:1
61:18 62:12 63:3,14,19 65:1
67:15,16 68:12 70:10 73:15 74:1
74:11 77:2,5,10,10,14,20 82:5
89:8,21,22,22 90:3 91:10
**I'll** 13:10 44:15
**I'm** 12:5 13:17 19:11 25:3 32:23
33:1 38:23 43:16 50:4,18 53:1,2
55:14,19 60:5 61:23,25 64:20
74:16 76:9 83:9 84:6 86:6
**I've** 23:17 39:11 42:19 58:23

**J**

**J** 2:2
**James** 1:10 2:8
**Jamie** 2:9
**January** 17:15 87:3
**JEFF** 1:22
**job** 74:20
**joint** 20:21 57:11 74:24 87:15,17
**jointly** 74:25

**JON** 2:1
**Jones** 27:7
**Josefsberg** 11:13
**JP** 20:17
**JPML** 23:12 32:3,19,21 33:16,23
36:23,24 44:2 45:9 56:13,19,21
63:12 68:8 84:13 86:10,11,13,19
86:19 90:20,21 91:17
**judges** 44:22 59:7 67:19
**Judge's** 84:20
**judgment** 26:12,17,25 39:17 57:23
61:3 65:5
**judicial** 18:20 21:2 52:14 90:10
**July** 32:7 39:18
**jump** 76:10
**June** 32:6 87:4
**jurisdiction** 14:3 15:24 22:9 26:2
28:13,19 31:24 32:1,2,3,5,10
35:9 41:23 46:10 62:25 66:4,7
62:8 91:17
**jurisdictional** 22:9 46:24
**jurisdictions** 38:12
**Justice** 92:17

**K**

**Kansas** 80:18,22 90:7
**Kathryn** 2:9
**keep** 52:21,24 83:11 86:6 88:24
**kind** 23:22 45:6 53:4 55:22 73:15
82:16
**kinds** 32:14 43:3
**King** 1:10 12:16 56:25 57:15 58:8
60:10,11,19 62:9,16 63:23 64:5
**knew** 16:6 34:23,24,25 66:14 75:5
**know** 6:24 7:15 8:2,6,9,10,14,20,24
9:2,14,25 10:22,25 11:4,6 12:1
13:8,9,13 14:19,19 17:2,5 18:23
22:3,21,21 23:8,11,21 24:6
25:10,25 26:25 27:21,23 29:14
31:23 37:1 38:13,21 41:8,8 42:4
43:2,7,16 44:21 45:2,25 47:22
48:2 49:11 53:12,20 54:10,11,12
54:22 56:12,20 57:24 58:20,23
58:25 59:12,25 60:9 61:25 62:6
62:7,23 64:20 65:2 73:20 74:21
75:5,8 76:21 77:20 79:1,2,11
85:6,9 86:4 92:1,2,15,19 94:4,18
94:10,17
**knowing** 66:22
**knowledge** 54:7 55:25
**known** 17:14
**knows** 52:20 68:14 69:8
**Kopelowitz** 1:22

**L**

**La** 58:24,24 60:9,9,20,20
**labeling** 27:17
**Labor** 45:2
**laboring** 39:6
**lack** 61:14 66:7
**lacking** 66:3
**Land** 58:24 60:10,20
**language** 20:3 50:17
**larger** 4:2
**Las** 1:23
**late** 65:4 67:15 75:16
**Lauderdale** 1:23
**law** 24:12,15 26:7 29:1 41:8 50:13
50:14,15 61:1 74:14 77:8 82:20
92:3
**LAWRENCE** 1:10
**Lawson** 50:24
**lawsuits** 31:8
**lawyer** 22:20,22 31:12 38:14 40:9
48:20,23 50:5,9,12 51:14 52:11
52:18 58:8 68:20
**lawyers** 4:20 7:15,16 8:15 9:12
12:7 13:13 22:8 26:18,19,20
27:25 28:1 35:14 38:10,11,24
40:23 41:6,8,13 42:10 43:13
55:21 56:5 58:17,18 61:6,8
64:15 65:3 67:5,7,10 70:3 76:22
78:14 82:6 92:18
**lead** 10:17 21:17
**leading** 22:13
**leads** 28:22
**learned** 64:2 90:17
**leave** 95:1
**leaving** 83:1

**led** 70:6 71:10
**left** 43:13 66:2 68:16,20 72:5,12
90:22
**legal** 21:13 66:9 73:23 81:15
**legally** 38:4
**lengths** 67:18
**lengthy** 31:15 68:13
**Leon** 1:19
**let's** 17:5 39:22 41:18 42:10 44:11
57:22 59:10,11 77:4 85:8 86:6
90:1
**level** 58:16
**liaison** 54:22
**license** 69:2
**lies** 24:12
**life** 7:24 41:25 52:8
**lightly** 58:22
**liked** 7:25
**likes** 27:25
**lily** 86:4
**limit** 76:19
**limitations** 13:15 24:19 57:8
**limited** 27:20 77:16,17
**lines** 23:11
**list** 62:14
**listen** 9:2 11:7,13 26:23 35:14
53:15 82:6 83:3 94:16
**literally** 67:13
**litigants** 93:22
**litigate** 73:6
**litigated** 68:9
**litigation** 1:4 4:2,5 15:13 21:11
25:10 26:22 27:22 33:4 36:4
47:6 52:14 53:7 61:5 62:21 68:8
90:3,7 71:22 72:4 74:4,4 77:19
80:20 84:25 86:2 89:2,3,4,7,10
90:11 92:23 93:10,13,14,24
94:10,17
**little** 6:17 23:6 32:11 61:25 80:12
**live** 58:10
**local** 55:24 65:13 71:20 83:21 84:17
85:4
**long** 7:7,23 42:4 57:13 71:12
**longer** 33:11,24
**look** 9:15,15 10:24 12:17 37:10
42:20 45:1 52:4 69:21 78:2
87:11 91:11 92:1 93:2
**looked** 31:10 44:10 75:6 92:5
**looking** 11:15 15:25 20:8 77:18
83:23 91:23
**looks** 37:10,11,22 39:12 41:2
**loose** 27:17
**lose** 65:8 70:8
**lost** 78:3 88:4
**lot** 5:21 7:7 9:7,14 11:18 13:8
25:11 29:11 39:7 41:2 42:17,18
42:18 43:1,22 44:21 59:15 61:9
63:8 77:10 78:23 85:7 89:20
92:13 93:15
**love** 42:20
**lunch** 81:4

**M**

**magistrate** 94:20
**main** 32:15
**major** 40:2
**making** 12:13 43:19,23 76:25
77:11
**man** 20:8 51:12 53:13
**Managed** 32:12,13 39:25 45:24
46:2 60:25 61:10 80:22 86:17,22
86:23 90:8
**management** 16:13
**manner** 48:22 65:9
**manuals** 40:19
**map** 27:16
**March** 3:17,18 19:4 24:18 49:20,21
49:22 50:4,18 56:21 86:14 87:14
**MARIE** 2:12 95:17,18
**mark** 93:2
**Marks** 2:7
**Marquis** 2:3
**marvelous** 7:18
**Mary** 27:7
**material** 82:1
**matter** 7:24 26:17 38:1 58:10 63:22
72:10 73:3 82:10 90:21 94:1,9

95:2,16
**matters** 10:18 18:25 19:21 73:3
94:14,24 95:9,10
**MDL** 1:5 6:3 14:5,10,25 15:5,22
16:1,2 17:21 18:2,4,18 19:20
22:25 23:1,5 26:21 27:1,3 30:2
32:16 33:21,22,23 34:14 38:5
40:7,8,8,13,14,19,20 41:6 42:2,3
42:4,15 43:5,6,10 44:4 45:18,19
45:24 46:1,5 47:7 52:13,13,21
53:7,8 56:8 58:11 59:16,19 60:8
61:17 62:21 63:15,20 64:7 65:6
71:19 75:19 76:17 85:2,14 86:2
86:22 93:9,10,22,25 94:3
**MDL's** 14:2
**MDL-appointed** 72:25
**mean** 9:17 12:5 17:4 22:20 30:16
31:3 38:3 40:3,14 47:14 48:12
49:2 53:12 59:6 60:4 86:7 93:17
**meaningful** 70:1
**means** 62:6,7,23,24 79:10
**meant** 25:3 46:19 70:12 84:25
88:24
**mechanism** 36:25
**media** 90:17
**mediation** 31:16
**meet** 32:6 56:22 66:4
**meets** 56:19
**member** 50:22 51:4 80:3
**members** 3:4 18:6,7 21:10,13 26:9
29:6 47:5 50:25
**mention** 80:16
**mentioned** 67:21,22 68:14 78:21
**merit** 55:1
**merits** 27:20
**mess** 9:15 52:2 53:5
**met** 57:9
**Meyers** 2:9
**Miami** 1:2,6,16,20 2:13,14 95:20,20
**middle** 17:11 70:4
**Middlebrooks** 44:5
**million** 15:15
**mind** 8:18 9:4 41:24 44:21
**minute** 17:1,7 30:24 53:22 55:14
74:17
**minutes** 48:8
**misapplied** 77:8
**misinterpretation** 23:25
**mislead** 58:3
**misrepresentation** 57:17
**missed** 82:17 83:8
**missing** 43:11,15 77:14
**Mississippi** 4:6
**Missouri** 18:1,2
**misspeak** 49:8
**misunderstood** 45:15
**mockery** 61:4
**moment** 4:25 15:5 18:16 21:17
66:16 76:6 79:15
**momentarily** 37:15
**Monday** 15:3,8 18:12 56:5 57:19
57:19 58:19 85:17
**money** 41:3 42:17 48:12 55:21
64:6,6 80:6,13
**month** 25:18 36:3 84:20
**months** 5:1 6:9 7:7 9:21 22:12,14
25:21 30:9,20 37:16 40:24 44:5
55:18 56:18,22 64:24 67:4 68:8
69:23
**moot** 76:4
**Moreno** 39:25 54:21,21 55:2 58:15
61:2,2,5 64:14 78:25
**Moreno's** 65:10 80:23
**Morgan** 20:17
**morning** 3:13,22,23 9:11 21:22,23
64:19 67:17 68:17
**mortgage** 75:16 77:7
**motion** 1:9 3:16,18,20,21 4:18 5:15
6:7,9,13 14:8,9 20:23,24 22:17
25:6 28:3 38:8 39:17 40:17
43:18 49:23 57:1 66:15,20 67:20
68:10,10,15 70:16,20,22,24
71:11,17 73:9,22 74:1,3,4,12,25
78:10 85:24 87:7 90:2 91:12
92:10,20,21,25 94:5,7,8
**motions** 3:13,15,15 32:7 60:10
68:11 70:25 71:3 95:5,6
**motivation** 83:1
**motivations** 81:14 83:3
**mouth** 75:2

**move** 5:20 55:7 58:11 83:17
**moved** 20:7 37:6
**moving** 6:10 7:7 62:1
**multiple** 34:9 52:12
**multi-district** 4:2,5 15:13 52:14
56:19 61:4 64:17 68:3 84:25
90:11 93:23
**mystery** 23:3,23

### N

**name** 75:21
**named** 26:15
**National** 1:15 17:16 20:18 67:22
68:1,18
**nature** 24:24 26:7
**necessarily** 18:19 78:6
**need** 35:14,18 73:21 95:8
**needed** 38:21 69:25
**needs** 58:8
**neglect** 66:1
**negotiating** 69:16
**negotiations** 46:18 69:10 70:1,5
88:24
**never** 31:11 57:14 58:1,19 63:3,16
87:6 90:16
**Nevertheless** 51:17
**new** 14:20 16:3 23:1,18 34:2 40:10
44:7,10 56:13 60:9 64:3 72:21
**newspapers** 19:15
**nice** 34:25 51:11 94:15,22
**night** 35:24 67:3,8
**nights** 47:23
**nine** 14:23,24
**ninety** 27:21
**ninety-nine** 14:7
**nodding** 27:5
**noon** 81:7
**normal** 72:8,11
**Normally** 7:3
**Northern** 19:22 34:7,7 63:10
**note** 9:8 91:13
**noted** 71:8
**notice** 4:11 18:22 19:3,6,9,14,15
22:11 24:9 28:14,15 30:1,2 33:5
36:4 38:2 44:3 46:11,14 49:17
56:6 59:22 60:5,6 61:17 66:6,11
66:12,18,20,23 67:2,7,12,14
72:21 83:19 84:1,2,14 85:18,21
86:1,14 87:19
**notices** 67:6 69:8 86:13 87:17
**notification** 23:14,16 33:1,3
**notified** 16:5 19:16 23:1 49:21
85:13 87:20 90:16 91:25
**notifies** 93:21
**notify** 16:2 33:12,14 34:20 36:24
45:9 71:21,24 93:23 94:3
**notifying** 52:15 87:16
**NSF** 79:22 80:6
**number** 3:19 21:12 25:8 56:6 65:24
68:1,4 69:10 70:19,21 71:4,7,24
80:17 83:24,25 85:19 91:14
92:10
**N.E** 2:3

### O

**object** 6:15 7:8 16:23 29:6 57:20
73:12
**objected** 7:12 8:25
**objecting** 6:14 34:19
**objection** 12:22 16:6 41:1 48:7
59:23 87:1
**objections** 17:14,19 18:5 87:4
89:23
**obligation** 56:10,11,11,18 58:5,18
71:20
**observations** 24:23
**observed** 4:21
**obvious** 10:7
**occasionally** 20:10
**occur** 13:2 17:25 38:10 67:2 82:4
**occurred** 72:12 80:5
**occurring** 72:12
**October** 23:12,15 33:7,25 68:9
**officer** 52:24 53:23 81:6
**Official** 2:12 95:19
**officials** 30:11
**Oh** 27:3,4,24 35:13 44:23 45:4
52:25 89:8
**okay** 9:17 19:17 23:8 27:4 43:19

44:1,16 45:21 46:3 82:8 89:21
89:22
**Oklahoma** 20:16
**Olas** 1:23
**old** 27:24
**once** 3:24 24:7 55:19 88:2
**ones** 14:16 59:17 75:22
**ongoing** 30:13,22 53:9 69:9 70:9
92:24
**open** 8:18
**opening** 1:10
**operation** 77:18
**operative** 37:2
**opinion** 27:2 55:2,23 60:17
**oppose** 88:22
**opposed** 10:4 68:10 74:9 89:10
**opposes** 5:4
**opposing** 81:15
**opposite** 59:8
**opposition** 6:12 30:3
**opt** 29:6
**oral** 4:21,23 29:22 70:22 71:1
85:24 94:5,7,12,16,22
**order** 4:15 5:2 19:7 21:5,7,8,15
22:13 23:12 26:9 30:4,4 34:21
37:12 44:2 46:25 47:4,24 48:9
49:6,9,12,22,24 50:3,19 51:22
52:7 55:11 61:7 63:6 64:22
66:17 67:1,14 69:25 71:7,14,18
72:17,20 75:7 76:1 78:18 79:15
79:19 80:3 83:24 84:4,20 86:1
86:15,21 92:9,12 93:7,8,20,21
**ordered** 17:24 19:7
**orderly** 6:9,9 26:22
**orders** 44:14 91:17 94:20 95:10
**ordinarily** 6:10 36:4 38:7
**original** 30:4 52:1
**originally** 18:12
**Orseck** 1:14
**Ostrow** 1:22 54:6 69:19,23
**Ostrow's** 69:17
**ought** 31:21 44:18 64:15,20,25
**outside** 4:16 15:21 16:18 18:3,18
46:2 57:20 62:19 71:6 85:14,20
**overdraft** 1:4 4:9 18:16 75:15,15
75:15,16,20 78:15 79:22 80:7
**overwhelming** 13:7

### P

**pages** 36:6 68:12
**paid** 81:24
**pains** 91:16
**panel** 16:2 33:1,2,3,10,12 52:14
56:19 90:10 93:24 94:3,4
**paper** 44:22 78:20
**papers** 18:23 29:14 59:19 64:5
71:1 94:15
**paragraph** 21:7 50:18 84:6,7
**Parker** 2:2
**part** 4:20 17:2 35:11 84:10 88:21
88:23 90:18
**participate** 21:14 47:5,13,16 51:10
51:24
**participating** 21:11 48:25 50:16
52:19
**participation** 92:22
**particular** 4:24 26:17 54:6 71:25
73:3 91:13
**particularly** 26:8 41:7 67:23 78:23
**parties** 10:25 11:16 39:5 90:16
92:21 93:9,12,21
**partly** 45:7
**parts** 54:6
**pass** 47:15
**passage** 71:17
**patterned** 76:8
**pay** 64:6,6 72:23 80:12
**paying** 43:1
**payment** 75:16
**Peachtree** 2:3
**pendency** 9:19
**pending** 3:13 6:2,3,9 7:6,23 10:2
12:24 14:1 22:12 23:2 34:10
37:15,15,21 38:5 50:20 51:1
55:1 56:7 68:1 76:16 70:22
70:25 71:19,22 84:2,5 85:1,14
93:13,24 95:5,6,9

**Pennsylvania** 75:24 76:15 77:21
78:24 79:3
**people** 11:10,10 12:17 19:13 27:23
37:14 41:3,16,17,19 46:13,13
48:10 51:23,25 52:24 54:14 57:7
59:22 60:24 64:4 65:7 67:11
72:21 93:15
**perceive** 59:1,1 73:11
**perceived** 42:24 89:1
**percent** 14:7
**period** 18:13 24:19 55:17 69:23
73:22 74:24
**permission** 54:3
**permit** 64:3
**person** 42:22 48:17,24 60:18
**personal** 22:8,19 23:6 44:24 57:3,7
81:14 82:9 83:1,15 91:5
**personally** 22:4 23:25 53:11,12
**perspective** 73:23
**persuasive** 55:3
**PETER** 1:14
**pick** 58:15
**picked** 55:2 56:25 68:23
**picks** 80:23
**place** 18:20 26:23 28:12 30:11
32:20 34:3 65:19 69:21 71:13
90:13
**places** 21:8,13
**plaintiff** 1:13 3:2,6 11:24 26:15
28:25 29:1 32:4 54:3 55:8,11
56:24 60:18 62:22 70:14 73:7
87:25 88:22 89:6,6 94:5,8
**plaintiffs** 3:6 7:10 10:19,25 12:23
15:6 21:11 31:10 54:19 54:19
56:11 59:11 60:21 76:8 83:23
85:11 86:13,25 87:6 88:9
91:13,22
**plaintiff's** 3:4,18 5:15 14:25 15:14
16:10,15 17:13 20:19 30:10
51:14 60:15 62:11 64:11 68:20
72:2 74:25 75:11 78:14 92:21
**plan** 67:13
**planned** 90:2
**play** 29:5 61:18 65:16,16
**playing** 48:12
**pleaded** 6:20
**pleading** 15:16 66:19
**pleadings** 10:18,24 20:5 30:22
**pleasant** 12:7
**please** 3:2 24:22 45:5 53:25 65:22
**plus** 58:2
**Podhurst** 1:13,14 3:3,3 51:15
53:15,20 54:1,2,2 65:23 66:14
68:23 69:1 70:10 71:8 73:9
**point** 8:19 11:5 12:19 14:4 18:15
19:25 22:16 25:6 32:12 34:5
44:7 46:8 65:25 66:1 67:18,23
68:4,22 73:18 81:18 83:8 86:13
88:8 89:21 90:6,9
**pointed** 13:17 23:11 51:22 66:14
72:15 83:18 93:14
**points** 18:24 65:23 71:15 90:23
**policies** 40:19 42:2
**Ponce** 1:19
**pool** 58:16
**portion** 29:17
**position** 7:6 8:2,22 11:20,21,21
13:18 21:14 31:4 34:18 36:13
58:20 62:11 73:10,12,16 74:16
75:9 88:17,20,25 89:1 90:5
**positions** 8:21 89:9,9
**possible** 65:22 71:2 80:11,11,13
80:13
**possibly** 8:6 11:6 48:2 80:14 93:13
**posture** 46:24,25
**potential** 23:14 33:3,25 72:3
**power** 72:16,19,20
**powers** 72:24
**pprieto@podhurst.com** 1:17
**practical** 39:23 52:9,10 66:9 68:24
**practicality** 41:25
**practice** 6:9 38:8 41:6 68:10,10
94:3,17
**practiced** 61:12
**practices** 40:19
**practicing** 33:16 58:11,17 91:3
**precedent** 40:18
**precisely** 31:2
**predisposed** 76:18
**prefer** 10:17

**prejudgment** 11:7
**preliminarily** 18:4,10 37:1
**preliminary** 15:3 21:9 24:8 66:17
72:1 82:3 88:7
**preparation** 39:11
**prepare** 55:7 85:25
**present** 2:6 40:12 87:3,3
**presentation** 39:11
**presented** 29:17 31:18 41:1,18
45:11,20 62:19 74:22 91:9,11,19
**presenting** 52:16
**preserve** 20:2 21:2 62:21
**preserved** 4:16 65:25
**preserving** 20:5
**President** 42:14,14
**presiding** 34:7 72:10,25
**Presumably** 19:21
**presume** 9:23 11:12 40:1
**presumes** 76:18,19
**presuming** 76:8,10
**presumption** 76:22
**pretty** 13:15 36:1,2 37:8,22 41:9
43:18 52:23 55:12,15 57:13 60:5
60:7 65:1
**prevail** 39:23
**prevent** 83:14
**prevented** 65:4
**previous** 56:2 59:5
**previously** 85:13
**pre-trial** 83:24
**Prieto** 1:14 3:5
**primarily** 9:24 10:11
**primary** 10:13 13:7 20:12
**principals** 24:3 28:17
**prior** 38:14
**pro** 56:10 58:8 71:9 76:2
**probability** 95:10
**probably** 35:1 42:1 55:12 60:7 62:9
65:12
**problem** 14:3 19:10 24:12,20 25:22
27:12,16 41:2 44:9 48:16,17,21
49:1 57:7 83:13 93:11
**problems** 21:13 25:21 48:19
**procedural** 29:2 46:24
**procedurally** 24:12
**procedure** 28:2 29:3 38:8 39:2
93:9
**procedures** 36:9
**proceed** 19:9 21:4 28:6 69:1 94:8
**proceeding** 24:14 36:4 46:1 47:2,7
48:13 51:6 68:3 81:1
**proceedings** 4:12 5:12,24 10:15
10:16 16:13 19:19 24:2 30:6
39:8 63:6 71:5 81:21 83:22
87:21 92:11 95:13,16
**proceeds** 5:25 14:7 87:24
**process** 7:2 17:13,18,24,24 31:14
31:14,15,17 46:11,12,22 58:21
66:22,25 67:2,9 68:13,25 69:7
69:15 71:12 73:5 93:8
**produce** 71:10 87:2
**produced** 68:11
**production** 87:1
**progressing** 34:8
**proper** 7:9 8:1 11:25 28:2,8
**properly** 7:12 83:8 84:10,15
**proposed** 16:16 18:7 62:5 70:14
78:9,11
**proposes** 17:19
**proprietary** 46:17
**propriety** 46:17
**pros** 6:10
**prosecute** 51:5
**prosecuting** 90:3
**protect** 56:19 64:16 65:6,6
**protecting** 22:10 31:24
**protection** 46:22
**provide** 69:13 91:17
**provisional** 72:16,22
**publication** 19:14
**publicly** 31:11
**punitive** 51:1
**purported** 60:21
**purpose** 5:20 17:10
**purposes** 74:2,4
**pursuant** 18:5
**pursue** 62:22 66:1,2
**purview** 16:19
**push** 16:18
**put** 11:17 13:8 31:3 57:3,6 59:14

67:13 75:2 94:10
**P.A** 1:14
**p.m** 53:24 95:13

**Q**

**quarrel** 51:21
**question** 12:12 19:1 31:5 43:10
45:7,15,17,19 46:5,6 47:18 50:8
50:12 52:1 53:4 59:16 60:14
63:20 73:8,10,15 74:21 78:1
84:23 87:24 88:13,14,18
**questioning** 54:11 76:25
**questions** 21:25 43:22 45:10 46:14
46:16,16,19,20 53:17 54:9 55:3
55:15 56:25 60:8 61:24 63:25
64:25 65:1 88:10 92:16
**quick** 37:8,9 60:5 76:16
**quicker** 37:6
**quickly** 69:1
**quite** 39:25 42:16 53:13
**quote** 84:7

**R**

**R** 95:14
**race** 26:4,6 37:10 39:2 59:25 85:16
**Rainer** 2:2
**raise** 8:20 86:9 89:23
**raised** 15:5 46:20 87:6 88:9
**raises** 48:19
**ramble** 9:17 28:1
**ran** 55:17 72:6
**rare** 44:25
**rcg2grossmanroth.com** 1:20
**reach** 18:3 29:8
**reached** 10:12 11:5 13:24 14:14
17:17,22 24:3 26:1 29:24 36:21
**read** 9:8,10 11:18 18:23 32:24
50:17 65:12 69:12 78:22 87:11
92:7,8 93:2
**readily** 43:16
**reading** 9:23
**reads** 9:13
**ready** 19:22
**real** 27:12 41:25 52:8
**Realistically** 45:12
**realize** 94:19
**realized** 93:11
**really** 7:25 13:19 25:21 37:2 38:19
40:5 41:13,17 43:10 52:2,10
57:12 64:25 71:12 74:18 78:16
**reason** 10:13 12:2,24,25 13:5,7,24
17:4 19:18 20:11,13 22:24,25
80:5 83:20
**reasonable** 51:20
**reasonableness** 50:21 51:2
**reasoning** 42:7
**reasons** 5:22 9:22,10,1,4 13:5
15:16 32:15 34:15 57:3 62:4
77:11
**rebuttal** 81:5,10
**recall** 67:3
**receive** 29:7
**received** 19:14
**recess** 53:22,24 81:5,7
**recitation** 68:16 81:25
**recognized** 26:11
**record** 14:17 29:15 30:7 31:19
46:21 81:17 82:8 87:12 91:9,11
92:1
**records** 31:10
**reference** 27:9,10
**referenced** 92:6
**referred** 80:18
**referring** 16:7 45:7 85:17 86:25
**reflect** 29:23
**reflected** 22:5 30:8 66:13 87:22
**reflecting** 92:13
**reflects** 86:1
**regard** 7:2 10:15,16 39:10
**regarding** 72:2 94:8,9
**Regions** 4:2
**regularly** 60:12
**regulators** 19:15 62:7
**reiterate** 70:17
**reiterated** 69:2
**relate** 24:14,17
**related** 10:19,20 19:21 25:20 27:13
40:2 71:24 93:24
**relates** 25:14 30:5 71:23 83:25

**relating** 25:18 31:9
**relations** 42:23
**relationships** 62:6
**release** 80:11,13 89:15
**released** 51:6
**relevant** 74:10
**relied** 74:24
**relief** 20:12 70:17 71:16
**relies** 80:24
**rely** 75:22 91:18
**relying** 52:20
**remaining** 73:5
**remains** 21:18 47:1
**remarks** 27:11
**remedy** 90:18,19
**remember** 9:9
**reminding** 71:19
**render** 46:21
**rendered** 58:20
**repeatedly** 81:19
**replies** 93:6
**reply** 53:17 80:21 91:21
**REPORTED** 2:11
**Reporter** 2:12 95:19
**represent** 12:8 19:8 42:11 50:6
54:14 60:15 65:7 67:11
**representation** 4:22 23:20
**representations** 19:19
**representative** 37:19 18:15 40:11
40:25 41:10 48:15,24 50:9 51:14
**representatively** 51:4
**representatives** 28:7,8
**represented** 50:24 91:25
**representing** 7:16 48:17 62:25
67:9 69:22 83:5
**represents** 52:12
**request** 20:21 25:14 33:11 49:18
71:16 86:25
**requested** 76:13
**requests** 10:19 84:8 87:6
**require** 58:16 72:23 73:17
**required** 33:24 45:3 56:7
**requirement** 44:3 45:8,25 86:12
**requirements** 66:5
**requires** 56:1 74:5,6,7
**requiring** 23:14 33:1,2 93:12
**resequencing** 80:1,8
**reserve** 94:13
**resolution** 6:10 69:16 73:2
**resolve** 41:16 71:2
**resolved** 14:9,10
**resolving** 73:22
**resources** 21:2
**respect** 10:6 20:24 22:7 29:4 56:17
61:14 71:18 73:5
**respected** 31:21
**respectfully** 58:3 65:9 88:1
**respond** 13:9,12
**responded** 91:5
**responds** 94:11
**response** 5:15 9:6 30:3 66:8 91:12
**responses** 77:25 87:4,7
**responsibilities** 54:15 86:24
**responsibility** 52:23
**responsible** 67:6
**responsive** 87:5
**resulted** 80:20
**results** 76:3,5
**return** 19:22
**reveal** 70:6
**review** 16:16 93:2
**reviewed** 34:2
**revised** 30:4
**re-file** 56:3
**rid** 62:17
**ridiculous** 49:4
**right** 7:2 15:24 19:12,24 26:14 28:2
28:9 29:1 32:24 33:13 34:11
35:7 38:3 44:20,21 50:10 52:7
55:13,20 59:15,16 62:22 63:25
65:25 70:15 73:23,24 75:24 77:9
78:6 80:15 81:9 83:9,17 84:11
85:9,12 89:25 93:15 95:4
**rights** 20:2,4 59:2 65:8
**rigorous** 74:5,13
**ripe** 9:1
**rise** 53:23 81:6
**Robert** 1:18 3:3 4:10
**ROBIN** 2:12 95:17,18
**robinc1127@aol.com** 95:21

Robin_dispenzieri@flsd.uscour...
2:14
**rocket** 62:2
**room** 92:18
**Rosenthal** 2:10 3:5
**Roth** 1:19
**rough** 93:1,21
**routine** 48:13
**routinely** 16:1,2,5 23:18
**RPR** 2:12 95:18
**rubber** 44:19
**rude** 82:24
**rule** 5:14,16 17:23 18:5 27:10
32:19,19,21,23 33:1,2,10,18,19
34:13 36:23 40:17 52:15,21
55:24,24 56:1 58:8 61:16,16
70:25 71:20 83:9,17,17,19,20,21
84:17 85:4,9,14,18,21 86:3,12
86:20 88:23 90:10,11,13,14
93:17,22 94:1
**ruled** 8:7 76:23
**rules** 33:10 55:23 58:21 61:15 65:3
65:16,17 83:21
**ruling** 4:19,23 5:7 9:1 26:12 40:13
61:22 94:13
**run** 55:10
**run-to-the-courthouse** 39:2
**rushed** 31:16 37:22

**S**

**S** 95:17
**Sakars** 16:17
**sake** 42:5
**Salem** 4:3
**sanctions** 71:14 94:6,9
**sat** 5:2
**satisfied** 31:19
**save** 85:22
**saw** 9:11 90:21
**saying** 7:17,21 8:8,23 9:17 20:8
41:24 47:8,9,14,17 51:25 54:10
59:17 61:19 63:6 77:1 83:14
84:24
**says** 16:14 27:18 41:22 52:20
62:13 64:5 75:22 76:15 80:1,8
85:4,6
**Scalia's** 92:17
**scan** 9:8
**scanning** 79:1
**schedule** 16:25 18:5 30:2
**scheduled** 3:16
**schedules** 10:15,15
**scheduling** 22:13 30:4,4 44:14
84:4 91:17
**seal** 69:18,19 70:7
**seated** 53:25
**second** 10:16 20:14 32:19 33:17
44:18 90:16
**secret** 52:21
**SECURITY** 53:23 81:6
**see** 12:2 23:12 27:5,6,8,9,24 40:16
42:7,21 51:9,13 71:12 94:23
**seeing** 39:13
**seek** 27:11
**seeking** 11:25 12:23 25:2 88:22
**seen** 6:12 29:16 32:21 33:17 42:19
44:25 62:16
**sees** 72:18
**Seldom** 89:15
**selected** 38:14
**self-serving** 16:11
**sell** 78:18
**send** 34:11 36:25 44:6,15 48:9,10
67:14 72:21 93:4,5,5
**sending** 23:22 63:13 67:7
**SENIOR** 1:11
**sense** 26:13 92:19
**sensitive** 31:9 69:14
**sent** 15:23 16:2,6 28:14,15 32:8
33:11 38:7,9 49:21 56:12,14
59:22 60:5,6 63:23 86:13
94:19
**sentence** 32:25
**separate** 36:22
**September** 16:4
**serious** 70:1 93:11
**seriously** 6:11,13,13 7:13
**serve** 38:17
**served** 38:16

**service** 38:18
**SESSION** 81:8
**set** 3:14 4:21,22 18:5 22:17 26:18
26:18,20 32:6,7 34:4,6,24 40:18
50:21 51:2 52:13 94:12
**sets** 25:6
**settle** 6:7 20:20 34:11 35:18 63:7
64:4 69:6 71:6
**settled** 4:8 13:3 14:25 15:4,11
17:11 18:2 20:21 35:4,8 44:23
45:9 57:12 59:18 64:4 89:8,25
**settlements** 14:15,21 15:9 20:15
43:1 63:9 67:19 76:24 87:16
**settling** 18:18,20 24:6 45:25 57:11
**shared** 31:11 72:18
**shareholders** 62:8
**shoe** 14:1
**short** 9:18 38:2 53:24
**shortly** 54:15 95:11
**shouldn't** 8:14 12:2 27:19 44:24
48:3,4 62:2 67:1,16 77:17 85:11
89:1,13 93:17
**show** 61:14
**showed** 30:18 37:14
**shut** 70:3
**side** 26:24 64:2 69:13 94:11,11
**sides** 4:18 67:5 83:12 95:3
**sign** 37:12 48:9
**signed** 47:23
**significant** 6:20 68:18
**significantly** 16:12
**signs** 67:14
**silly** 73:15
**similar** 75:7 76:23 79:14,24
**similarly** 27:8
**simple** 7:24 18:15
**simply** 4:19 6:22 29:23 81:21
82:13 87:10
**sincere** 43:4
**sincerity** 77:1
**single** 26:20 39:19,22 94:19
**sir** 3:23 13:20 21:23 39:20 50:17
**sit** 60:13 67:5 91:4
**site** 49:9
**sitting** 37:9 42:10 61:19 64:9 85:23
86:20
**situated** 27:8
**situation** 12:21 22:18 40:4 41:14
60:13 63:24 68:7 72:4,11,13
**six** 25:18 30:8 44:5 64:24 69:23
84:20
**sixteen** 19:14
**sixth** 18:3
**sixty** 27:21
**sizable** 42:13
**skipping** 84:6
**slight** 73:25
**slightly** 74:5,7 79:24
**slow** 66:22
**small** 18:1 29:17 41:7 57:22 58:25
**smaller** 75:23
**smallest** 4:5
**smart** 55:12
**smiling** 63:5
**snooker** 59:11
**snookered** 54:17
**solve** 14:8
**solves** 41:2
**somebody** 22:6,7 41:7,9 42:12
52:24 53:1 59:9 69:4 85:25
**somewhat** 7:5
**soon** 62:10 63:20 71:1
**sorry** 12:5 25:3 32:23 33:2 50:4
59:21,24 60:5 74:16 76:9 86:6
**sort** 40:20 41:5 82:22 94:6
**sorts** 22:12 36:6
**sought** 25:12,13
**sound** 13:19
**Southern** 1:1 93:23 94:14
**speak** 69:12
**speaking** 57:4
**speaks** 31:23
**special** 72:10
**specific** 45:7 60:14 61:24
**specifically** 32:11 67:21
**speed** 62:1 81:25
**speedily** 72:11
**spent** 55:22
**spite** 74:14
**stage** 26:2

**stand** 66:15 67:15 73:20 78:4
**standard** 41:5
**Standards** 45:2
**standing** 20:23
**standpoint** 66:9,9
**stands** 44:19
**start** 13:14 21:24 33:2 54:4,10
**started** 41:24 46:11
**starting** 3:2 37:17 57:14 82:25
**state** 11:23 18:2 38:11 55:9 56:3
69:5 71:22
**stated** 87:2
**statement** 5:6 16:20,22 17:4 58:3
63:19
**statements** 87:22
**States** 1:1,11 2:13 95:19
**statute** 24:19 56:19 59:20 64:17
**stay** 1:9 3:16,21 4:12,14,17 5:21
6:8 9:18 10:15 11:17 20:21 21:1
24:2 28:17 43:18 49:18 52:3,4,5
52:7 57:1,24 60:10 62:20 63:3,5
66:19 67:20 70:20 71:11 77:23
92:10,20
**stayed** 5:13 87:21 95:9
**stays** 57:10,15,16 87:16 88:3
**Ste** 1:15,19 2:13 95:20
**step** 30:23
**Stephen** 2:10
**Steve** 2:7
**stick** 81:15
**stood** 37:4 67:17 68:24
**stop** 5:4,7 6:1,4 7:21 9:20 63:13
**stopped** 23:22
**stopping** 65:4
**Street** 1:15
**striking** 9:11
**strip** 83:15
**stripped** 87:25
**structured** 22:14
**STUART** 1:18
**studied** 29:11,24
**stuff** 9:13 78:23
**style** 27:6
**subconsciously** 48:6
**subheadings** 34:9 44:12
**subject** 8:12 23:24 24:4 29:11 69:6
82:20 85:21 87:1
**subjects** 8:23 28:1
**subject-matter** 66:3,7 71:23 78:17
88:1,2,4
**submission** 74:15 75:13 81:10
82:5
**submissions** 87:16 95:3
**submit** 20:25 28:22 32:2,9 55:11
63:6 87:17 91:10,25 92:8
**submitted** 64:22 78:10,11 87:5
94:15
**subsequent** 3:15
**substance** 20:25
**substantial** 35:16 69:15 87:9
**substantially** 79:14,23
**succeeding** 63:7
**suddenly** 23:21
**sued** 17:12,16,21 45:8 52:12 67:11
**suggest** 32:13 47:8 48:1,1,2 65:9
65:12 75:4 76:18 91:23 92:7
**suggested** 32:20 74:24 93:8 94:6
**suggesting** 17:6,9 19:23 22:1
29:23
**suggestion** 23:10 66:7 81:19 86:9
86:23 90:7
**suggestions** 88:5
**suggests** 83:21
**suing** 31:12
**suit** 36:11
**suits** 14:14
**sum** 18:15
**summary** 4:22 26:11,16,25 39:17
75:13
**supplement** 70:18
**supplemental** 66:13 69:17
**support** 32:13 67:20
**supported** 11:20,21 90:8
**supports** 74:14
**suppose** 13:2 35:13,13 38:3
**supposed** 57:23 61:19 63:23 85:5
86:4
**sure** 10:5,10 12:13 18:6 19:11 23:9
34:22 35:8 37:24 38:20,23 39:1

39:3,22 47:17 48:21 49:3 53:12
58:4 61:23 74:19 78:22 84:23
89:8
**surprised** 31:12
**surprises** 14:18
**suspend** 10:14 23:16
**suspended** 32:21 33:4 52:15 55:25
84:14
**suspending** 44:2 86:12
**suspends** 23:14
**suspense** 85:23
**suspension** 33:17,19 52:20
**sweeping** 77:10
**Swift** 19:20 21:19 28:25 29:1 32:4
39:15 47:1 50:25 62:23 63:10
66:2 70:14 87:24
**Swift's** 4:14 20:4 65:25
**sympathetic** 13:18
**system** 56:17 61:13 64:15,16,20
**szg@grossmanroth.com** 1:21

---

**T**

**T** 95:14,14
**tag** 86:12,14
**tag-along** 15:23 16:1,5 23:2,15
32:19,22 33:4,25 36:24 44:2
45:9,25 52:21 56:9,12 84:14
86:20 90:11
**tag-alongs** 23:17 52:15 56:15
**take** 6:12 13:11,15 14:22 22:3 23:6
23:25 40:14 42:9 45:13 53:21
55:21 59:7 69:20 74:8 77:12
81:3 88:5,13,15 89:1 91:10,13
92:1 95:7
**taken** 34:12 58:22 68:12,14 71:13
81:25 88:25 89:9,10
**takes** 61:1 46:1 62:24 67:4,4,6
**talk** 7:4 27:25 30:18 32:12 42:10,21
44:24 67:23 82:7
**talked** 24:5 66:11 84:5
**talking** 23:8,13 25:10 26:5 30:21
32:23 45:4 46:23 52:18 84:22
89:12
**talks** 61:21
**Taylor's** 66:8 75:2
**TD** 14:20 15:8,9 75:6
**teaching** 45:23
**team** 69:23
**tedious** 69:15
**tell** 10:6 34:14,18 35:2,5,20,23
43:11,13,14 45:4,5 48:9 55:9
56:1,4 57:15 59:9,16 63:9,12,20
65:18 70:4 78:13 79:11,15 81:21
82:4,6 85:2
**telling** 28:9 34:17 47:4 50:16 63:2
63:10 72:21 82:4 83:10 85:10
**tells** 11:13
**templet** 8:16
**ten** 48:8 81:2
**term** 50:23
**terms** 31:24 52:9,10 79:7
**testimony** 64:24
**thank** 3:7,12,24 52:25 53:19,25
65:19 73:6 81:2,11 91:1 92:5
95:12
**that's** 5:8,19,20,22 6:16 8:19 9:10
9:12 11:25 12:3,25 13:12 20:5
20:12 22:24 23:3,8,23,24 25:3
25:23 26:21 27:16,23 30:16 31:5
33:14,18 34:15,16 35:7 42:1
43:5,14,19 46:1 47:14,16 48:20
48:20 49:4,23,25 50:23 51:14,14
51:15,17 53:8 57:16,22,23 58:9
59:5 60:20,22 61:14,25 62:11,25
63:9,9,18 64:9 70:7,15 73:13
76:7 79:5,12 80:12 82:8,10 83:2
84:11 86:5 87:13,19 89:4,7,10
90:22 95:2,4
**thee** 83:24
**theories** 36:10
**theory** 31:12 38:3 39:23
**there's** 53:18 63:11
**They're** 47:16
**thing** 6:1 19:12 24:16 31:7 46:8
48:13 53:4 55:20 61:8 64:4 73:2
76:7 78:6,7 79:12 81:24 82:22
85:22,23 86:5 94:6
**things** 8:20 17:5 24:18 25:5 28:10
30:1 36:7 37:24 43:4 52:3,4 53:1

54:8,16 61:13 64:17 65:18 67:4
78:20 82:1 83:10 89:21
**think** 7:17,22 8:5,15 12:12 14:19
16:4 22:4 23:23 24:24 28:17,23
29:4,20 31:20 33:16 34:12 35:7
39:14,21 41:25 43:2,15,23 44:12
44:18,20,21,25 45:18 46:5,5,6
46:22 47:4,6,20 48:18 49:10,10
51:9,22 52:8,11 53:10 57:11
58:23 59:7,12 61:12,20 62:16
68:11 73:22,24 74:12 75:4,24
76:19 80:16 83:3,20 84:17 86:18
88:2,12,19 90:23
**thinking** 23:13 41:24 59:24
**thinks** 11:13,14
**Third** 17:11 67:21,25 68:18
**thirty** 27:21 44:12 55:10
**thirty-day** 55:17
**Thomas** 50:24 56:2 71:5 74:9
70:20 80:2,4
**thoroughness** 39:11
**thought** 5:19 14:22 34:1 38:6,6
45:16 47:22 59:25
**thousands** 36:6,6 65:6
**threatened** 32:1,3,9
**threatens** 16:12
**three** 5:1 11:19 32:15 40:24,24
57:4,6 59:14 60:23 62:4 67:18
86:18 91:4
**threw** 79:12
**throw** 78:23
**thrust** 38:2 92:15,16
**time** 5:3 7:3 9:16 12:24 13:11,16
18:13 23:18 24:19 27:23 28:4
33:11,17 34:3,25 38:9 39:18
40:2 42:4 44:6,7,20 49:12 53:21
55:21 57:8 63:2 71:13,17 72:17
80:5 86:16 87:3,5 88:15 93:20
**timed** 56:20
**timely** 72:4
**times** 3:25 13:16 25:11 46:12
88:12 93:15
**timing** 34:22 86:10,11
**today** 3:14 4:4,7 7:2 9:9 13:22,23
39:3 44:15 48:3 49:12 51:9,10
51:13 66:23,25 72:5 82:18,19
83:18 86:5 91:7 92:14 94:7
**told** 24:21 33:23 35:17 37:23 38:20
55:6 58:9 63:13,14 64:21 85:7
**tomorrow** 48:3 51:23
**touched** 74:19
**tough** 57:13 63:7
**Tower** 2:3
**town** 40:9 41:8
**towns** 41:7
**track** 32:5
**traditional** 46:12
**tranche** 30:5 44:14
**tranches** 34:10 44:13
**transactions** 78:16 80:2
**transcript** 1:9 9:23 22:24 23:5,10
29:16,19,21,23 49:11 69:12 72:7
72:9 87:9,11,22,23 91:24 92:6,8
**transcription** 95:16
**transcripts** 23:24
**transfer** 56:8 58:11 84:9 86:15
**Transferor** 32:8
**transferred** 36:23 56:22 68:8 90:21
**treated** 20:15
**treatment** 39:5,5 89:16
**treats** 26:7
**trial** 34:6 38:9 53:9
**tribunal** 51:7
**tried** 26:22 73:2 74:20 94:16
**trouble** 11:18
**true** 24:16 51:20 63:18,19 81:22
**truly** 41:15
**trump** 69:7
**trumped** 84:17
**trumps** 85:4
**trust** 4:3 70:8
**truth** 57:16
**try** 13:10 34:3 38:24 43:21 65:22
69:4 78:18 81:16
**trying** 7:10 12:6,11 13:18 20:4,9
22:4 25:23 28:12 30:18 34:25
37:17 40:16 41:13 42:9 43:4
45:6,17 49:8 52:8 55:20 69:24
80:10 82:15
**Tuesday** 15:8

**Tuppolo** 4:6
**turn** 67:1,16
**twenty** 38:16 85:8,8
**twenty-seven** 91:4
**two** 2:3 3:13,15,25 8:23 11:19
  14:19 15:9 25:21 31:16 40:21,23
  41:13 47:23 53:5 56:14,18,22
  67:22 68:2,4 71:15 74:23 76:3,4
  76:5 93:19,20
**Tylor** 1:22
**types** 67:4 73:3 78:20

**U**

**ultimately** 15:19 32:7 47:15 70:3,5
  71:11 92:24
**UMB** 18:1
**umbrage** 23:6
**Underhill** 17:23
**underlying** 88:24
**undermine** 16:13 72:3 73:4
**undermining** 70:12,13
**understand** 19:25 20:19 24:11
  25:25 31:8 32:18 33:20 38:23,23
  39:1,4 55:3 56:15 58:2 59:14
  60:1 81:16 84:23 90:5 91:24
  92:17
**understanding** 12:14
**understood** 69:1
**unfair** 27:23 65:9
**unfortunate** 9:12
**unfortunately** 55:15
**unilateral** 57:15,16,24 60:11 63:3
  87:15,17
**unimportant** 39:3
**unique** 40:3,4 43:25
**United** 1:1,11 2:13 95:19
**unknown** 22:24
**unlimited** 13:13
**unopposed** 74:1
**unusual** 33:15 44:3
**unwittingly** 73:1
**update** 58:7
**upset** 61:11 63:23,23
**urge** 20:11 69:20 87:10
**urged** 11:20
**urging** 20:7
**use** 54:17 55:5 57:23 65:5
**usually** 59:9 63:5 93:15
**utilizing** 36:12

**V**

**v** 56:6
**vacate** 72:16
**vacated** 72:22
**variables** 9:1
**versus** 74:2 87:15
**view** 73:18
**viewing** 74:1
**viewpoint** 10:6
**vigorous** 74:7
**violated** 58:12
**violates** 55:23
**violation** 21:14 90:10
**Virtually** 68:6
**virtue** 47:4
**vis-a-vis** 76:13
**vitae** 56:10 58:8 71:9
**voluminous** 92:7
**voluntary** 61:16

**W**

**W** 1:15
**wage** 27:9,16
**wait** 17:7
**waiting** 93:6
**waive** 44:22
**wake** 60:3
**Wallman** 21:8
**want** 5:8 6:1,4,8 8:3 9:20 11:11,17
  13:4,12,22 21:24 22:21 26:11
  30:23 31:1,7,8 33:20 35:5,8
  36:18,19 39:3 42:21,24 46:4,8
  47:9 54:17,24 55:5,11,25 56:4
  56:13,16 59:21 63:18 64:10
  68:22 70:6,8 75:2 77:9 80:10,12
  80:16 82:7 83:2,11,14 84:11,23
  93:3,4,6
**wanted** 24:1 28:25 32:11 38:10
  48:11,11 57:5 86:9 88:1,8,13

90:8,23
**wanting** 78:2
**wants** 11:8,24 12:22 18:7 57:8
  80:12
**wasn't** 27:1 36:8 37:16 90:14
**way** 5:3 6:16 7:9,18,22 9:4,6 12:7,8
  13:19 14:6 20:2,15 21:1 24:6,10
  28:5 30:25 35:16 41:16 42:1
  43:13 49:3 52:5 61:14 64:16,18
  73:14 76:6 79:5
**ways** 52:11
**website** 23:12
**Webster** 17:21
**WEDNESDAY** 1:7
**week** 3:17 6:6,7 9:19 14:20 15:8,9
  36:11 37:8,22 38:12,13,15,18
  40:21 75:10 93:20
**weeks** 9:22 25:18 26:10 35:2 40:21
  40:24 67:5,6 84:20
**weighing** 18:5
**went** 6:7 17:12,18 29:22 41:18
  56:23 58:25 65:11 66:12,23
  67:18 72:9
**weren't** 20:8 55:16 85:20
**Western** 4:10 20:17 21:3 24:4
  28:16,24 29:3,12 37:3,6 46:9
  50:1 81:20 84:14 88:21
**we're** 5:9 27:11 57:12,14
**we've** 22:16 23:17 24:4 25:12,20
  34:12 44:12
**what's** 50:3
**wheel** 67:1
**which-what** 77:7
**whiz** 35:24
**wholley@phrd.com** 2:4
**WILLIAM** 2:2
**willing** 62:17 77:19
**window** 79:4
**Winston** 4:3
**wipe** 51:24
**wish** 5:4 94:8
**wishes** 8:23 26:24
**witnesses** 36:9 45:13 95:7
**won** 37:11
**wonderful** 7:18
**won't** 39:13 66:4 82:10
**word** 14:22 54:11,17,20 55:2,5
  58:14,24 79:13
**words** 7:1 75:2,17
**work** 34:8 40:11 41:25 42:1 43:4
  53:8 55:18 59:15,21 67:7 68:6
  70:13 93:7
**worked** 40:23 65:15 67:11
**working** 55:20 78:13
**world** 15:25 58:10
**worried** 42:15 53:1,2
**worry** 73:21
**worth** 30:9 57:21
**wouldn't** 24:22 31:12 36:16 40:20
  41:5 43:5,9,10 45:12
**writing** 91:6 94:10
**writs** 31:22,25 32:14 65:11
**written** 49:6 76:1 95:3
**wrong** 43:11 55:13 60:8 61:18,24
  63:24 64:1,14 77:11
**wrongfully** 77:8
**wrongs** 85:9

**Y**

**yeah** 34:22
**year** 25:11 32:8 33:8,9,25
**years** 25:11 42:3,6 58:2 59:15
  60:23 61:12 64:10 91:4,4
**York** 14:20 40:10
**you're** 5:11,19,22 44:21 47:14,16
  85:10
**you've** 9:13 39:24 46:12 48:4

**$**

**$1,750,000** 78:3
**$10,000** 89:14,18
**$2.5** 15:15

**0**

**09-0236-MDL-KING** 1:3
**09-2036** 93:10

**1**

**1** 17:20 49:14 70:19
**1st** 24:18
**1.1** 83:21
**10:30** 1:7
**100,000** 68:12
**108** 58:8
**11** 23:12 33:7
**1150** 1:19
**12:10** 53:24
**1336** 61:2
**14** 87:13
**15th** 16:4
**1500** 2:3
**16th** 66:14
**1608** 15:13
**17.1A** 33:2
**18** 1:7 6:9 7:6 9:21 19:6
**18th** 86:14

**2**

**2** 70:21 71:24
**2nd** 61:2
**2,600** 83:18
**2,700** 83:19
**2:30** 81:5
**20** 5:1 21:7 50:18
**20th** 5:15
**2005** 87:3
**2010** 68:9
**2011** 16:4 17:15,20 33:9 87:4
**2012** 1:7 3:18 6:5
**2036** 1:5 33:23 71:19 73:1 93:22
**21** 87:13
**23** 17:24 18:5 27:10 49:25
**236** 61:2
**24/7** 55:20
**25** 1:15
**2525** 1:19
**26** 19:4 50:4
**26th** 50:19 87:14
**2602** 3:17 21:7 49:14 70:20 92:10
**2603** 3:19
**2605** 49:25 87:13 91:14
**2605-23** 21:8
**2626-2** 69:18
**27** 3:17 49:22 87:4
**27th** 49:20,21 86:14
**28** 6:5
**285** 2:3
**29** 17:15 34:9
**29th** 3:18

**3**

**3** 60:4 71:4
**3rd** 5:16 66:12,24
**3.8** 55:24 61:16 71:21 83:9,17,17
  83:19,20 85:14,18,21 86:3 93:22
**3:00** 60:3
**3:10** 95:13
**30** 34:9
**300** 25:10
**30303** 2:4
**305/523-5659** 2:14 95:20
**31** 56:14
**33013** 1:16
**33128** 2:14 95:20
**33134** 1:20
**33301** 1:23
**350** 1:23
**350,000** 19:13 59:22 72:21

**4**

**4** 71:7 84:6
**4th** 66:13,24
**400** 2:13 95:20
**404-523-5300** 2:4
**408** 88:23
**41** 14:5 42:3 56:14 60:20,21
**42** 25:11
**45** 42:6

**6**

**60** 83:24

**7**

**7.1** 32:20,21 33:10 90:10 94:1,2
**7.1A** 33:1

**8**

**8S67** 2:13 95:20
**800** 1:15